DARIEN K. WALLACE (Bar No. 139798)
T. LESTER WALLACE (Bar No. 159967)
IMPERIUM PATENT WORKS
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com.com
Telephone:  925-862-9972
Facsimile:   925-835-5804

Attorneys for Plaintiff
ZINUS, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>　　　　　　　　Defendants. | Case No.: C07-03012 PVT<br><br>**DECLARATION OF SCOTT REEVES IN SUPPORT OF ZINUS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME TO RESPOND TO THE COMPLAINT**<br><br>The Honorable Patricia V. Trumbull |

I, Scott Reeves, declare:

1. My name is Scott Reeves. I am the President of the plaintiff ZINUS, INC. ("Zinus") in this case. I have personal knowledge of the matters set forth herein and, if called upon to testify, could and would competently testify to the truth of each statement herein.

2. On May 29, 2007, the representative of Zinus, Inc. in Korea received notification from Wal-Mart that Wal-Mart had received a "claim letter" from Dreamwell, Ltd. The notification was in the form of letters attached to an email from Wal-Mart to Jonathan Ha, the representative of Zinus, Inc. in Korea. Attached as Exhibit R-A is a true and correct copy of Wal-Mart's email to Jonathan Ha. Because of the time difference with Asia, Exhibit R-A indicates that the email from Alanna Hunt, Wal-Mart Paralegal, was sent on May 30 to

1  Johnathan Ha, but yet Jonathan Ha forwarded the email to others at Zinus, Inc. in the United
2  States on May 29. One letter attached to the email was the cease-and-desist letter from
3  Dreamwell. Attached as Exhibit R-B is a true and correct copy of the cease-and-desist letter
4  dated May 18, 2007, written by an attorney at Ropes & Gray LLP "on behalf of Dreamwell,
5  Ltd. ("Dreamwell"), a wholly-owned subsidiary of Simmons Bedding Company ("Simmons"),
6  which is one of the world's largest manufacturers of bedding products". Another letter
7  attached to the email was signed by Michael Li, Assistant General Counsel, Intellectual
8  Property Litigation, at the legal department of Wal-Mart in Bentonville, Arkansas. Attached as
9  Exhibit R-C is a true and correct copy of the letter from Michael Li to Zinus. The letter from
10 Michael Li notified Zinus of the claim from Dreamwell and indicated that Zinus was obligated
11 to indemnify Wal-Mart for all expenses, including reasonable attorney's fees, arising from that
12 claim. The letter also indicated that if the matter related to the cease-and-desist letter from
13 Dreamwell was not fully resolved by June 12, 2007, then Wal-Mart would be forced to remove
14 Zinus' Mattress-in-a-Box product from the website of walmart.com.
15        3. On June 11, 2007, Zinus filed a Complaint For Declaratory Judgment and Unfair
16 Competition in Violation of the Lanham Act against Simmons Bedding Company and
17 Dreamwell, Ltd. (collectively, the "defendants").
18        4. On June 12, 2007, I sent an email to Bob Carroll and Sheri Harms of Simmons
19 informing them that Zinus had filed a complaint against the defendants. Attached as Exhibit
20 R-D is a true and correct copy of my email to Bob Carroll and Sheri Harms. I sent the email to
21 Bob Carroll and Sheri Harms because they were the representative of Simmons with whom
22 Zinus had had contact. I believed that they toured the Zinus factory in China on March 30,
23 2007, and used confidential information they acquired at the Zinus factory in the cease-and-
24 desist letter of Exhibit R-B.
25        5. Attached as Exhibit R-E is a true and correct copy of an email sent to me on June 14
26 by Clara DeQuick informing me that she had received the email I sent to Bob Carroll and Sheri
27 Harms. Clara DeQuick is an in-house attorney at Simmons. The email of Exhibit R-E stated
28 that the CEO of the Simmons Bedding Company, Charlie Eitel, wanted to talk to me.

