IMPERIUM PATENT WORKS
DARIEN K. WALLACE (Bar No. 139798)
T. LESTER WALLACE (Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:   925-835-5804

Attorneys for Plaintiff
ZINUS, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., <br> Plaintiff, <br> v. <br> SIMMONS BEDDING COMPANY, ET AL <br> Defendants. | Case No.: C07-03012 PVT <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, UNFAIR COMPETITION AND BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> The Honorable Patricia V. Trumbull |

Plaintiff Zinus, Inc. ("Zinus"), for its complaint against Simmons Bedding Company ("Simmons") and Dreamwell, Ltd. ("Dreamwell"), states as follows:

**COMPLAINT AND JURY DEMAND**

1.   This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §§101, et seq., seeking declaratory judgment that United States Patent Number Re. 36,142 ("the '142 Patent") is invalid and not infringed by Zinus.  A copy of the '142 Patent is attached hereto as Exhibit A.

2.   This civil action also arises under section 43(a) of the Lanham Act of 1946, 15 U.S.C. §1225(a), seeking damages and an injunction preventing defendants from making false marketplace statements that Zinus' products infringe the '142 Patent.

3. This civil action also includes a breach of contract cause of action under California law.

## THE PARTIES

4. Plaintiff Zinus, Inc. ("Zinus") is a corporation organized and existing under the laws of the State of California. Zinus maintains its principal place of business at 7068 Koll Center Parkway, Suite 245, Pleasanton, California 94566. Zinus manufacturers and sells specialty sleep, travel, and homecare products.

5. Defendant Simmons Bedding Company ("Simmons") is one of the world's largest manufacturers of bedding products and controls its wholly-owned subsidiary Dreamwell, Ltd. ("Dreamwell"). Simmons licenses its trademarks, patents and other intellectual property to various domestic and foreign manufacturers principally through its wholly-owned subsidiary Dreamwell. Dreamwell is the alleged owner of the '142 Patent and has licensed the '142 Patent to Simmons.

6. Dreamwell is a limited liability company of Nevada and has a principal place of business at 2325-B Renaissance Dr., Suite 15, Las Vegas, Nevada 89119.

7. Simmons Bedding Company is a corporation organized under the laws of Delaware and has a principal place of business at One Concourse Parkway, Suite 800, Atlanta, Georgia 30328.

## JURISDICTION AND VENUE

8. Zinus brings this complaint against Dreamwell pursuant to the patent laws of the United States, Title 35 of the United Stated Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§2201 and 2202.

9. This Court has subject matter jurisdiction over the patent counts, which arise under the patent laws of the United States, pursuant to 28 U.S.C. §§1331, 1338 and 2201. This Court has subject matter jurisdiction over the Lanham Act count (Count 3) pursuant to the provisions of 15 U.S.C. §§1121 and section 43(a) of the Lanham Act of 1946, 15 U.S.C.

1 §1225(a).

2     10.   Upon information and belief, Simmons has ongoing and systematic contacts with this Judicial District. Simmons sells mattresses in this Judicial District. Upon information and belief, Simmons manufactures, sells and ships bedding products within this Judicial District through its subsidiary The Simmons Manufacturing Co., LLC at 1700 Fairway Dr., San Leandro, CA 94577.

    11.   Upon information and belief, this Court has general personal jurisdiction over Simmons pursuant to Fed. R. Civ. P. 4, and therefore has personal jurisdiction over Simmons with respect to all counts (Counts 1-4).

    12.   Upon information and belief, Dreamwell is a wholly-owned subsidiary of, is controlled by, and is an alter ego of, Simmons. This Court therefore has general personal jurisdiction over Dreamwell with respect to all counts (Counts 1-4).

    13.   Upon information and belief, Dreamwell knew or should have known that the brunt of the harm caused by Dreamwell's actions of unfair competition would be felt by Zinus in this Judicial District. Upon information and belief, Dreamwell has purchased products manufactured by Zinus from walmart.com in this Judicial District. Wal-Mart.com USA, LLC operates the on-line store walmart.com and is located at 7000 Marina Blvd., Brisbane, CA 94005. This Court therefore has specific personal jurisdiction over Dreamwell with respect to the Lanham Act count (Count 3).

    14.   Upon information and belief, this Court has supplemental personal jurisdiction over Dreamwell Ltd. with respect to Counts 1, 2 and 4 pursuant to 28 U.S.C. §1367(a).

