IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:  925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada, <br><br> Defendants. <br><br> DREAMWELL, LTD., a limited liability company of Nevada, <br><br> Counterclaimant, <br> v. <br><br> ZINUS, INC., a California corporation, <br><br> Counterdefendant. | Case No. 07-CV-03012 PVT <br><br> **PLAINTIFF ZINUS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION OF NON-INFRINGEMENT** <br><br> Date:     October 16, 2007 <br> Time:     10:00 a.m. <br> Location:  Courtroom 5 <br> Judge:    Hon. Patricia V. Trumbull |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure Rule 56 Plaintiff and Counterdefendant Zinus, Inc. ("Zinus") will move, and hereby moves, for an order granting this Motion for Summary Adjudication that the method of packing of Zinus' Mattress-in-a-Box "Swirl Wrap" product (the "Swirl Wrap product") does not infringe any

claim of U.S. Patent Number Re. 36,142 ("the '142 Patent", Exhibit A to the Amended

Complaint). The timing of any related discovery to be conducted by Defendants, as well as

the hearing date for this Motion, will be discussed and set on October 16, 2007, at 10:00 a.m.

before the Honorable Patricia V. Trumbull in Courtroom 5 of the United States District Court

for the Northern District of California, San Jose Division, 280 South First Street, San Jose,

California 95113.

This Motion is based on this Notice of Motion and Motion, the accompanying

Memorandum of Points and Authorities and supporting declarations, and on all pleadings,

files and records in this action.


**STATEMENT OF RELIEF SOUGHT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Zinus moves this Court

for an Order granting summary adjudication that the method of packaging of Zinus' Swirl

Wrap product does not infringe any claim of U.S. Patent Number Re. 36,142.


Dated: October 2, 2007                    By:    /s/ Darien K. Wallace

                                                 Darien K. Wallace
                                                 IMPERIUM PATENT WORKS
                                                 Attorneys for Plaintiff and Counterdefendant
                                                 Zinus, Inc.

1

**TABLE OF CONTENTS**                                              **Page**

2    TABLE OF AUTHORITIES.............................................................  4

3    NOTICE OF MOTION .................................................................  1

4    STATEMENT OF RELIEF SOUGHT............................................  2

5    MEMORANDUM OF POINTS AND AUTHORITIES.......................  6

6    I.       INTRODUCTION AND SUMMARY OF ARGUMENT.................  6

7    II.      THE '142 PATENT.............................................................  8

8    III.     THE SWIRL WRAP PACKAGING METHOD............................  10

9    IV.      THE MAGNI METHOD.........................................................  12

10   V.       DISCUSSION....................................................................  14

11            A.  Legal Standards ........................................................  14

12            1.  Summary Judgment .....................................................  14

13            2.  Literal Infringement ..................................................  16

14            3.  Doctrine of Equivalents .............................................  16

15            B.  Application of the Law to the Facts ...........................  18

16            1.  Claim Construction ...................................................  18

17            2.  No Literal Infringement.............................................  18

18            3.  No Infringement Under the Doctrine of Equivalents...................  19

19   VI.      CONCLUSION..................................................................  21

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                    <u>Page(s)</u>

*Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 74 USPQ2d 1272 (Fed. Cir.
    2005) ............................................................................. 18

*Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 60
    USPQ2d 1493 (Fed.Cir. 2001) ....................................... 15

*Barmag Barmer Maschinenfabrik AG. V. Murata Mach., Ltd.*, 731 F.2d 831, 221
    USPQ 561 (Fed.Cir. 1984) ........................................... 14-15

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 65
    USPQ2d 1961 (Fed. Cir. 2003) ..................................... 17

*Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 75 USPQ2d 1038 (Fed.Cir.
    2005) ............................................................................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ................................. 14

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 46 USPQ2d 1169 (Fed.Cir. 1998).. 16

*D.M.I. Inc. v. Deere & Co.*, 755 F.2d 1570, 225 USPQ 236 (Fed. Cir. 1985) ........ 15

*Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285 (9th Cir. 1987) .................... 14

*Elektra Instr. v. O.U.R. Scientific Int'l*, 214 F.3d 1302, 54 USPQ2d 1910 (Fed.Cir.
    2000) ............................................................................. 16

*Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 76 USPQ2d 1001
    (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1167 (2006) .......................... 17-18, 20

*Howes v. Medical Components, Inc.*, 814 F.2d 638, 2 USPQ2d 1271 (Fed.Cir.
    1987) ............................................................................. 16

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 66 USPQ2d
    1282 (Fed. Cir. 2003) ................................................... 17

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.
    1995) ............................................................................. 15

*N. Telecom v. Samsung*, 215 F.3d 1281, 55 USPQ2d 1065 (Fed.Cir. 2000) .............. 16

*Optical Disc v. Del Mar Avionics*, 208 F.3d 1324, 54 USPQ2d 1289 (Fed.Cir. 2000).. 16

1   *Panduit Corp. v. Hellermann Tyton Corp.*, 451 F.3d 819, 79 USPQ2d 1053 (Fed.

