1  Kenneth B. Wilson, Calif. Bar No. 130009
   KWilson@perkinscoie.com
2  PERKINS COIE LLP
   Four Embarcadero Center, Suite 2400
3  San Francisco, CA 94111-4131
   Telephone: 415.344.7000
4  Facsimile: 415.344.7050

5  Attorneys for Defendant
   SIMMONS BEDDING COMPANY
6  and Defendant and Counterclaimant DREAMWELL, LTD.

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12  ZINUS, INC. a California Corporation,    Case No. 07-CV-03012-PVT

13                   Plaintiff,              **EXPERT DECLARATION OF MICHAEL
                                             S. DEFRANKS IN OPPOSITION TO
14          v.                               PLAINTIFF ZINUS INC.'S MOTION FOR
                                             SUMMARY ADJUDICATION OF NON-
15  SIMMONS BEDDING COMPANY, a               INFRINGEMENT**
    Delaware corporation, and DREAMWELL,
16  LTD., a limited liability company of
    Nevada,
17                                           **Date**:     December 11, 2007
                     Defendants.             **Time**:     10:00 a.m.
18                                           **Before**:   The Honorable Patricia V. Trumbull
                                             **Location**: Courtroom 5
19

20  
    AND RELATED COUNTERCLAIMS
21

22

23      I, Michael S. DeFranks, declare:

24      1.      I am the Director of Engineering for Simmons Bedding Company ("Simmons"). I

25  have been asked by outside counsel for Dreamwell to analyze whether a portion of plaintiff

26  Zinus, Inc.'s ("Zinus'") Swirl Wrap packaging process for its Mattress-in-a-Box products is

27  equivalent to the claim element "inserting said evacuation tube into a containment sleeve . . ." in

28

DECLARATION OF MICHAEL S. DeFRANKS
07-CV-03012-PVT

the claims of U.S. Patent No. RE 36,142 (the "'142 Patent"). I have personal knowledge of the facts set forth in this Declaration and can testify competently to those facts.

**Background and Qualifications**

2. I am a mechanical engineer by training, and have a Bachelors of Mechanical Engineering that I received from the Georgia Institute of Technology.

3. I started my career in high speed metal manufacturing with Copeland Scroll Compressors, a world leader in design and production of refrigeration compressors. My next assignment was with Makita Corporation, a leading global producer of professional grade electric power tools, where I designed and implemented automated machining processes.

4. I have been with Simmons for over 12 years. During that time, I have worked in a variety of engineering and leadership roles relating to Simmons' bedding products, with focus in the areas of machine design, material science and flammability research and development.

5. I currently serve as Chairman of the Sleep Product Safety Council (SPSC), and I was a SPSC board member for three years prior to that appointment.

6. I am presently named as an inventor on the following seven United States Patents relating to Simmons bedding products: United States Patent No. 5,974,993, entitled "Quilted Border Winder Apparatus, System and Method," which issued on November 2, 1999; U.S. Patent No. 6,493,887, entitled "Box Spring Corner Guard," which issued on December 17, 2002; U.S. Patent No. 6,687,929, entitled "Box Spring Corner Guard," which issued on February 10, 2004; U.S. Patent No. 6,931,685, entitled "One Sided Mattress," which issued on August 23, 2005; U.S. Patent No. 7,047,581, entitled "Stranded Mattress Spring," which issued on May 23, 2006; U.S. Patent No. 7,168,117, entitled "Multi-Stranded Coil Spring," which issued on January 30, 2007; and U.S. Patent No. 7,174,613, entitled "Method for Manufacturing a Foam Core Having Channel Cuts," which issued on February 13, 2007. I am also the inventor on several pending patent applications relating to Simmons' bedding products. As a result, I am familiar with the United States patent system, and am generally familiar with how patents should be interpreted.

