IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:   925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>　　　　　Defendants. | Case No. 07-CV-03012 PVT<br><br>**PLAINTIFF ZINUS, INC.'S REPLY TO DREAMWELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF NON-INFRINGEMENT**<br><br>Date:　　　December 11, 2007<br>Time:　　　10:00 a.m.<br>Location:　Courtroom 5<br>Judge:　　　Hon. Patricia V. Trumbull |
| DREAMWELL, LTD., a limited liability company of Nevada,<br><br>　　　　　Counterclaimant,<br>　　v.<br><br>ZINUS, INC., a California corporation,<br><br>　　　　　Counterdefendant. | |

| | |
|---|---|
| **TABLE OF CONTENTS** | **Page** |

TABLE OF CONTENTS ………............................................................................. ii

TABLE OF AUTHORITIES ................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT................................. 1

II.   APPLYING THE DOCTRINE OF EQUIVALENTS TO THE "INSERTING . . . INTO A CONTAINMENT SLEEVE" ELEMENT IS BARRED ................ 1

III.  THE SWIRL WRAP METHOD IS PRIOR ART ............................................... 5

IV.  ROLLING IN A SHEET AND INSERTING INTO A SLEEVE DO NOT PERFORM THE FUNCTION IN "SUBSTANTIALLY THE SAME WAY"... 9

V.   CONCLUSION.................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 76 USPQ2d 1347
 (Fed. Cir. 2005) ........................................................................................................  5

*DyStar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 80 USPQ2d 1641
 (Fed.Cir. 2006) .........................................................................................................  6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 83
 USPQ2d 1385 (Fed. Cir. 2007) ................................................................................  2, 4-5

*Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966)..................................  6

*In re Venner*, 262 F.2d 91, 120 USPQ 193 (CCPA 1958) ...........................................  7

*KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 82 USPQ2d 1385 (2007)......  6, 7

*Lucent Techs., Inc. v. Gateway, Inc.*, 2007 U.S. Dist. LEXIS 16682 at *19 (S. D.
 Cal. 2007) ..................................................................................................................  5

*Schwarz Pharma, Inc. v. Paddock Laboratories, Inc.*, 2007 U.S. App. LEXIS 23950
 (Fed.Cir. 2007) .........................................................................................................  2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41 USPQ2d 1865
 (1997).........................................................................................................................  9

*Wilson Sporting Goods Co. v. David Geoffrey & Ass.*, 904 F.2d 677, 14 USPQ2d
 1942 (Fed. Cir. 1990) …............................................................................................. 6, 13

**Statutes and Rules**

35 U.S.C. §103 ................................................................................................................  6

**Table of Cited Exhibits**

Declaration of Michael S. DeFranks in Opposition to Zinus' Motion for Summary
Adjudication ....................................................................................................................  11

Declaration of Kenneth B. Wilson in Opposition to Zinus' Motion for Summary
Adjudication, Exh. 2 (Deposition Transcript of Scott Reeves) .....................................  12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Dreamwell's Opposition papers do not contain any serious allegation of literal infringement. That Zinus' Swirl Wrap packaging method does not literally infringe is effectively conceded. The remaining contention relates to whether the doctrine of equivalents can be used to expand the scope of the claims in U.S. Patent No. Re 36,142 ("the '142 Patent") to cover the Swirl Wrap packaging method.

In its Opposition papers, Dreamwell makes various arguments that the Swirl Wrap packaging method should be found to infringe under the doctrine of equivalents. In response, Zinus makes three main points below: 1) application of the doctrine of equivalents to the "inserting . . . into a containment sleeve" element is totally barred due to clear prosecution history estoppel, 2) the Swirl Wrap packaging method is actually a prior art method and practicing the prior art is an absolute defense to a charge of infringement under the doctrine of equivalents, and 3) the alleged Swirl Wrap element of "rolling a compressed mattress with a sheet and then taping the roll" does not function in "substantially the same way" as the "inserting . . . into a containment sleeve" element in the '142 Patent. If Zinus is correct on any one of these three points, then there is no infringement under the doctrine of equivalents.