6. On June 15, Charlie Eitel left messages for me with a telephone number in Naples, Florida, where I was to call him. On June 15, Charlie Eitel and I spoke for about fifteen minutes. Mr. Eitel told me that he did not want the litigation to go farther, and he wanted to resolve it. Mr. Eitel said that Simmons knew about Zinus' Mattress-in-a-Box product for some time and before the Simmons representatives visited Zinus' factory in China. Mr. Eitel said that the Simmons legal department got out of control and had the cease-and-desist letter sent off to Wal-Mart. Mr. Eitel said he did not want Zinus to "get hurt" by not being able to do business with Mal-Mart. Mr. Eitel proposed that Simmons' attorneys and Zinus' attorneys should discuss the merits of each party's position and come to a business resolution.

7. Zinus and Wal-Mart have an established working relationship. Zinus and Wal-Mart have worked together to develop a sales plan for selling large amounts of Zinus' bedding products, including but not limited to Zinus' "Mattress-in-a-Box" product, in Wal-Mart stores all across the United States. The sales plan has stages. In a first stage, a display of Zinus' bedding products, including the "Mattress-in-a-Box" product, is to be placed into one Wal-Mart store. Although this stage was to occur within thirty days of June 15, 2007, this first stage of the sales plan has now been placed on hold due to Simmons' cease-and-desist letter (Exhibit R-B). Simultaneously, preparations are to be made for a second stage. In the second stage, Zinus' products are to be placed into one hundred Wal-Mart stores. The second stage is to be carried out by approximately the middle of September 2007. Approximately two thousand Mattress-in-a-Box pieces are required just to fill the one hundred stores, and thereafter product will have to be re-supplied as the product sells. My estimate for initial monthly sales volume from the one hundred stores is about two thousand Mattress-in-a-Box pieces. The third stage of the sales plan is a full company rollout wherein Zinus' products are placed into most or all Wal-Mart stores across the United States. The full company rollout is scheduled for February or March 2008. I believe the full rollout will involve approximately three thousand Wal-Mart stores.

8. Wal-Mart is the largest company in the world by revenue. Mr. John Flemming is Chief Merchandising Officer for Wal-Mart and in charge of all merchandise. Ms. Linda

Hefner is the Executive Vice President of the Home Department for Wal-Mart. Ms. Hefner reports to Mr. Flemming. The Home Department includes the furniture division. Mr. Jeff Baker is the Senior VP of the furniture division of Wal-Mart. Mr. Baker reports to Ms. Hefner. On June 15, I met with Mr. Flemming and Mr. Baker in Bentonville, Arkansas, to discuss the sales plan for Zinus' "Mattress-in-a-Box" product. Mr. Flemming indicated that Wal-Mart liked the sales plan and that the sales plan was to be carried out. Mr. Doc Kim of Zinus was also present at the meeting in Bentonville. In my opinion, if the sales plan were implemented as anticipated, then Wal-Mart would likely sell approximately $1 billion of Zinus' bedding products annually. My reasoning is that the retail market in the United States for mattresses is approximately $12 billion. I believe that Wal-Mart has about 8-10 percent of every retail dollar, so my best guess is that Wal-Mart would sell at least $1 billion dollars of Zinus' mattresses and bedding products annually. At the meeting in Bentonville on June 15, Mr. Flemming told me in a face-to-face conversation that it was also his opinion that Zinus' products could result in $1 billion of annual sales for Wal-Mart.

9. As of June 15, 2007, both Mr. Flemming and Mr. Baker were very much in favor of carrying out the sales plan set forth in paragraph 7 above. I am informed and believe that both Mr. Flemming and Mr. Baker thought selling Zinus' product in Wal-Mart stores would be a very good business move for Wal-Mart. The sales per square foot of retail space for conventional mattress products is significantly higher than for typical Wal-Mart products. Without Zinus' Mattress-in-a-Box product, the sale of mattresses in Wal-Mart stores is unworkable due to the large amount of retail space required to sell conventional mattresses and due to logistical difficulties of customers not being able to transport and handle large conventional mattresses. Zinus' Mattress-in-a-Box product makes selling mattresses in Wal-Mart stores commercially realistic.