    15.   Upon information and belief, venue in this District is proper because Simmons and Dreamwell reside in this Judicial District pursuant to 28 U.S.C. §§1391 and 1400.

## **INTRADISTRICT ASSIGNMENT**

    16.   Pursuant to Civil Local Rule 3-2(c), because this action is an intellectual property action, it is properly assigned to any of the divisions in this District.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

17. There exists an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§2201 and 2202.

18. Heretofore, bedding manufacturers have achieved high margins by distributing mattresses through dedicated bedding stores. Mattresses have traditionally not been sold in mass market retail stores, such as Wal-Mart, Kmart, and Target, due to the large amount of floor space required to display and shelve mattresses. Moreover, prospective customers cannot transport large bulky mattresses from retail stores to their homes using the types of transportation commonly used by customers to frequent a retail store. Through this business model of selling through dedicated bedding stores, Simmons has achieved annual sales of about one billion dollars.

19. Zinus recently began manufacturing a revolutionary bedding product called "Mattress-in-a-Box". This product enables a mattress to be sold in a readily transportable box. Consequently, it will be possible for consumers to purchase mattresses in mass market retail stores. Zinus believes that if mattresses are manufactured and sold in this fashion, then the logistics and economies of scale of large retails stores such as Wal-Mart will enable mattresses to be sold at a lower price to end customers.

20. In a pilot sales project in late 2006 and early 2007, Wal-Mart sold the Mattress-in-a-Box product in approximately one hundred Wal-Mart stores. It is believed that as consumers adopt the newer mode of purchasing mattresses, Zinus will sell hundreds of millions of dollars worth of the Mattress-in-a-Box product each year. Wal-Mart currently sells the Mattress-in-a-Box product through its affiliated company Wal-Mart.com USA, LLC, located near San Francisco, California, and Wal-Mart is planning to include the Mattress-in-a-Box product in a new sales plan and marketing campaign to sell bedding products through its stores.

21. In addition to selling the Mattress-in-a-Box product through walmart.com and in Wal-Mart stores, Zinus intends to sell the Mattress-in-a-Box product in Kmart and Target retail stores.

22. For one model of the Mattress-in-a-Box product, Zinus' sales price is generally about $100, and the Wal-Mart retail price to consumers for the same product is generally about $250. A comparable mattress manufactured by Simmons and sold through a dedicated bedding store retails for generally about $600.

23. In March 2007, Simmons approached Zinus to discuss the possibility of purchasing product from Zinus. Simmons expressed an interest in visiting the Zinus factory in Xiamen, China. Zinus believed that Simmons was interested in purchasing the Mattress-in-a-Box product for reselling through dedicated bedding stores under a Simmons brand.

24. Before a factory visit could occur, Zinus required Simmons to execute a Confidentiality and Non-Disclosure Agreement (attached hereto as Exhibit B). On March 30, 2007, Ms. Sheri Harms, Director Supply Chain and National Purchasing, executed the agreement on behalf of Simmons. The agreement specifically lists the principal office of Zinus being located in Pleasanton, California. Pursuant to the agreement, Simmons agreed not to use confidential information, other than as authorized by Zinus, in any manner whatsoever. The agreement specifically states that Confidential Information will be transmitted only to those who need to know such information for purpose of evaluating a contemplated future business arrangement. The entire pretext of Simmons' visiting the Zinus factory in China was to evaluate products that Simmons would potentially purchase.

25. Thereafter representatives of Simmons visited the Zinus factory in China. The Simmons representatives were shown the manufacturing process of the "Mattress-in-a-Box" product. The Simmons representatives took photographs.

26. Rather than receiving an order from Simmons to purchase Zinus products, Zinus received a cease-and-desist letter from a third party, Dreamwell, Ltd. (attached hereto as Exhibit C). The cease-and-desist letter dated May 18, 2007, states that "the Mattress-in-a-Box Product is the very subject matter of claim 1 of [the '142 Patent]." The cease-and-desist letter demands that Zinus provide "an accounting of all sales of Mattress-in-a-Box Products that have occurred within the United States, in order for Dreamwell to determine the monetary <u>damages due for infringing sales</u>" (emphasis added).