2       Cir. 2006) ............................................................    17

3   *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 USPQ2d 1103

4       (Fed. Cir. 1997) ......................................................    18

5   *Semitool, Inc. v. Semiconductor Equipment GmbH*, 2005 U.S. Dist. LEXIS 4889,

6       *12 (N.D. Cal. Feb. 14, 2005) .......................................    15

7   *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357,

8       61 USPQ2d 1647 (Fed. Cir. 2002) .................................    17

9   *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1578, 39 USPQ2d 1573 (Fed.Cir.

10      1996) ...................................................................    16

11  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997),

12      remanded, 114 F.3d 1161, 43 USPQ2d 1152 (Fed. Cir. 1997) ......................    17-18

13  *Wilson Sporting Goods Co. v. David Geoffrey & Ass.*, 904 F.2d 677, 14 USPQ2d

14      1942 (Fed. Cir. 1990) cert. denied, 498 U.S. 992, 111 S. Ct. 537 (1990) .......    17

15

16  **Statutes and Rules**

17  Fed.R.Civ.P. 56(c) .....................................................    14

18  35 U.S.C. §102(b) ......................................................    6

19

20  **Table of Exhibits**

21  Exhibit A – Declaration of Scott Reeves .........................................  6, 10-12, 20

22  Exhibit B – Declaration of Darien K. Wallace.................................  6-7, 12, 19

23  Exhibit W-A – U.S. Patent No. 4,711,067 (the "Magni patent")...........................  6-7, 12

24  Exhibit W-B – Amendment of January 16, 1996.........................................  19

25  Exhibit W-C – Letter of August 7, 2007, describing Swirl Wrap product …..................  19

26  Exhibit W-D – File history of the 08/919,655 application (issued as the '142 Patent)

27  Exhibit W-E – File history of the 08/694,803 application

28  Exhibit W-F – File history of the 08/416,065 application …………………..............  20

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3    **I. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>**

4    First, the present patent case does not involve complex scientific principles that are

5    difficult to understand.  This is a simple case about a method of compressing a mattress and

6    rolling it up.  There is no need in this case to resort to extrinsic evidence to understand

7    complex scientific phenomena.  The terms in the claims of U.S. Patent Number Re. 36,142

8    ("the '142 Patent") are common terms that do not have any special technical meanings.  The

9    claims are understood simply by reading the patent and employing well established rules of

10   claim construction.  The Court does not have to consult any information outside the intrinsic

11   record in order to construe the claims.

12   Second, there can be no material factual dispute about the method of packaging

13   Zinus' Swirl Wrap product.  As set forth in the accompanying declaration of Scott Reeves, an

14   inner spring mattress is mechanically compressed into a flat form by a press without the use

15   of vacuum equipment. [Declaration of Scott Reeves in Support of Zinus' Motion for

16   Summary Adjudication ("Reeves decl."), ¶ 4]  The resulting compressed inner spring

17   mattress is placed on a rectangular sheet of colored flexible film.  The compressed mattress

18   and film are then rolled up together to form a cylindrical rolled-up mattress assembly in

19   which the colored flexible film appears as a swirl at the ends of the cylinder. [Reeves decl., ¶

20   8] Ribbon-shaped bands are wrapped around the cylindrical rolled-up mattress assembly to

21   hold the cylindrical roll in its rolled-up condition. [Id., ¶ 9]  In one example, the ribbon-

22   shaped bands are adhesive tape.  The banded rolled-up mattress assembly is then placed in a

23   cardboard box container. [Id., ¶ 10]  As set forth in the Reeves declaration, the rolled-up

24   mattress is held in its compressed and rolled-up state by the ribbon-shaped bands. [Id., ¶ 9]

25   There is no containment sleeve into which the mattress assembly is inserted. [Id., ¶ 10]

26   There is no question that this "swirl wrap" packaging method used to make the Swirl

27   Wrap product is prior art to the '142 Patent.  The "swirl wrap" packaging method is set forth

28   in prior art patent U.S. Patent No. 4,711,067 to Magni (the "Magni patent"). [Declaration of

Darien K. Wallace in Support of Zinus' Motion for Summary Adjudication ("Wallace decl."), ¶ 2, Exh. W-A]  The Magni patent is prior art to the '142 Patent under 35 U.S.C. §102(b) because the Magni patent was published more than one year before the earliest possible effective filing date of the '142 Patent.