**Summary of Opinions**

7. For purposes of this Declaration, I was asked to form an opinion as to whether the Zinus Swirl Wrap process contains a step or steps that are the equivalent of the '142 Patent claim element "inserting said evacuation tube into a containment sleeve . . ." (the "containment sleeve element"). More specifically, I was asked for an opinion as to whether the combination of placing a compressed mattress and its surrounding evacuation tube onto a rectangular sheet of reinforced fabric, rolling the mattress up inside the fabric, and applying ribbon shaped tape or plastic stripping to the outside of the fabric to hold the roll in place performs substantially the same function as the containment sleeve element of the claims of the '142 Patent; whether it performs this function in the same way as the containment sleeve element of the '142 Patent; and whether it achieves the same result as the containment sleeve element of the claims of the '142 Patent.

8. In forming the opinions set forth in this Declaration, in order to obtain an understanding of the claim element at issue, I have reviewed the '142 Patent, as well as the prosecution history of the patent.

9. In forming the opinions set forth in this Declaration, in order to obtain an understanding of Zinus' Swirl Wrap process, I have reviewed the Declaration of Scott Reeves, the exhibits to that Declaration (which include photographs of various steps in that process), the transcript of the deposition of Scott Reeves, and certain Zinus documents.

10. Based on my review and analysis of the '142 Patent and related documentation, as well as my knowledge and analysis of the Swirl Wrap process, it is my opinion that the Swirl Wrap process contains the equivalent of the containment sleeve element of the '142 Patent, in that it performs substantially the same function as that element, in substantially the same way, to obtain substantially the same result.

**Opinion Regarding the Swirl Wrap Process**

11. It is my understanding that for purposes of determining patent infringement, a patent owner can show that a claim element is satisfied under the doctrine of equivalents if the patent owner demonstrates that the accused product or process performs substantially the same

Case 5:07-cv-03012-PVT    Document 49    Filed 11/20/2007    Page 4 of 7

1  function as the claim element at issue, in substantially the same way, to achieve substantially the
2  same result.

3     12.    In my opinion, the primary function of the containment sleeve element is to
4  prevent or restrict the expansion of the compressed mattress during shipping. My opinion is
5  based in part on my understanding of the term "containment sleeve". I understand that term to
6  generally refer to a structure or covering designed to protect its contents or prevent or restrict the
7  contents from expanding.

8     13.    My opinion regarding the primary function of the containment sleeve is based in
9  part on the language of the claims of the '142 Patent. Each claim specifically refers to "a
10 containment sleeve which is dimensioned and configured to retain said compressed mattress
11 assembly in a compressed state for shipment." In my opinion, this language indicates that the
12 purpose of the containment sleeve is to keep the compressed mattress assembly in a compressed
13 state during shipment.

14    14.    My opinion regarding the primary function of the containment sleeve is supported
15 by other language in the '142 Patent. As just one example, in the Summary of the Invention
16 section, the function of the containment sleeve is specifically defined as "to maintain the article in
17 a compressed state."

18    15.    My opinion regarding the primary function of the containment sleeve is also
19 supported by the prosecution history of the '142 Patent. As just one example, in response to the
20 Examiner's rejection of claims 1-4 in light of Broyles, US Patent 3,611,524, the applicants argued
21 that "[t]here is no containment sleeve disclosed in Broyles which is intended to maintain the
22 innerspring in a compressed state after evacuation. The claims of the instant application all call
23 for such a containment sleeve."

24    16.    In my opinion, Zinus' Swirl Wrap process contains steps that perform substantially
25 the same function as the containment sleeve element of the '142 Patent. In particular, the
26 combination of placing a compressed mattress and its surrounding evacuation tube onto a
27 rectangular sheet of reinforced fabric, rolling the mattress up inside the fabric, and applying
28 ribbon shaped tape or plastic stripping to the outside of the fabric to hold the roll in place

DECLARATION OF MICHAEL S. DeFRANKS  -4-
07-CV-03012-PVT

1  performs the function of preventing or restricting the compressed mattress from expanding during
2  shipment.