## II. APPLYING THE DOCTRINE OF EQUIVALENTS TO THE "INSERTING . . . INTO A CONTAINMENT SLEEVE" ELEMENT IS BARRED

If a patentee amends a claim element during prosecution, then it is presumed that the amendment was made for patentability purposes. Application of the doctrine of equivalents as to the amended element is then barred unless the patentee rebuts the presumption. The Federal Circuit has recently explained that:

> "This court has summarized the doctrine of prosecution history estoppel as follows: Prosecution history estoppel limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution. We have recognized that prosecution history estoppel can occur during prosecution in one of two ways,

either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel'). . . With respect to amendment-based estoppel, the Supreme Court has stated 'A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.'" *Schwarz Pharma, Inc. v. Paddock Laboratories, Inc.*, 2007 U.S. App. LEXIS 23950 (Fed.Cir. 2007).

The Federal Circuit has explained that once this presumption arises:

> "The burden is on the patentee to establish that the reason for the amendment was unrelated to patentability.  Warner-Jenkinson, 520 U.S. at 33.  If the patentee fails to meet this burden, the court must presume that the patentee 'had a substantial reason related to patentability for including the limiting element added by amendment.'  Id.  If there is a substantial reason related to patentability 'prosecution history estoppel would bar the application of the doctrine of equivalents as to that element.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 83 USPQ2d 1385 (Fed.Cir. 2007).

If the presumption is not rebutted, then application of the doctrine of equivalents, with respect to the amended element, is totally barred.

In the present case, each of the original claims of the '142 Patent recited a first element of inserting a "compressible article" into a tube, a second element of evacuating air from the tube thereby causing the article to compress, and a third element of:

> inserting said evacuated tube into a containment sleeve which is dimensioned and configured to retain said **_compressed article_** in a compressed state (emphasis added, Claim 1).

The Examiner, however, rejected this claim over a prior art patent to Broyles (US Pat. No. 3,611,524).   In response, the applicants (inventors C. Edward Steed and Ricky F. Gladney) admitted that Broyles "teaches a method of compressing an innerspring 9 . . . such that the innerspring is capable of being inserted into a mattress cover 1."  Thus, the applicants admitted that Broyles taught the third claim element quoted above.  The applicants argued, however, "Applicants' method on the other hand, is directed to reducing the volume of coil springs and retaining them in a compressed state . . . There is no containment sleeve disclosed in Broyles which is intended to maintain the innerspring in a compressed state after evacuation." (Amendment of January 16, 1996, 08/416,065, 3:3-12) (emphasis added).  (As explained below, the Examiner eventually rejected this argument as being an obvious change by again rejecting the claims.)  Dreamwell therefore amended all claims to replace the term

"compressible article" with the term "assembly of pocketed coil springs" so that the evacuated tube that was "inserted . . . into a containment sleeve" in the third element would involve "pocket coil springs" rather than just a "compressible article."   The "inserting . . . into a containment sleeve. . . " element was therefore also changed to read:

> inserting said evacuated tube into a containment sleeve which is dimensioned and configured to retain said compressed ***assembly*** in a compressed state. (emphasis added, Claim 1).

In making the amendment, the applicants stated:  "In an effort to distinguish even more clearly over Broyles, claim 1 has been amended herein to specifically recite a method of packaging <u>pocketed</u> coil springs." (emphasis in original).  The change of the term "compressed article" to "compressed assembly" in the "inserting  . . . into a containment sleeve . . . " third element changed the reference to refer to "pocketed coil springs," a term that was specifically being relied upon to distinguish Broyles.

The amendment, however, failed to obtain allowance of the claims.[1]  The applicants therefore responded by further amending the "inserting . . .  into a containment sleeve . . ." element to read:

> inserting said evacuated tube into a containment sleeve which is dimensioned and configured to retain said compressed ***mattress*** assembly in a compressed state ***for shipment***. (emphasis added, Claim 1).