10. After being very positive about carrying out the sales plan with Zinus, Wal-Mart has now informed Zinus that the sales plan is on hold specifically due to the cease-and-desist letter from Simmons dated May 18, 2007 (Exhibit R-B). On July 4, I traveled from Pleasanton, California, to Bentonville, Arkansas, in order to review the sales plan with Linda

Hefner, who could not attend the meeting on June 15. At my meeting with Ms. Hefner on July 5, Ms. Hefner stated that she also wanted to go ahead with Wal-Mart's plan to sell Zinus' Mattress-in-a-Box product in Wal-Mart stores. Ms. Hefner said that all that is necessary to go forward with Wal-Mart's plan to sell Zinus' Mattress-in-a-Box product in Wal-Mart stores is the approval from the Wal-Mart legal department, which has not been obtained because of the cease-and-desist letter from Simmons.

11. By June 28, Simmons' attorneys and Zinus' attorneys had spoken (as suggested by Simmons) but had not been able to come to a business resolution. Due to the cease-and-desist letter from the defendants, Wal-Mart was still unwilling to go forward with Wal-Mart's plan to sell Zinus' Mattress-in-a-Box product in Wal-Mart stores in addition to via walmart.com. Management at Wal-Mart told Doc Kim and me that they could not go forward until they received approval from the Wal-Mart legal department. On June 28, I wrote a letter to Debra Hughes at the legal department of Wal-Mart asking what additional comfort Wal-Mart would require to refute the claims of infringement contained in Simmons' letter to Wal-Mart dated May 18, 2007 (Exhibit R-B). Attached as Exhibit R-F is a true and correct copy of my letter of June 28 to Debra Hughes. In addition, I asked whether Zinus would be asked to pay for Wal-Mart's legal fees in preparing to defend a potential suit by Simmons.

12. Attached as Exhibit R-G is a true and correct copy of a letter I received from Michael Li in response to my letter to Debra Hughes (Exhibit R-F). Michael Li stated, "We are evaluating Simmons' patent claims as they relate to Wal-Mart. Our review is not yet complete, and we will expect that it will not be until such time as the defendants answer the declaratory judgment action filed by Zinus. At that time, . . ." (emphasis added). The letter from Michael Li states that Wal-Mart will not go forward with the plans of its sales people to sell Zinus' Mattress-in-a-Box product until the defendants answer the complaint.

13. I am informed and believe that Wal-Mart stores are full of merchandise. Retail floor space and shelf space is therefore carefully allocated and reserved for merchandise in order to maximize store sales. It is my understanding and I believe that there is a time deadline by which Wal-Mart makes decisions on which products will occupy floor space in Wal-Mart

stores. The deadline depends on which Wal-Mart department is involved. If the sales plan for Zinus' Mattress-in-a-Box product does not go forward in the very near future, then I believe that Wal-Mart will commit to placing other products in the store space that was tentatively reserved for Zinus' products. Although I do not know how precisely often Wal-Mart reallocates its retail space, my best judgment is that if the sales plan remains stalled beyond July 18, 2007, the sale of Zinus' Mattress-in-a-Box product in Wal-Mart stores will be delayed by at least one and maybe two 6-month Wal-Mart planning periods ("modular sets").

14. Zinus has the capacity to supply Wal-Mart with bedding products under the sales plan provided that Zinus begins preparations by about July 18, 2007. Significant lead time is required including time needed to obtain components that make up the bedding products, to have packaging produced, and to have artwork prepared. If Zinus does not obtain confirmation by July 18 from Wal-Mart that the sales plan will be implemented, then Zinus will not begin preparations, and will not be able to supply the one hundred stores in accordance with the second stage of the sales plan. In my opinion, the entire sales plan would not be included in Wal-Mart's current and perhaps future modular sets.

15. In my opinion, allowing Dreamwell and Simmons until August 8, 2007, to answer Zinus' Complaint will effectively terminate the sales plan, resulting in substantial harm to Zinus.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed this 11th day of July 2007 in Pleasanton, California.

By: _____
Scott Reeves

DECL. OF SCOTT REEVES IN SUPPORT OF
ZINUS' OPP. TO DEFENDANTS' MOTION TO          6          Case No. C07-03012 PVT
EXTEND TIME TO RESPOND TO COMPLAINT