27.   In addition, Dreamwell sent a cease-and-desist letter dated May 18, 2007, to Wal-Mart (attached hereto as Exhibit D).  The letter was sent on behalf of a company located in Nevada (Dreamwell) to a company in Arkansas (Wal-Mart).  On information and belief, a company located in Georgia (Simmons) caused Dreamwell to send the letter.

28.   The cease-and-desist letter to Wal-Mart makes false and misleading statements and disparages Zinus' Mattress-in-a-Box product.  In particular, the letter states that the Mattress-in-a-Box product "is the very subject matter of claim 1 of [the '142 Patent]."  This is untrue, and Simmons knew or should have known it to be untrue.  The letter also states that "The sample Zinus Product that we purchased from Wal-Mart . . . Please see the attached image."   Simmons knew that the attached image was not a photograph of a Mattress-in-a-Box product purchased from Wal-Mart.  The attached image is a photograph that was taken in the Zinus factory in China, presumably by the Simmons representatives who visited the Zinus factory after Simmons signed the Confidentiality and Non-Disclosure Agreement of Exhibit B.  Objects from the factory are visible in the background of the photograph.  Simmons provided the photograph to the third party Dreamwell for purposes of preparing the cease-and-desist letter (Exhibit D), thereby knowingly violating the Confidentiality and Non-Disclosure Agreement (Exhibit B).

29.   The cease-and-desist letter to Wal-Mart states that the Mattress-in-a-Box product "is an innerspring mattress inserted into a tube of plastic material.  That tube is sealed at one end and the mattress is vacuum compressed within the tube" (emphasis added).  Simmons knew that the Mattress-in-a-Box product is not vacuum compressed because the Simmons representatives witnessed Zinus mattresses being mechanically compressed without the use of any vacuum equipment.  Simmons knew or should have known that the Mattress-in-a-Box product is not "the very subject matter of claim 1 of [the '142 Patent]" because claim 1 and each of the other independent claims of the '142 Patent require "evacuating air from said tube through said second end thereby . . . causing said mattress assembly to compress".  The statement made to Wal-Mart that the Mattress-in-a-Box product infringes the '142 Patent was made by Dreamwell and Simmons in bad faith because Simmons

disregarded the knowledge of the Simmons representatives who witnessed Zinus mattresses being mechanically compressed without the use of any vacuum equipment. Moreover, Simmons conspired in bad faith to enable Dreamwell to make the false statement by providing Dreamwell with Zinus' confidential information in violation of the Confidentiality and Non-Disclosure Agreement. Dreamwell's false and misleading marketplace statement made in the cease-and-desist letter to Wal-Mart had a damaging impact on Zinus.

30. Dreamwell knew that the brunt of the injury caused by the cease-and-desist letter to Wal-Mart would be felt in California because Dreamwell acknowledged in the cease-and-desist letter that Zinus is from Pleasanton, California.

31. The false and misleading statement disparaged the Mattress-in-a-Box product had an impact on Wal-Mart. The impact on Wal-Mart is evidenced by a letter sent by Wal-Mart to Zinus on May 29, 2007 (attached hereto as Exhibit E). The letter indicates that Zinus is likely to be damaged by the statement of alleged infringement because Wal-Mart implied that it would discontinue sales of the Mattress-in-a-Box product unless Zinus took certain actions to resolve the alleged infringement. On information and belief, Wal-Mart will be dissuaded from including the Mattress-in-a-Box product in its new sales plan for bedding products because of the misleading marketplace statements by Dreamwell that disparage the Mattress-in-a-Box product.

32. Zinus has a reasonable apprehension that Dreamwell will make similar false and misleading statements regarding the Mattress-in-a-Box product to other prospective customers, such as Kmart and Target. If Dreamwell makes similar disparaging statements to Kmart or Target, it is likely that Zinus will be damaged by losing prospective sales.

**FIRST COUNT**

(Declaratory Judgment of Non-Infringement)

33. Zinus hereby restates and realleges the allegations set forth in paragraphs 1 through 32 above and incorporates them by reference.

34. This is an action for declaratory judgment of non-infringement of any and all

valid claims of the '142 Patent.

35. Zinus has an objectively reasonable apprehension that Dreamwell will bring a patent infringement action against Zinus and/or Zinus' customers.

36. Dreamwell has alleged that it owns the '142 Patent and that Simmons is Dreamwell's licensee.

37. Dreamwell has alleged that the sale of Zinus' Mattress-in-a-Box product infringes the '142 Patent.

38. Accordingly, there exists an actual, justiciable controversy between Zinus and Dreamwell relating to whether the claims of the '142 Patent are infringed by Zinus or Zinus' customers.