In a first case of the "swirl wrap" packaging method considered in this Motion, all the steps of the "swirl wrap" packaging method occur outside the United States and the resulting Swirl Wrap product is then shipped into the United States.  In a second case considered in this Motion, the initial compression step occurs outside the United States, whereas the following packaging and unpacking steps occur in the United States.  In both cases considered in this Motion, the resulting Swirl Wrap product is present in the United States.  Accordingly, there can be no genuine issue of material fact about the factual specifics of the packaging method used to make the Swirl Wrap product.

All claims in the '142 Patent include the step of "inserting" a compressed mattress assembly "into a containment sleeve".  The Swirl Wrap product, on the other hand, has no containment sleeve whatsoever.  The "swirl wrap" packaging method involves no step of inserting anything "into a containment sleeve".  No containment sleeve is involved in the "swirl wrap" packaging method.  Accordingly, the "swirl wrap" packaging method cannot literally infringe any claim of the '142 Patent.

Moreover, it is blackletter law that the prior art is a bound on the doctrine of equivalents.  The scope of a claim element cannot be expanded so broadly under the doctrine of equivalents that the resulting claim would encompass prior art.  In the present case, no element involved in the "swirl wrap" packaging method, such as the ribbon-shaped bands or the cardboard shipping box, can be construed to be an equivalent of the "containment sleeve" of the '142 Patent because the "swirl wrap" packaging method employs ribbon-shaped bands and a cardboard box in exactly the same way that the Magni prior art does.  The "swirl wrap" packaging method is merely the Magni prior art packaging method by a different name.  Accordingly, the "swirl wrap" packaging method cannot infringe any claim of the '142 Patent under the doctrine or equivalents.

Summary judgment as a matter of law is timely and proper because: 1) the claims of the '142 Patent are construed as a matter of law[1] from the intrinsic record without resort to extrinsic evidence, and 2) there is no genuine issue of material fact regarding the packaging method by which the Swirl Wrap product is made.  A finding of summary judgment will conserve the financial resources of the parties, conserve judicial resources by significantly reducing the number of disputed issues, and will serve the interests of justice by preventing Defendants from using a clearly non-infringed patent to extort money out of Zinus and to interfere with Zinus' business.

## II.  THE '142 PATENT

The '142 Patent discloses and claims a method of packaging a mattress.  The '142 Patent includes no apparatus claims.  First, a "tube" of deformable material is provided.  Figure 2 of the '142 Patent (replicated below) identifies the tube with reference numeral 22.



A mattress is then inserted into tube 22.  Column 3, line 18, of the '142 Patent explains that "tube 22 has a length greater than the length [of the mattress] such that the two ends of the tube 22 define portions 24 of excess tube material 22."

Next, a first end of the tube is sealed.  Column 3, line 28, says "one end 24 of the tube 24 is gathered and sealed."  This first end may, for example, be the left end of the tube 22

---

[1] See *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376, 75 USPQ2d 1038 (Fed.Cir. 2005).

1    illustrated in the figure above.

2        Next, air is evacuated from the tube 22, thereby causing the mattress to compress.

3    Column 3, line 31, says "Then, the open end is manually gathered around a hose connected to

4    a vacuum pump and the air within the tube 22 is evacuated.  Evacuation of the tube 22 causes

5    the tube to deform around the string of coils 10 and in turn causes the coils 10 to compress."

6    The term "string of coils" here refers to the coils of a mattress.

7        In the figure above, the "second end" of tube 22 may, for example, be the right end of

8    tube 22.  All claims of the '142 Patent include the very same step of "evacuating air from

9    said tube through said second end thereby deforming said tube around said mattress assembly

10   and causing said mattress assembly to compress".  The resulting tube 22, with the

11   compressed mattress inside, is referred to in the '142 Patent as the "evacuated tube".

12       The "evacuated tube" is then "inserted" into a "containment sleeve".  In the figure

13   above, reference numeral 26 identifies the "containment sleeve".  Column 3, lines 24-26,

14   explains that the compressed mattress assembly "is maintained in a compressed state by a

15   containment sleeve 26.  Preferably, the containment sleeve 26 is an extruded tube of 4 mil

16   polyethylene."  Very important for purposes of this Motion, all claims of the '142 Patent

17   include the identical recitation:

18       "inserting said evacuated tube into a containment sleeve which is dimensioned
         and configured to retain said compressed mattress assembly in a compressed
19       state for shipment" . . .