3       17. My opinion is based on my understanding of the Swirl Wrap process, as set forth
4  in the Reeves Declaration, the Zinus documents and photographs that I reviewed, and Mr.
5  Reeves' deposition testimony. As just one example, Mr. Reeves testified at pages 29-30 of his
6  deposition that "both the flexible film that's reinforced and the strapping material combine
7  together to give us a strong hold on the mattress." Mr. Reeves also confirmed at pages 32-33 of
8  his deposition that the reason the ribbon shaped bands were wrapped circumferentially around the
9  rolled up mattress assembly was because it was believed to be the most effective way to limit the
10 expansion of the compressed mattress.

11       18. In my opinion, the way in which the containment sleeve element of the '142 Patent
12 performs the function of preventing or restricting the compressed mattress from expanding during
13 shipment is by providing a barrier that covers or surrounds a substantial portion of the exposed
14 surface of the mattress and that is sufficiently strong to resist the internal forces that would tend to
15 expand the compressed mattress. This opinion is based upon my reading of the '142 Patent and
16 the prosecution history, as well as my general understanding of how a containment sleeve would
17 prevent or restrict an item from expanding.

18       19. In my opinion, the Swirl Wrap process also performs the function of preventing or
19 restricting the compressed mattress from expanding during shipment by providing a barrier that
20 covers or surrounds a substantial portion of the exposed surface of the mattress (in the form of the
21 combination of the reinforced fabric sheet and the ribbon-shaped bands of adhesive tape or plastic
22 stripping) and that is sufficiently strong to resist the internal forces of the compressed mattress.
23 This opinion is based on my understanding of the Swirl Wrap process, as set forth in the Reeves
24 Declaration, the Zinus documents and photographs that I reviewed, and Mr. Reeves' deposition
25 testimony. As just one example, Mr. Reeves testified at pages 40-41 of his deposition that the
26 reinforced flexible film, in combination with the tape or bands, "[m]inimizes the frictional force
27 by minimizing the expansion capabilities," and he further testified that placing a compressed
28

mattress into a box without a means to prevent expansion of said compressed mattress, in the event of accidental puncture, could lead to failure of the box.

20. In my opinion, the result achieved by the containment sleeve element of the '142 Patent is that it effectively prevents or restricts the compressed mattress from expanding beyond its final container size during shipment. This opinion is based upon my reading of the '142 Patent and the prosecution history, as well as my general understanding of how a containment sleeve would impact the ability of an item to expand within the sleeve.

21. In my opinion, the Swirl Wrap process also achieves the result of effectively preventing or restricting the compressed mattress from expanding beyond its final container size during shipment. This opinion is based on my understanding of the Swirl Wrap process, as set forth in the Reeves Declaration, the Zinus documents and photographs that I reviewed, and Mr. Reeves' deposition testimony. As just one example, Mr. Reeves testified that at pages 34-35 of his deposition that the compressed mattress, "could potentially expand itself if that plastic bag was punctured and that's what we're trying to limit during the time of shipping from the factory to the time it gets to the stores and consumer's home, we want to make sure that the bed stays nice and contained and secured."

22. Based on my understanding of how a claim element may be met or satisfied under the doctrine of equivalents, as well as analysis of the '142 Patent and Swirl Wrap process as set forth above, it is my opinion that the Swirl Wrap process performs substantially the same function in substantially the same way to achieve substantially the same results as the containment sleeve element of the '142 Patent, and that the Swirl Wrap process therefore meets or satisfies that element under the doctrine of equivalents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of November, 2007 at Atlanta, Georgia.

/s/
Michael S. DeFranks

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, Kenneth B. Wilson, hereby attest that concurrence in the filing of this document has been obtained from the other signatory.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 20, 2007 in San Francisco, California.

```
                              /s/
                    _____
                         Kenneth B. Wilson
```