In making this next amendment, the applicants argued, "There is no containment sleeve in Broyles which is meant to be placed over an evacuated tube of compressed springs to indefinitely retain the springs in a compressed state ***for shipment***. . . .  In an effort to further clarify applicants' invention, the Amendment is requested for entry wherein ***the structure and functioning of applicants' containment sleeve is more clearly and specifically defined***." (Preliminary Amendment of August 9, 1996 in file wrapper continuation 08/694,803, p. 3, line 13 – p. 4, line 2) (emphasis added).   The next communication from the

---

[1] Dreamwell admits in its Opposition papers that adding the "pocketed coil" limitation was not sufficient to render the claims non-obvious over the Broyles reference.  (Dreamwell's Opposition, 3:20-22; 4:17-23)  Thus, the public file wrapper states that pocket coil springs are obvious over regular coil springs, which contradicts Dreamwell's argument that the Magni reference does not teach or suggest the "pocket coil" claim limitation.

examiner was a Notice of Allowance. It is therefore clear from the prosecution history that the applicants amended the "inserting . . . into a containment sleeve . . . " element multiple times during prosecution for patentability reasons.

Dreamwell does not dispute that the element of "inserting said evacuated tube into a containment sleeve which is dimensioned and configured to retain said compressed mattress assembly in a compressed state for shipment" in each claim of the '142 Patent was amended for patentability reasons.[2] In fact, Dreamwell even confirms in its Opposition papers that the first amendment from "compressed article" to "compressed assembly" was made for patentability reasons. Dreamwell admits in its Opposition papers:

> ". . . the claims are expressly limited to '[a] method of packaging a mattress assembly constructed of coil springs wherein each spring is contained within an individual pocket of fabric.' This is not merely token language; ***it was added to distinguish the claims over the Broyles prior art, and the Patent Office refused to allow issuance of the patent until this limitation was added***. [See Exh. W-F]" (Dreamwell's Opposition to Zinus' Motion for Summary Judgment, 22:15-19) (emphasis added)

Dreamwell admits that the element of "inserting . . . into a containment sleeve" was amended multiple times for considerations related to patentability in attempt after attempt to distinguish the Broyles prior art. Application of the doctrine of equivalents to the "inserting . . . into a containment sleeve" element is therefore barred.

Finally, Dreamwell argues that it has created "a triable issue of fact on the highly fact intensive question of infringement under the doctrine of equivalents" (Id., p. 2:17-18) (emphasis added). However, issues relating to prosecution history estoppel are questions of law, including whether a patentee has rebutted the presumption of surrender of claim scope

---

[2] Dreamwell has chosen emphatically to admit that the element of "inserting . . . into a containment sleeve" was amended for reasons relating to patentability. Even if Dreamwell had attempted, however, to rebut the presumption that amendment was for patentability reasons, Dreamwell would have been precluded from arguing that the equivalent element was "unforeseeable" because the equivalent element was disclosed in the prior art. *Festo Corp. v. Shoketsu Ltd.*, 493 F.3d 1368, 1378, (Fed. Cir. 2007) ("[W]e have consistently held that an equivalent is foreseeable when the equivalent is known in the pertinent prior art at the time of amendment."). The purportedly equivalent element as quoted above from Dreamwell's Opposition papers is a prior art element disclosed by the Magni reference.

1 otherwise capable of being recaptured through the doctrine of equivalents.  And to the extent that the rebuttal of the presumption may be subject to underlying factual issues, those factual issues may properly be decided by the court.  *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302, 76 USPQ2d 1347 (Fed. Cir. 2005); see also *Lucent Techs., Inc. v. Gateway, Inc.*, 2007 U.S. Dist. LEXIS 16682 at *19 (S. D. Cal. 2007); *Festo Corp. v. Shoketsu Ltd.*, 493 F.3d at 1375 ("[W]e held [in Festo X] that rebuttal of the presumption of surrender was a question of law to be tried by a court and not a jury.")

### III.  THE SWIRL WRAP METHOD IS PRIOR ART

Zinus' Motion for Summary Adjudication explains that the "Swirl Wrap" packaging method is merely the prior art Magni packaging method by a different name.  Compare Figure 13 below (left) from U.S. Patent No. 4,711,067 issued to Giuliano Magni to the picture below of the Swirl Wrap product (right).



Magni Prior Art                    Swirl Wrap Product

Because the scope of equivalency under the doctrine or equivalents may not encompass prior art, no expansion of claim elements in the '142 patent under the doctrine of equivalents can cover the Swirl Wrap packing method.