39. Zinus requests a judicial determination and declaration (pursuant to 28 U.S.C. §§2201 and 2202) that Zinus has not infringed, and is not infringing, either directly or indirectly, contributorily or otherwise, any valid claim of the '142 Patent.

## SECOND COUNT

(Declaratory Judgment of Invalidity)

40. Zinus hereby restates and realleges the allegations set forth in paragraphs 1 through 39 above and incorporates them by reference.

41. This is an action for declaratory judgment of invalidity of any and all claims of the '142 Patent.

42. Zinus has an objectively reasonable apprehension that Dreamwell will bring a patent infringement action against Zinus and/or Zinus' customers.

43. The claims of the '142 Patent are invalid for failure to comply with one or more of the requirements for patentability in 35 U.S.C. §§102, 103, and 112.

44. Accordingly, there exists an actual, justiciable controversy between Zinus and Dreamwell relating to whether the claims of the '142 Patent are invalid.

45. Zinus requests a judicial determination and declaration (pursuant to 28 U.S.C. §§2201 and 2202) that all claims of the '142 Patent are invalid.

### THIRD COUNT

(Unfair Competition - Product Disparagement)

46. Zinus hereby restates and realleges the allegations set forth in paragraphs 1 through 45 above and incorporates them by reference.

47. Dreamwell's cease-and-desist letter to Wal-Mart contains marketplace statements of fact that are false and misleading and that disparage Zinus' products in violation of the Lanham Act 43 (15 U.S.C. §1125(a)).

48. Dreamwell's statements that Zinus' products infringe the '142 Patent were false and misleading, were made willfully with an intent to deceive, and were made in bad faith. Simmons knew, and Dreamwell should have known, that the sale of Zinus' Mattress-in-a-Box product could not infringe any claim of the '142 Patent.

49. Dreamwell's false and misleading statements were likely to deceive the intended audience, Wal-Mart.

50. Dreamwall's false and misleading statements were material in that they were and are likely to influence purchasing decisions of a Zinus customer, Wal-Mart.

51. Dreamwell caused the false and misleading statements to enter interstate commerce.

52. Simmons caused Dreamwell to make the false and misleading statements regarding products of Zinus, located in California.  Simmons and Dreamwell knew that the brunt of the injury caused by the false and misleading statements would be felt in California.

53. Dreamwell's false and misleading statements have damaged and injured Zinus, have disparaged Zinus products, and will result in probable future injury to Zinus.  Zinus is likely to be damaged by the false and misleading statements due to Wal-Mart's being dissuaded from including the Mattress-in-a-Box product in Mal-Mart's new sales plan.

54. Zinus is informed and believes and on that basis alleges that Dreamwell's false and misleading statements were made knowingly, deliberately and fraudulently without extenuating circumstances.  Zinus is therefore entitled to recover three times the amount of its damages, as well as its attorneys' fees and costs incurred in this action pursuant to 35

U.S.C. §1117(a).

## FOURTH COUNT

(Breach of Contract)

55. Zinus hereby restates and realleges the allegations set forth in paragraphs 1 through 54 above and incorporates them by reference.

56. On March 30, 2007, Zinus and Simmons entered into the Confidentiality and Non-Disclosure Agreement (Exhibit B). Ms. Sheri Harms, Director Supply Chain and National Purchasing, executed the agreement on behalf of Simmons. Mr. T. P. Lee (Youn Jae Lee), CEO and Chairman of the Board, executed the agreement on behalf of Zinus.

57. Soon after entering into the Confidentiality and Non-Disclosure Agreement, Zinus led representatives of Simmons, including Ms. Sheri Harms and Bob Carroll on a tour of the Zinus factory in China. During the factory tour, Zinus showed the representatives of Simmons confidential information, including confidential business methods and the manufacturing process of the Mattress-in-a-Box product. During the factory tour, the representatives of Simmons acquired digital photographs of the confidential manufacturing process of the "Mattress-in-a-Box" product.

58. As a recipient of the Confidential Information received from Zinus, Simmons agreed under the terms of the Confidentiality and Non-Disclosure Agreement "that such Confidential Information . . . will be kept confidential by RECIPIENT, its agents and employees, and shall not, except as herinafter provided, without the prior written consent of ZINUS, be disclosed by RECIPIENT, its agents or employees, in any manner whatsoever, in whole or in part."