20       According to the specification of the '142 Patent, the second end of tube 22 may or

21   may not be sealed.  If the second end is sealed, it may be sealed either before or after

22   insertion of the mattress assembly into the containment sleeve.  Some claims specifically

23   recite "sealing said second end of said tube", whereas other claims do not.  The details of

24   whether and when the second end of tube 22 is sealed is not important for purposes of

25   deciding this Motion.

26       The resulting structure is pictured in the figure above.  The structure is referred to as a

27   "packaging system" and is referred to in the figure by reference numeral 20.  The

28   "containment sleeve" 26 is shown retaining the "evacuated tube" (the compressed mattress in

1  its tube) in its compressed state.

2      All claims of the '142 Patent are method claims that recite "a method of packaging"

3  where the last two steps of the claims actually recite unpacking steps.  Specifically, all claims

4  include the subsequent step of "removing said evacuated tube from the containment sleeve".

5  All claims except for Claim 1 recite the further unpacking step of "allowing said mattress

6  assembly in said tube to gradually return to an uncompressed state".  Claim 1, however,

7  concludes with a similar whereby clause that recites "whereby said mattress assembly in said

8  tube gradually returns to an uncompressed state".  These last unpacking steps, although they

9  are not practiced in any form in the "swirl wrap" packaging method, need not be considered

10  in deciding this Motion.

11

12  ### III.  THE SWIRL WRAP PACKAGING METHOD

13      The "swirl wrap" packaging method that is at issue in this Motion has been used to

14  manufacture numerous units of the Swirl Wrap product, and these units have been and

15  currently are present in the United States. [Reeves decl., ¶¶ 2, 9, 16]

16      In a first step in the method, an inner spring mattress is placed in a sheath of flexible

17  plastic sheeting material.  One side of the sheath is open, and it is through this side that the

18  inner spring mattress is inserted.  This step resembles inserting a sandwich into a sandwich

19  bag. [Id., ¶ 3]

20      Next, the mattress and sheath are placed between two plates of a mechanical press.

21  The two plates are then forced toward each other, thereby compressing the mattress within

22  the plastic sheath.  No vacuum equipment is used.  No evacuation of air causes the mattress

23  to compress.  Rather, the mattress is mechanically compressed between the two plates, and

24  this compression forces air out of the mattress.  Escaping air flows out of the sheath through

25  the open side.  The open side of the sheath is not gathered around a hose connected to a

26  vacuum pump. [Id., ¶ 4]  Next, the open side of the sheath is sealed such that the flattened

27  and compressed mattress is sealed inside the sheath. [Id., ¶ 5]

28      The two plates of the press are then opened and the flattened mattress in its sheath are

removed from the press. [Id., ¶ 6]  The flattened mattress in its sheath is placed on a

rectangular sheet of flexible film.  The film is not a sleeve, but rather is a rectangular sheet.

[Id., ¶ 7]  Next, the compressed mattress within its sheath and the flexible film are rolled

together to form a cylindrical rolled-up mattress assembly. [Id., ¶ 8; Exhibits R-A through

R-D ]

Next, ribbon-shaped bands are wrapped around the rolled-up mattress assembly to

hold the roll in place.  In one example, the ribbon-shaped bands are strips of adhesive tape.

In another example, the ribbon-shaped strips are strips of durable plastic. [Id., ¶ 9]

The rolled-up mattress assembly is not "inserted into" the ribbon-shaped bands.  In

the case of the ribbon-shaped bands being adhesive tape, the adhesive tape adheres to the

outside of the rolled-up mattress assembly as the tape is applied.  It is impossible for the

rolled-up mattress assembly to be "inserted into" the tape.  In the case of the ribbon-shaped

bands being durable plastic, the bands are wrapped around the rolled-up mattress assembly

such that there is significant frictional force between the rolled-up mattress assembly that is

attempting to expand against the restraining bands.  The rolled-up mattress assembly cannot

and does not slide "into" the bands or slide with respect to the bands. [Id., ¶ 12]

The banded and rolled-up mattress assembly is then placed into a cardboard packing

box.  Most importantly, at no time in this packaging method is the rolled-up mattress

assembly "inserted" into any structure other than the cardboard box.  Depicted below is the

rolled-up mattress standing next to the cardboard packing box into which the rolled-up

mattress will be placed. [Id., ¶ 10; Exh. R-H]