Dreamwell responds in its Opposition papers that "the Magni patent does not disclose packaging of an innerspring mattress with individual pocket coils", and that the claims of the '142 Patent "are expressly limited to '[a] method of packaging a mattress assembly constructed of coil springs . . .".  Due to this alleged shortcoming in the Magni patent,

Dreamwell argues that Zinus's Swirl Wrap process is not a prior art method. Dreamwell concludes that a "material difference between the Zinus process and the Magni process precludes Zinus from relying on the 'practicing the prior art defense' to avoid Dreamwell's doctrine of equivalents claim." (Dreamwell's Opposition, 22:22-23:2)

Dreamwell's argument is deficient because the prior art that limits the doctrine of equivalents includes not only that which was expressly disclosed in prior art references, but also includes subject matter that would have been obvious in view of those references. The familiar and well-established *Graham*[3] framework for analyzing obviousness under 35 U.S.C. §103 is employed to determine what would have been obvious. Very importantly, "the burden is on [the patentee] to prove that the range of equivalents which it seeks would not ensnare the prior art."[4]

The *Graham* factors underlying an obviousness analysis include: (1) determining the scope and content of the prior art; (2) ascertaining the differences between the claimed invention and the prior art; and (3) resolving the level of ordinary skill in the pertinent art. Determination of these factors is illuminated by the Supreme Court's recent decision in *KSR International Co. v. Teleflex Inc.*[5] that corrected the Federal Circuit for applying the obviousness analysis in an overly rigid way. Regarding the "level of ordinary skill" factor of *Graham*, the Supreme Court in *KSR* explained that the person of ordinary skill has "ordinary creativity", and is "not an automaton". The Supreme Court stated:

> "[I]n many cases, a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. . . . A person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR v. Teleflex*, 127 S.Ct. at 1742.

Courts have made clear that the teaching, suggestion or motivation (TSM) test does not require an explicit suggestion to combine or modify the prior art.[6] Rather, the motivation

---

[3] *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966).
[4] *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684, 14 USPQ2d 1942, 1948 (Fed. Cir. 1990).
[5] *KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 82 USPQ2d 1385 (2007).
[6] *DyStar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 80 USPQ2d 1641 (Fed.Cir. 2006).

to combine or modify may be implicit and may be found in the knowledge of one of ordinary skill. The Supreme Court in *KSR* stated:

> "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, 35 U.S.C. 103 likely bars its patentability." *KSR v. Teleflex*, 127 S.Ct. at 1740.

Applying the familiar obviousness framework of *Graham* and *KSR* to the present case, it is clear that one of ordinary skill reading the Magni patent would have had the minimal amount of creativity necessary to recognize that the Magni process applies to pocket coil spring mattresses. This is especially so considering that: 1) Dreamwell admits in its Opposition papers that the examiner found pocket coil springs to be obvious over regular coil springs (see footnote 1 above), 2) there is nothing in the Magni patent that says it would not apply to pocket coil spring mattresses, and 3) the Magni patent actually teaches "[m]ethods are known for the packing of spring mattresses . . ." and suggests that "the method of packing to be described may be adopted for many types of mattresses . . .". (Magni, col. 1, lines 17-18; col. 2, lines 4-5). The prior art under *Graham* therefore includes the obvious use of the Magni process with pocket coil spring mattresses.

     Dreamwell next argues that Zinus does not practice the prior art method of Magni because Zinus does not mechanically roll up a compressed mattress with a "ribbon shaped film". This argument also fails because the Magni prior art limits the doctrine of equivalents with respect to subject matter that would have been obvious in view of Magni. Manually performing a disclosed mechanical process is just as obvious as providing a mechanical means to replace a manual activity that accomplishes the same result. Cf. *In re Venner*, 262 F.2d 91, 95, 120 USPQ 193, 194 (CCPA 1958). Thus, manually rolling up a compressed mattress in a sheet is an obvious extension of using Magni's mechanical rolling.