59. Simmons breached the Confidentiality and Non-Disclosure Agreement by disclosing confidential information received from Zinus to Dreamwell. If Dreamwell is found to be an agent or the alter-ego of Simmons, then Dreamwell breached the agreement by disclosing Zinus' confidential information in the cease-and-desist letter dated May 18, 2007, that Dreamwell sent to Wal-Mart (Exhibit D). Dreamwell's letter to Wal-Mart

included a photograph taken by the Simmons representatives at Zinus' factory in China. Simmons conspired with Dreamwell to misuse Zinus' confidential information in order to damage Zinus by intentionally interfering with the prospective business advantage that Zinus hoped to achieve by selling the Mattress-in-a-Box product to Wal-Mart. Simmons knew that the photograph attached to Dreamwell's letter to Wal-Mart was taken at Zinus' factory in China, yet Dreamwell's letter states that "The sample Zinus Product that we purchased from Wal-Mart . . . Please see the attached image."   Simmons' conspiring to provide the photograph to Dreamwell and then to influence Dreamwell to send the cease-and-desist letter to Wal-Mart was an intentional breach of the Confidentiality and Non-Disclosure Agreement and was intended to stop Wal-Mart from continuing to purchase the Mattress-in-a-Box product from Zinus.

60.     Simmons' breach of the Confidentiality and Non-Disclosure Agreement damaged Zinus by convincing Wal-Mart not to continue with the sales plan that both Zinus and Wal-Mart believed would result in the sale of $1 billion dollars of Zinus products annually. Zinus has been damaged as a result of Simmons' breach and seeks damages in accordance with proof at trial, but in any event sufficient to compensate Zinus for its actual losses including lost profits and consequential damages resulting from Simmons' breach.

### PRAYER FOR RELIEF

**WHEREFORE**, Zinus requests that this Court:

A.     Declare (pursuant to 28 U.S.C. §§2201 and 2202) that Zinus has not infringed and is not infringing, directly, indirectly or contributorily, any valid claim of U.S. Patent No. Re. 36,142;

B.     Declare (pursuant to 28 U.S.C. §§2201 and 2202) that each claim of U.S. Patent No. Re. 36,142 is invalid;

C.     Declare this case exceptional under 35 U.S.C. §285 and award Zinus reasonable attorneys' fees and costs in connection with this action;

D.     Declare that Dreamwell and Simmons have made false and misleading

statements in violation of the Lanham Act (15 U.S.C. §1125(a));

  E. Award Zinus damages in an amount to be determined at trial arising from Simmons' breach of contract;

  F. Award Zinus an injunction that preliminarily and permanently enjoins Dreamwell and Simmons, their directors, officers, agents, employees, owners and shareholders, all other persons in active concert or privity or in participation with them, and all subsidiaries and affiliates of Dreamwell and Simmons, from directly or indirectly making the aforesaid false and misleading statements;

  G. Award Zinus compensatory damages, including the cost of this action, pursuant to 15 U.S.C. §1117(a);

  H. Declare this case exceptional under 35 U.S.C. §1117(a) and award Zinus attorneys' fees in connection with this action; and

  I. Award Zinus such other and further relief as the Court deems just and proper.

Dated: August 7, 2007     IMPERIUM PATENT WORKS

            By: /s/ Darien K. Wallace
               Darien K. Wallace

Darien K. Wallace (Bar No. 139798)
T. Lester Wallace (Bar No. 159967)
IMPERIUM PATENT WORKS
P.O. Box 587
Sunol, CA 93486
Telephone: (925) 862-9972

Attorneys for Plaintiff
ZINUS, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff Zinus hereby demands a trial by jury as to all issues and causes of action so triable herein, pursuant to Federal Rule of Civil Procedure 38.

Dated: August 7, 2007                                    IMPERIUM PATENT WORKS


By:     /s/ Darien K. Wallace
     Darien K. Wallace

Darien K. Wallace (Bar No. 139798)
T. Lester Wallace (Bar No. 159967)
IMPERIUM PATENT WORKS
P.O. Box 587
Sunol, CA 93486
Telephone:  (925) 862-9972

Attorneys for Plaintiff
ZINUS, INC.