1    The open panels of the cardboard box are then taped closed.  The taped and rolled-up mattress

2    assembly in its packing box is the "Swirl Wrap" product mentioned above. [Id., ¶ 10]

3            In the first case of the "swirl wrap" packaging method considered in this Motion, all

4    the steps of the "swirl wrap" packaging method set forth above occur outside the United

5    States, and the resulting Swirl Wrap product is then shipped into the United States.  In the

6    second case considered in this Motion, the initial compression step occurs outside the United

7    States, whereas the following packaging steps occur in the United States.  In both cases, the

8    resulting Swirl Wrap product is present in the United States. [Id., ¶ 13]

9            Figures 1 through 8 of the accompanying Reeves declaration are photographs taken at

10   various stages of manufacturing of one representative unit of the Swirl Wrap product.  [Id.,

11   ¶¶ 8-10; Exhibits R-A through R-H] The mattress was compressed in China as described

12   above.  The compressed mattress in a sheath of sealed plastic sheeting material was then

13   shipped into the United States.  The subsequent steps pictured in figures 1 through 8 were

14   carried out in Pleasanton, California. [Id., ¶ 2; Exhibits R-A through R-H]  Figure 8 is a

15   picture of the resulting unit of the Swirl Wrap product. [Id., ¶ 10; Exh. R-H]  The figures 1

16   through 8 of the Reeves declaration were attached to a letter sent to counsel for the

17   defendants on August 7, 2007. [Wallace decl., ¶ 4; Exh. W-C]

18           In addition to the unit pictured in figure 8, Zinus has performed the "swirl wrap"

19   packaging method set forth above in China, and has then shipped the resulting units of the

20   Swirl Wrap product into the United States and to Wal-Mart Stores, Inc. in Bentonville,

21   Arkansas.

22

23       **IV.  <u>THE MAGNI METHOD</u>**

24           The "swirl wrap" packaging method set forth above is actually a prior art method (the

25   "Magni Method").  The Magni method is set forth in expired U.S. Patent No. 4,711,067

26   issued December 8, 1987, to Guiliano Magni. [Wallace Decl., ¶ 2, Exh. W-A]

27           First, as shown in figure 1 of the Magni patent (replicated below), a mattress 1 is

28   placed in a sheath 3.  Sheath 3 is open on one side as illustrated.



Fig.1

The mattress 1 within the sheath 3 is then mechanically compressed by a "compression and flattening means" 33 illustrated in Figure 9 of the Magni patent. The Magni patent teaches that after compression of the mattress, the sheath 3 "is sealed, and thereafter the mattress remains squeezed inside the wrapper without any possibility of re-expansion." (Col. 3, lines 57-60). The compressed mattress and sheath assembly is shown in Figure 4 of the Magni patent (replicated below).

Fig.4

The Magni patent teaches that that a flexible "film" is placed on one side of the compressed mattress and sheath assembly by the rolling apparatus of Figure 17, and the film and compressed mattress assembly are "rolled up together". In particular, the Magni patent teaches that the compressed mattress assembly is inserted between cylinder 215 and mandrel 207 of Figure 17 so that the mattress assembly will be "rolled up (FIG. 17) together with the film 222" (Col. 6, lines 14-15).

The Magni patent then teaches that "ribbon-shaped strings" are applied around the rolled mattress assembly "in order to stabilize the configuration" (Col. 7, lines 50-53; Col. 6, lines 31-33). The Magni patent explains that the "ribbon-shaped strings" may be "tape", "closing rings surrounding the rolled-up mattress" or "adhesive tape" (Col. 1, line 66 through Col. 2, line 3). Figure 13 of the Magni patent (reproduced below) shows the resulting rolled mattress structure with three bands of ribbon-shaped strings 230.

Fig.13

The Magni patent explains that the taped and rolled-up mattress assembly is placed into a cardboard box container 236 (Col. 6, lines 54-55; Fig. 8; Col. 4, line 8). The prior art Magni packaging method involves no "containment sleeve" to maintain a compressed mattress in a compressed state, but rather the prior art Magni packaging method involves rolling up the compressed mattress with a sheet of "film 222", and then banding the rolled-up assembly with annular rings of ribbon-shaped strings as illustrated in figure 13 of the Magni patent. This is the very same prior art method practiced by Zinus to make the Swirl Wrap product.