     Due to a misunderstanding of the disclosure of Magni, Dreamwell mistakenly argues that Zinus' rolling a mattress up in a sheet is not the same as rolling the mattress up in the "ribbon-shaped film 222" of Magni because the ribbon-shaped film of Magni "does not cover or surround a substantial portion of the exposed surface of the mattress". (Dreamwell's

Opposition, 23:22-23)  Dreamwell mistakenly believes that the term "ribbon" implies that the film is narrow or at least narrower than the compressed mattress is wide.  This is incorrect.  Mangi refers to "ribbon-shaped film 222" (which becomes the sheet) and "ribbon-shaped strings 230" (which become the bands).  It is apparent that the ribbon-shaped film 222 on the reservoir-spool 220 at the right in Figures 9 and 10 of Magni is as wide as the mattress $M_3/M_5/M_7/Mg$ of Figure 10.  It is also apparent from Figure 13 of Magni that the film 222A does not leave an exposed surface on the circumference of the rolled mattress, as Dreamwell contends.  The pictures on page 5 of this Reply show that the compressed mattress of the Swirl Wrap product is rolled in the blue film (i.e., sheet) in exactly the same way as the mattress in Magni is rolled in the film 222A.

Finally, Dreamwell also argues that Magni does not teach other limitations, such as inserting "for shipment" and "gradually return to an uncompressed state".  Dreamwell is incorrect.  Magni does teaches both of these limitations.  First, Magni teaches the "for shipment" limitation in multiple places: "It is an object of the invention to provide a method of packing an individual mattress . . . for the convenience of the final purchaser in <u>carrying the mattress home</u>." (Magni, 1:38-41); "The container of this type may be advantageously fitted with a handle 14 for ease of <u>transport</u> . . ." (Magni, 4:10-13); and "Mattresses packed as indicated above may be stored <u>for shipment</u> and warehousing <u>in a relatively economical manner</u> . . . the final user can conveniently carry the mattress purchased with the means at his own disposal . . ." (Magni, 7:4-10) (emphasis added).

Second, Magni also teaches the "gradually return" limitation.  Magni explains:

> ". . . the wrapper 3 may be opened in such a manner as to allow the entry of air and thus <u>permit the re-expansion of the mattress which, more or less speedily</u>, resumes the thickness intended for use. . . . With the above described method a mattress is obtained, which <u>is able to re-expand in a very regular way</u> . . .".

Even if Magni did not explicitly teach all of the limitations of the claims of the '142 Patent (which it does), all of those limitations would nevertheless be inherent and/or would naturally flow from the teachings of Magni.  As the Supreme Court recognized in KSR, one of ordinary skill in the art is not an automaton and possesses the creativity to implement a

predictable variation. *KSR*, 82 USPQ2d at 1742. Thus, the doctrine of equivalents cannot be used to expand the claim scope of the '142 Patent to cover the Swirl Wrap packaging method because the Swirl Wrap packaging method is simply the straight-forward, obvious use of the Magni process on pocket coil spring mattresses.

### IV. ROLLING IN A SHEET AND INSERTING INTO A SLEEVE DO NOT PERFORM THE FUNCTION IN "SUBSTANTIALLY THE SAME WAY"

Zinus' Motion for Summary Judgment explains that there can be no infringement under the doctrine of equivalents because the Zinus' "Swirl Wrap" packaging method does not contain any element that is equivalent to the recited element of "inserting . . . into a containment sleeve. . .". The Swirl Wrap method simply involves no "containment sleeve" whatsoever. Dreamwell responds in its Opposition papers that the "function" of the containment sleeve is "preventing or restricting the compressed mattress from expanding during shipment". Dreamwell then argues that the combination of the plastic sheet and tape or bands in the Swirl Wrap method perform the same function "<u>in the same way as the containment sleeve</u>". (Dreamwell's Opposition, 17:20) (emphasis added)

The equivalence determination, however, is not based on what is equivalent to the recited containment sleeve. Rather, an equivalence analysis is made on an element-by-element basis, and the claim element at issue is the step of "inserting . . . into a containment sleeve . . .". Under Supreme Court and Federal Circuit precedent, the term "inserting" cannot be "vitiated" or read out of the claim. The Supreme Court in *Warner-Jenkinson* stated that the judge should determine on a motion for summary judgment or judgment as a matter of law whether a theory of equivalence would entirely vitiate a particular claim element. *Warner-Jenkinson v. Hilton Davis*, 520 U.S. 17, 39 n.8, 41 USPQ2d 1865, 1875, n.8 (1997).