The Magni method, as taught by the Magni patent, "may be adopted for many types of mattresses" (Col. 2, lines 4-5). The Magni patent is not mentioned in the file wrapper of the '142 Patent, is not cited on the face of the '142 Patent, and it does not appear that the Magni patent was considered by the Patent Examiner during prosecution of the '142 Patent.


V. **DISCUSSION**

A. **Legal Standards**

1. **Summary Judgment.**

Summary judgment is appropriate for issues for which there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c ); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986); *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285 (9th Cir. 1987).

> "'Summary judgment is as appropriate in a patent case as in any other.' *Barmag Barmer Maschinenfabrik AG. V. Murata Mach., Ltd.*, 731 F.2d 831, 835, 221 USPQ 561 (Fed.Cir. 1984). Although the determination of patent infringement is a fact-intensive issue, 'comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an

absence of material fact issue as to warrant summary judgment of infringement or noninfringement.' *D.M.I. Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985)."

*Semitool, Inc. v. Semiconductor Equipment GmbH*, 2005 U.S. Dist. LEXIS 4889, *12 (N.D. Cal. Feb. 14, 2005).

A district court has wide latitude in how it performs claim construction, and nothing in *Markman*[2] constrains this Court to hold a so-called Markman hearing or to follow any particular protocol in construing a claim. Where appropriate, the issue of infringement can be disposed of on summary judgment in an efficient manner without having to resort to a Markman hearing. For example, in *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 60 USPQ2d 1493 (Fed.Cir. 2001), a district court granted summary judgment on the issue of infringement and found that the claims did not cover the accused device. On appeal, the patent owner complained that summary judgment had been granted without any Markman hearing. The Federal Circuit disagreed that a Markman hearing was necessary and explained that "Markman does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the province of the court, not a jury." The Federal Circuit upheld the district court's grant of summary judgment and stated, "Some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue. Such a procedure is not always necessary, however. . . . As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best." *Ballard Medical Products*, 268 F.3d at 1358 and 60 USPQ2d at 1498.

"The court should utilize the salutary procedure of Fed.R.Civ.Proc. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG. V. Murata Mach., Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed.Cir. 1984).

---

[2] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir. 1995).

**2. Literal Infringement.**

"The determination of infringement is a two-step process.  First, the court construes the claims to determine the correct scope of the claims.  Second, the court compares the properly construed claims to the accused device."  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir. 1998).

With respect to the first step, construing the claims, the Federal Circuit has stated:

> "The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.  In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. . . . Allowing the public record to be altered or changed by extrinsic evidence introduced at trial, such as expert testimony, would make this right meaningless. . . . The same holds true whether it is the patentee or the alleged infringer who seeks to alter the scope of the claims."

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1578, 39 USPQ2d 1573, 1577 (Fed.Cir. 1996). If complex scientific principles are involved or expert testimony is needed to explain a disputed term, for example, then an underlying factual question may arise that makes summary judgment improper.  On the other hand, if the terms do not have a special meaning to those skilled in the art, the court can properly construe the claims as a matter of law without resort to expert evidence.  *See Howes v. Medical Components, Inc.*, 814 F.2d 638, 2 USPQ2d 1271, 1273-1274 (Fed.Cir. 1987).  Claim terms take on their ordinary meaning in the absence of evidence in the patent specification of an "express intent to impart a novel meaning" to the claim terms.  *Optical Disc v. Del Mar Avionics*, 208 F.3d 1324, 1334, 54 USPQ2d 1289, 1295 (Fed.Cir. 2000); *Elektra Instr. v. O.U.R. Scientific Int'l*, 214 F.3d 1302, 1307, 54 USPQ2d 1910, 1913 (Fed.Cir. 2000); *N. Telecom v. Samsung*, 215 F.3d 1281, 1287, 55 USPQ2d 1065, 1069 (Fed.Cir. 2000).  "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term.  In such circumstances, it is improper to rely on extrinsic evidence."  *Vitronics Corp*, 39 USPQ2d at 1577.

**3. Doctrine of Equivalents.**

Under the doctrine of equivalents, a claim limitation that is not literally met may be satisfied by an element of the accused product if the differences between the two are

insubstantial to one of ordinary skill in the art. Whether the element in the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation can be used as a guide in determining whether the differences are insubstantial. *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351, 65 USPQ2d 1961 (Fed. Cir. 2003) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997), remanded, 114 F.3d 1161, 43 USPQ2d 1152 (Fed. Cir. 1997)). *See also Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1317, 66 USPQ2d 1282 (Fed. Cir. 2003).