A simple inspection of a photograph of the Swirl Wrap product (below right) reveals that it is impossible to "insert" (as recited in the '142 Patent, below left) a compressed mattress into a plastic sheet that is rolled up together with the compressed mattress. Obviously, there is tremendous friction between the mattress and the blue plastic sheet.

 

Tube Inserted Into A Sleeve      Rolled-Up Structure

The element of rolling a compressed mattress in a sheet does not perform the containment function in the same way as the recited element of "inserting . . . into a containment sleeve . . ." for at least two reasons. First, the claim term "inserting" cannot reasonably be interpreted so broadly that it includes "rolling up". Dreamwell's argument that the term "inserting" is "broad enough to cover placing the compressed mattress onto a sheet of fabric and rolling the mattress up inside the fabric" (Dreamwell's Opposition, 19:16-17) is strained, self-serving and borders on the absurd.

Dreamwell argues that the Swirl Wrap method performs the function of the '142 Patent's "step of inserting the compressed mattress into a 'containment sleeve' . . . <u>in the same way</u> as the patented step (i.e., by providing a barrier that covers or surrounds a substantial portion of the exposed surface of the mattress and that is sufficiently strong to resist the internal forces that would tend to expand the compressed mattress)". (Opposition, 2:9-13) (emphasis added) The sheer number of words Dreamwell requires to describe a "way" that applies both to the Swirl Wrap method and to the recited step of inserting demonstrates that it is unreasonable to equate "inserting into" to "placing onto a sheet and rolling up". The claim terms "inserting . . . into" should be interpreted simply as "inserting into" as opposed to Dreamwell's long-winded and contrived interpretation. (See Dreamwell's Opposition, 11:16-18) The mattress-packaging subject matter of this action is simple and easy to understand. The claims should be interpreted from the intrinsic record alone. Dreamwell's attempt to base claim interpretation on extrinsic evidence introduced in the form of a so-

called "expert witness" is improper.[7] If one of ordinary skill in the art at the time of the invention were simply to look at the picture above of the Swirl Wrap product, one of ordinary skill would have recognized that a mattress cannot be "inserted into" the plastic sheet and tape bands. One of ordinary skill would also have recognized that a 2-dimensional sheet is not a "containment sleeve" or even "a case into which a mattress fits", as Dreamwell proposes. A 2-dimensional sheet cannot be a sleeve because it has no opening into which an object can fit. This simple claim interpretation is not a question for the jury. Once it is decided that "inserting into" means "inserting into" and that "containment sleeve" cannot mean a 2-dimensional object, no reasonable jury could find that placing a mattress onto a sheet and rolling the mattress up inside that sheet is the equivalent of inserting the mattress into a containment sleeve.

Second, even if the term "inserting" were to receive Dreamwell's term-vitiating interpretation, the "combination of the plastic sheet and tape or bands" would still not function in "substantially the same way" as the recited containment sleeve as contended by Dreamwell. (Dreamwell's Opposition, 17:19-23) As explained in the '142 Patent, there is a disadvantage of vacuum packing spring mattresses in that once the containment sleeve is punctured, the springs can extend to their extended state in an "uncontrolled and somewhat abrupt manner" in what can be a "surprising and possibly dangerous experience." ('142 Patent, 2:20-26) The '142 Patent explains that a vacuum is used to deform a tube 22 around an article (e.g. mattress), thereby causing the mattress to compress. As is evident from Figure 3 of the '142 Patent (reproduced above left) the compressed mattress in "tube 22" can be "inserted into" the "containment sleeve 26". Later, when the mattress is to be unpacked, the containment sleeve 26 is severed ('142 Patent, 2:44; 3:49). The claims of the '142 Patent say the containment sleeve 26 is removed. Next, a bleeding of air back into the tube 22 allows the mattress in tube

---

[7] Dreamwell's attempt to introduce a Simmons employee as an expert in claim interpretation should be disregarded. Especially inappropriate is the statement, "I am also the inventor on several pending patent applications relating to Simmons' bedding products. As a result, I am familiar with the United States patent system, and am generally familiar with how patents should be interpreted." (Declaration of Michael S. DeFranks in Opposition to Zinus' Motion for Summary Adjudication, 2:24-26).