The application of the doctrine of equivalents, however, is limited in various ways. For example, the scope of equivalency may not encompass previously disclosed material. In *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 61 USPQ2d 1647 (Fed. Cir. 2002), the Federal Circuit held that the scope of equivalency is constrained by the prior art. The court stated, "the doctrine of equivalents is an equitable doctrine and it would not be equitable to allow a patentee to claim a scope of equivalents encompassing material that had been previously disclosed by someone else, or that would have been obvious in light of others' earlier disclosures." *Tate Access Floors*, 279 F.3d at 1367. *See also Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684-685, 14 USPQ2d 1942, 1948 (Fed. Cir. 1990) cert. denied, 498 U.S. 992, 111 S. Ct. 537 (1990) (scope of equivalency is limited by prior art demonstrating either anticipation or obviousness).

The doctrine of equivalence is also limited by the "all elements rule", in which the scope of equivalency may not effectively eliminate (or "vitiate") a particular claim element. *Panduit Corp. v. Hellermann Tyton Corp.*, 451 F.3d 819, 830, 79 USPQ2d 1053 (Fed. Cir. 2006). In *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 76 USPQ2d 1001 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1167 (2006), the patent's claims required a support with "a moveable end slidably mounted" to a seatbase. The accused seat had all the elements of the claims except that the accused seat's support was rotatably mounted instead of "slidably mounted". The Federal Court stated that summary judgment of non-infringement

should be entered because an equivalency finding would vitiate the "slidably mounted"

limitation.  The court further explained that the patentees "chose to specifically limit the

claims to slider-crank mechanisms vis-a-vis the 'slidably mounted' moveable end limitation.

Members of the public were therefore justified in relying on this specific language in

assessing the bounds of the claim." *Freedman Seating*, 420 F.3d at 1362.

In *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195, 74 USPQ2d 1272 (Fed.

Cir. 2005), the Federal Circuit affirmed the grant of summary judgment of non-infringement

under the doctrine of equivalents.  The court stated, "'To hold that 'unmounted' is equivalent

to 'mounted' would effectively read the 'mounted on' limitation out of the patent. As the

district court noted, the 'all elements rule' provides that the doctrine of equivalents does not

apply if applying the doctrine would vitiate an entire claim limitation." *See also Sage*

*Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1429, 44 USPQ2d 1103 (Fed. Cir.

1997) (in cases where the patentee's theory of equivalents would "entirely vitiate a particular

claim element, partial or complete summary judgment should be rendered by the court");

*Warner-Jenkinson*, 520 U.S. at 29, 117 S. Ct. at 1049.

### B.  <u>APPLICATION OF THE LAW TO THE FACTS</u>

#### 1.  Claim Construction.

The specification of the '142 Patent does not contain evidence of an "express intent

to impart a novel meaning" to the claims terms "insert into" or "containment sleeve".  The

terms of the claims have plain meanings that are evident to an ordinary reader of the '142

Patent.

#### 2.  No Literal Infringement.

Every claim of the '142 Patent contains the following method step recitation:

> "<u>inserting</u> said evacuated tube <u>into a containment sleeve</u> which is dimensioned
> and configured to retain said compressed mattress assembly in a compressed
> state for shipment" (emphasis added).

The "swirl wrap" packaging method, as explained above, does not involve "inserting" the

rolled-up mattress assembly "into" a "sleeve" of any sort.  No sleeve performs any

"containment" function in the "swirl wrap" packaging method.  Quite to the contrary, the

1  "swirl wrap" packaging method involves the application of prior art bands to prevent the

2  rolled-up mattress assembly from unwinding and expanding.  The rolled-up mattress

3  assembly is not "inserted into" these bands.  The bands are applied to the outside of the

4  rolled-up mattress assembly without the rolled-up mattress assembly sliding or moving with

5  respect to the bands.  Accordingly, the "swirl wrap" packaging method does not include the

6  "<u>inserting</u> said evacuated tube <u>into a containment sleeve</u> . . ." step required by all claims of

7  the '142 Patent.  The "swirl wrap" packaging method does not literally infringe any claim of

8  the '142 Patent.

9  　　　　**3.  No Infringement Under the Doctrine of Equivalents.**

10  　　　　Neither the cardboard shipping box into which Zinus' rolled-up mattress assembly is

11  placed, nor the bands that hold Zinus' rolled-up mattress assembly in its rolled up

12  configuration can be construed under the doctrine of equivalents to be a "containment

13  sleeve" as recited by the claims of the '142 Patent.