ZINUS' REPLY TO DREAMWELL'S OPPOSI-        Case No. 07-CV-03012 PVT
TION TO ZINUS' MOTION FOR SUMMARY        11
ADJUDICATION OF NON-INFRINGEMENT

22 to expand "in a gradual, controlled fashion." ('142 Patent, 2:44-45; 3:54-56)

The "combination of the plastic sheet and tape or bands" of the Swirl Wrap method, on the other hand, functions in a substantially different way. Zinus' President, Scott Reeves, explained that the sheet <u>reinforces each layer</u> of the mattress roll, not just the outside in the way a sleeve contains the mattress. Mr. Reeves testified:

> "So as you roll that mattress continuously until such time as it's completely rolled, <u>you now have all those layers of that reinforced flexible film material holding that mattress together</u>, not allowing it to expand. And then you combine that with reinforced taping that goes across the product. The combination of those two elements gives us a very stable product." (emphasis added)

(Declaration of Kenneth B. Wilson in Opposition to Zinus' Motion, Exh. 2 (Deposition Transcript of Scott Reeves, 20:16-24)).[8] Severing the Swirl Wrap tape allows one end of the sheet to be freed, but the other end of the sheet is not freed. The sheet stops its holding and support function, bit by bit, as it is unrolled along with the compressed mattress. This does not occur with containment sleeve 26 of the '142 Patent which is simply "severed". Finally, the Swirl Wrap method uses tape or banding to contain the compressed mattress. The recited step of "inserting", however, does not contain the compressed mattress in this way. The recited step does not use tape to contain the compressed mattress, and it would be practically impossible to insert a compressed mattress into tape.

In sum, it is an unreasonable stretch to say that the "combination of the plastic sheet and tape or bands" is a containment sleeve. Not only would one of ordinary skill in the art not make such an interpretation, but such an interpretation vitiates the "inserting . . . into" term. Moreover, even if the "combination of the plastic sheet and tape or bands" were interpreted to be a "containment sleeve" as Dreamwell contends, the "combination of the plastic sheet and tape or bands" would still not be an equivalent of the containment sleeve under the doctrine of equivalents because rolling up a compressed mattress with the Swirl Wrap sheet and subsequently applying tape to the roll does not perform the function of

---

[8] The deposition transcript of Scott Reeves is available in its entirety as Exhibit 2 to the Declaration of Kenneth B. Wilson in support of Dreamwell's Opposition. No duplicate copy has been added to the case file along with the Reply brief.

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR SUMMARY                12                Case No. 07-CV-03012 PVT
ADJUDICATION OF NON-INFRINGEMENT

containing the compressed mattress in "substantially the same way" as the recited "inserting . . . into a containment sleeve" in the '142 Patent.

## V. CONCLUSION

The Swirl Wrap packaging method does not infringe under the doctrine of equivalents for three independent reasons. First, application of the doctrine of equivalents to the "inserting . . . into a containment sleeve" element is totally barred due to prosecution history estoppel. Second, the Swirl Wrap packaging method is actually a prior art method, and practicing the prior art is an absolute defense to a charge of infringement under the doctrine of equivalents. Moreover, the burden is on Dreamwell as the patentee to prove that the range of equivalents that it seeks do not ensnare the prior art. *Wilson Sporting Goods*, 904 F.2d at 684. And third, the rolling up of a compressed mattress with the Swirl Wrap sheet and subsequently applying tape to the roll does not perform the function of containing the compressed mattress in "substantially the same way" as the recited "inserting . . . into a containment sleeve" element in the '142 Patent.

If Zinus prevails on any one of these three points, then there can be no infringement under the doctrine of equivalents. That the Swirl Wrap packaging method does not literally infringe has been effectively conceded. Accordingly, Zinus' Motion for Summary Adjudication that the "Swirl Wrap" packaging method does not infringe any claim of U.S. Patent Number Re. 36,142 should be granted.

Dated: November 27, 2007         By:  _____/s/_____

                                             Darien K. Wallace
                                             IMPERIUM PATENT WORKS
                                             Attorneys for Plaintiff and Counterdefendant
                                             ZINUS, INC.