14  　　　　There is nothing the "swirl wrap" packaging method that meets the function-way-

15  result test of the doctrine of equivalents.  During prosecution, in order to distinguish all of the

16  claims from the prior art Broyles patent, the patentees made the following representation to

17  the Patent Examiner:

18
19  　　　　"As taught by applicants' specification the containment sleeve may be <u>punctured</u> at
　　　　the coil destination and <u>controlled, gradual expansion</u> of the springs can be

20  　　　　accomplished.  Such a method departs considerably from the Broyles teaching.
　　　　There is no containment sleeve disclosed in Broyles which is intended to maintain
　　　　the innerspring in a compressed state after evacuation. The claims of the instant

21  　　　　application all call for such a constainment sleeve." (emphasis added)

22  [Wallace decl., ¶ 3, Exh. W-B (amendment of January 16, 1996, in 08/416,065 parent

23  application, page 4, lines 6-14); Exh. W-B is contained within Exh. W-F, the file wrapper of

24  the 08/416,065 application]  Presumably the relatively slow and controlled influx of air

25  through the puncture was being argued to be the reason for the "controlled gradual

26  expansion" of the mattress.  In the "swirl wrap" method, on the other hand, there is no

27  structure that can be punctured in this controlled way to allow a controlled influx of air.  The

28  relatively narrow bands of the "swirl wrap" method do not have the function, way or result of

1    the "containment sleeve" as the function, way and result of the containment sleeve was

2    advanced by the patentees during prosecution before the Patent Office.  Similarly, the

3    cardboard box of the "swirl wrap" method cannot be "punctured" in a controlled way to

4    allow "controlled gradual expansion" of the mattress.  The "swirl wrap" cardboard box also

5    does not have the function, way or result of the "containment sleeve" as the function, way

6    and result of the containment sleeve was advanced by the patentee during prosecution before

7    the Patent Office.  Accordingly, there is no step in the "swirl wrap" method that is the

8    "equivalent" of the recited "inserting . . . into a containment sleeve" step of the '142 Patent.

9            In addition, extending the scope of equivalency of the "containment sleeve" to cover

10   either the narrow bands or the cardboard box would also encompass previously disclosed

11   material.  Both the "swirl wrap" packaging method and the Magni packaging method employ

12   the bands and the cardboard shipping box in the very same way to perform the very same

13   function.  The "swirl wrap" method in fact is identical to the prior art Magni method.  Under

14   *Tate Access Floors* and *Wilson Sporting Goods*, the scope of the claim element "inserting

15   . . . into a containment sleeve" cannot be expanded so broadly that it is satisfied by the

16   application of either the bands or the cardboard box because such a broad construction would

17   result in the claims reading on the prior art Magni method.

18           Finally, extending the scope of equivalency of the "containment sleeve" to cover

19   either the narrow bands or the cardboard box would violate the "all elements rule" by

20   effectively eliminating or ***vitiating*** the claim element "inserting".  As in *Freedman Seating*,

21   summary judgment of non-infringement should be entered for Zinus even if the accused

22   "swirl wrap" packaging method were to include all the elements of the claims except that no

23   mattress in the accused method is "inserted" into the narrow bands.  Rather than inserting a

24   mattress assembly into a containment sleeve, the "swirl wrap" packaging method wraps

25   bands around a rolled mattress. [Reeves decl., ¶ 9]  The difference between "wrapping

26   around" and "inserting into" is even greater than the difference in *Freedman Seating* between

27   "slidably mounted" and "rotatably mounted", which was the basis for the Federal Court's

28   stating that summary judgment of non-infringement should be entered.  *Freedman Seating*,

420 F.3d at 1362.

## VI.  CONCLUSION

Because there are no issues of material fact that need to be resolved in order for the Court to determine what the "swirl wrap" packaging method entails, and because construction of the claims of the '142 Patent is a matter of law to be determined from the intrinsic record alone, summary adjudication is appropriate.  The "swirl wrap" packaging method involves neither a step of "inserting said evacuated tube into a containment sleeve . . ..", nor an equivalent to this step.  The "swirl wrap" packaging method considered in this Motion simply involves no "containment sleeve" whatsoever.  The "swirl wrap" packaging method is the prior art Magni packaging method.  Accordingly, this Motion for Summary Adjudication that the "swirl wrap" packaging method does not infringe any claim of U.S. Patent Number Re. 36,142 should be granted.


Dated:  October 2, 2007              By:  _____ /s/ _____

                                          Darien K. Wallace
                                     IMPERIUM PATENT WORKS
                                     Attorneys for Plaintiff and Counterdefendant
                                     ZINUS, INC.