UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZINUS INC., a California Corporation, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>SIMMONS BEDDING CO, a Delaware )<br>Corporation, and DREAMWELL, LTD, a )<br>limited liability company of Nevada )<br>Defendants. )<br>_____ )<br> )<br>AND RELATED COUNTERCLAIMS )<br>_____ ) | Case No.: C 07- 3012  PVT<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I.    INTRODUCTION

Zinus, Inc. ("Zinus") filed this action against Simmons Bedding Company ("Simmons")

and Dreamwell, Ltd. ("Dreamwell," collectively "Defendants") seeking Declaratory Judgement

of non-infringement and invalidity of the U.S. Patent Re. 36,142 ("the '142 Patent).[1]  Zinus

further alleged that Simmons breached a Confidentiality and Non-Disclosure Agreement under

which Simmons agreed not to use or disclose Zinus' business proprietary information without

Zinus' authorization.  Defendants asserted counterclaims against Zinus for infringement of the

'142 Patent and Dreamwell's POCKET COIL® Trademark.  Presently before the Court is

Simmons' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

---

[1]    The holding of this court is limited to the facts and the particular circumstances
underlying the present motion.

claim upon which relief can be granted.

**A.    Factual Background**

Zinus manufactures and sells a bedding product called "Mattress-in-a-box," which can be sold in a transportable package at mass retail stores. (First Amended Complaint "FAC" ¶ 19). During a pilot project in late 2006 and early 2007, Wal-Mart sold Zinus' Mattress-in-a-box products at some of its stores.  (FAC ¶ 20).  Wal-Mart plans to include Zinus' Mattress-in-a-box products in its new sales and marketing campaign throughout its stores.  (FAC ¶ 20).  Currently, the Mattress-in-a-box products are sold at Wal-Mart.com USA, which is an affiliated company of Wal-Mart. (FAC ¶ 20).

Defendant Simmons is a manufacturer of bedding products.  (FAC ¶ 5).  Defendant Dreamwell is a wholly-owned subsidiary of Simmons.  (FAC ¶ 5).  Dreamwell's business is licensing intellectual property, including its patent portfolio relating to bedding products.  (FAC ¶ 5).  Dreamwell is the sole assignee-owner of the '142 Patent, entitled Method of Packaging Resiliently Compressible Articles.  (FAC ¶ 5).  Dreamwell is also the sole owner of a federal trademark "POCKET COIL®."  (Exh. C to FAC).  In March 2007, Simmons and Zinus met to discuss the possibility of Simmons buying products from Zinus and Simmons expressed interest in visiting the Zinus factory in China.  (FAC ¶ 23).  Before the factory visit, Zinus and Simmons executed a Confidentiality and Non-Disclosure Agreement precluding Simmons' use of any confidential Zinus' information without Zinus' authorization.  (FAC ¶ 24, Exh. B to FAC). During the factory visit, the Simmons representatives observed the Mattress-in-a-box manufacturing process and took photographs.  (FAC ¶ 25).

In May, Zinus received a cease-and-desist letter from Dreamwell stating that Zinus' Mattress-in-a-Box product appropriates its '142 Patent and infringes its proprietary brand "POCKET COIL®" Trademark.  (FAC ¶ 26, Exh. C to FAC).  Wal-Mart also received a similar letter from Dreamwell.  (FAC ¶ 27, Exh. D to FAC).  Attached to the letter to Wal-Mart was a photograph of Zinus' Mattress-in-a-Box product.  (FAC ¶ 28).  Zinus' Mattress-in-a-Box package displays stylized text "Pocket Coil Spring Mattress."  (Exh. D to FAC).

In its letter to Wal-Mart, Dreamwell claimed that the attached image was a photograph of

a Mattress-in-a-box that Dreamwell had purchased at a Wal-Mart store.  (FAC ¶ 28, Exh. D to

FAC).  Zinus, however, alleges that this photograph was taken by Simmons representatives

during Zinus' factory tour in China.  (FAC ¶ 28).  Zinus alleges that Simmons breached the

Confidentiality and Non-Disclosure Agreement  by disclosing Zinus' confidential business

proprietary information, including the photograph, to Dreamwell.  (FAC ¶ 59).

### B.    Procedural Background

Zinus filed the Complaint for Declaratory Judgment, Unfair Competition and Breach of

Contract asserting claims for: (1) Declaratory Judgment that Zinus' Mattress-in-a-box does not

violate Dreamwell's '142 Patent (First Count); (2) Declaratory Judgment that Dreamwell's '142

Patent is invalid (Second Count); (3) Violation of the Lanham Act of 15 U.S.C. § 1125(a) by

Dreamwell and Simmons by making false and misleading statements in the cease-and-desist

letters which disparaged Zinus' product (Third Count); and (4) Breach of the Confidentiality and

Non-Disclosure Agreement (Fourth Count).

Simmons moved to dismiss Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6).  On

October 30, 2007, the Parties appeared before Magistrate Judge Patricia V. Trumbull for a

hearing on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. Proc.12(b)(6).  All parties

who have appeared in this action have consented to Magistrate Judge jurisdiction.

## II.    STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. Proc.12(b)(6) tests the legal sufficiency of the

claims alleged in the complaint.  *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484

(9th Cir. 1995).  Dismissal under Fed. R. Civ. Proc. 12(b)(6) may be based either on the "lack of

a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal

theory." *Balistreri v. Pacifica Police Dep*., 901 F.2d 696, 699 (9th Cir. 1990).  Hence, the issue

on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims asserted.

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating such

a motion, the court must accept all material allegations in the complaint as true and construe

them in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80

1   F.3d 336, 340 (9th Cir. 1996).

2       Pursuant to Fed. R. Civ. Proc. 8(a) and under the liberal federal pleading rules, notice and

3   clarity of claims is all that is required. *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335,

4   1337 (N.D. Cal. 1991). However, an allegation that is a mere conclusion of law without facts

5   that is not "enough to raise a right to relief above the speculative level" may not survive a motion

6   to dismiss. *See Bell Atlantic*, 127 S.Ct. at 1959.

7       "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient

8   to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83

9   F.3d 1136, 1140 (9th Cir. 1996). Additionally, the Supreme Court has recently rejected the

10  oft-quoted formulation of *Conley v. Gibson*, 355 U.S. 41, 47, (1957) that "a complaint should not

11  be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

12  prove no set of facts in support of his claim which would entitle him to relief." *See Bell Atlantic*

13  *Corp. v. Twombly*, 127 S.Ct. 1955, 1968 (2007). Rather, the allegations in the complaint "must

14  be enough to raise a right to relief above the speculative level." *Id.* at 1965. A motion to dismiss

15  should be granted if the complaint does not proffer enough facts to state a claim that is plausible

16  on its face. *Id.* at 1966-67.

17      Fed. R. Civ. Proc. 15 permits a plaintiff to amend a complaint after a responsive pleading

18  has been filed. "[T]he Supreme Court has instructed the lower federal courts to heed carefully

19  the command of Rule 15(a), F[ed]. R. Civ. P., by freely granting leave to amend when justice so

20  requires.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations

21  omitted). Courts only dismiss claims without leave to amend if the deficiencies cannot possibly

22  be cured. Leave to amend should be granted unless the court "determines that the pleading could

23  not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497

24  (9th Cir. 1995) (citation omitted).

25  **III.   DISCUSSION**

26      **A.    Plaintiff's First and Second Counts of Complaint**

27      Defendant Simmons moved to dismiss the Amended Complaint pursuant to Fed. R. Civ.

28  Proc. 12(b)(6), arguing that Zinus failed to allege that any case or controversy existed against it

as to the First and Second Counts of Complaint.  (Defendant's Motion to Dismiss "Motion" at 5).

In Opposition to Defendant's Motion to Dismiss, Zinus acknowledged that it did not allege a case

or controversy between Zinus and Simmons with regard to the First and Second Counts of

Complaint.  (Plaintiff's Opp. to Motion to Dismiss "Opp" at 2).  Accordingly, the First and

Second Counts of Complaint for declaratory judgment of non-infringement of the '142 Patent

and invalidity of the '142 Patent are dismissed as to Simmons.

**B.    Defendant Simmons' Motion to Dismiss the Third Count of Complaint for Product Disparagement**

Defendant Simmons argues that Zinus failed to state a claim for product disparagement

under the Lanham Act, 15 U.S.C. 1125(a)(1)(B), which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1)(B) (2006).

In order to state a claim for product disparagement under the Lanham Act, a plaintiff

must allege:  (1) that the defendant made a false or misleading statement of fact in commercial

advertising or promotion about the plaintiff's goods or services; (2) that the statement actually

deceives or is likely to deceive a substantial segment of the intended audience; (3) that the

deception is material in that it is likely to influence purchasing decisions; (4) that the defendant

caused the statement; and (5) that the statement results in actual or probable injury to the

Plaintiff.  *Zenith Elects. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348. (Fed. Cir. 1999); *Southerland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Cook, Perkiss and Liehe, Inc. v. Nor. Cal. Collection Serv., Inc.*, 911 F.2d 244 (9th Cir. 1990).

Defendant Simmons contends that Zinus has not sufficiently alleged either direct or

vicarious liability against it for a violation of the Lanham Act.  (Motion at 7).  Simmons also

1  contends that the cease-and-desist letter to Wal-Mart is not a statement in advertising or

2  promotion.  (Reply Memorandum in support of Motion to Dismiss "Reply" at 2 Fn 1).

3          1.     Allegations Against Simmons

4        Zinus alleged that the cease-and-desist letter was sent by Dreamwell, not by Simmons.

5  (FAC ¶ 26).  Accordingly, Simmons argues that Zinus failed to state a claim against it for a

6  violation of the Lanham Act because Zinus has failed to adequately allege either that Simmons

7  directly violated the Lanham Act or that Simmons is vicariously liable for a violation of the

8  Lanham Act.  (Motion at 7).

9          a.     Simmons' Direct Liability

10        Zinus asserts that it has adequately plead Simmons' direct liability for the

11  cease-and-desist letters by alleging that Simmons "caused Dreamwell to make the false and

12  misleading statements regarding products of Zinus."  (FAC ¶ 52.; see also FAC ¶ 27).

13        In review of a 12(b)(6) motion, all allegations of material facts are taken as true.

14  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  However, it is Zinus' obligation to provide the

15  grounds of its entitlement to relief, and the complaint must proffer enough facts to state a claim

16  for relief that is plausible on its face.  *Bell Atlantic*, 127 S.Ct. at 1956-1967.

17  In the opposition to Simmons' motion, Zinus provides additional facts in support of Simmons'

18  direct liability allegation: Simmons instructed the law firm, Ropes & Gray, to send the

19  cease-and-desist letters on behalf of Dreamwell; Simmons determined that the Zinus product

20  infringed the '142 patent; and Simmons provided to Dreamwell a photograph that its

21  representatives had taken during the factory visit in China which Dreamwell claimed to be a

22  "sample Zinus Product that we (Dreamwell) purchased."  (Opp at p. 4, n. 2).  These facts,

23  however, are not alleged in the Amended Complaint and cannot be considered in assessing

24  whether the Amended Complaint sufficiently states a claim against Simmons.

25        Zinus did not adequately allege Simmons' direct liability claim for the product

26  disparagement since the mere allegation that Simmons caused Dreamwell to send the letters is

27  conclusory.  Nevertheless, Zinus' response made it clear that Zinus can allege facts to state that

28  Dreamwell was acting as Simmons' agent under Simmons' direction in sending the

1 | cease-and-desist letters.

### b. Simmons' Vicarious Liability

In a footnote, Zinus asserts a vicarious liability claim by alleging that Dreamwell is the alter-ego of Simmons. (Opp at 3, Fn 1). Simmons argues that Zinus has not sufficiently alleged vicarious liability under the Lanham Act. (Motion at 7). Vicarious liability "requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citation omitted) (in context of trademark infringement).

As Zinus cites in its opposition, "a parent-subsidiary relationship alone is an insufficient basis on which to hold a parent liable for a subsidiary's actions," unless the subsidiary is the parent's alter-ego or acts as the parent's agent. (Plaintiff's Opp. to Motion to Dismiss "Opp"at 3) (citation omitted).

The Amended Complaint currently does not allege that Dreamwell is the alter-ego of Simmons.[2] Accordingly, the Amended Complaint does not state allegations that plausibly suggest Zinus is entitled to relief from Simmons as the alter-ego of Dreamwell.

### 2. The Letter is a "Commercial Advertising or Promotion"

Simmons asserts that the Lanham Act does not apply to a cease-and-desist letter because it is not a commercial advertising. (Reply at 2 Fn. 1). The Lanham Act proscribes misrepresentation of another's goods or services in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).[3] In order to qualify as "commercial advertising or promotion," a representation must be: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers in purchasing

---

[2]    In Fourth claim for breach of contract, Zinus states "If Dreamwell is found to be an agent or the alter-ego of Simmons, then Dreamwell breached the agreement…" (FAC ¶ 59). But, the Complaint never actually alleges alter-ego liability for Third Claim under the Lanham Act. If Zinus can allege sufficient facts to assert vicarious liability against Simmons, it may make such a claim in the Second Amended Complaint.

[3]    To the extent that Zinus argued that the "commercial advertising or promotion" requirement does not apply to product disparagement claims, Zinus is mistaken.

defendant's goods and services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising within the industry.  *Coastal Abstract Serv. V. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

The cease-and-desist letter is:  (1) commercial speech; (2) made by a defendant in competition with the plaintiff.  The third and fourth requirements, however, are not as clear.

### a.    To Influence Consumer to Purchase Defendants' Goods

Zinus has not alleged that the purpose of the letter was to influence Wal-Mart to buy Simmons' products.  The Amended Complaint states the cease-and-desist letters "are likely to influence purchasing decisions of a Zinus customer, Wal-Mart."  (FAC ¶ 50).  Pleading that the cease-and-desist letters may influence Wal-Mart to refrain from purchasing Zinus' product is not sufficient.  *See Rice*, 330 F.3d at 1181; *Costal Abstract Serv*., 173 F.3d at 735; *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-57 (2nd Cir. 2002).

### b.    Sufficient Dissemination

Contrary to Simmons' suggestion in its footnote, representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion.  *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).

The Second Circuit, in a well reasoned opinion, concluded that limiting the reach of the Lanham Act to conventional mass media advertising would render the statutory language "or promotion" superfluous.  *Fashion Boutique*, 314 F.3d at 57.  The Second Circuit concluded: "Although advertising is generally understood to consist of widespread communication through print or broadcast media, 'promotion' may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers."  *Id.*

Sufficient dissemination is dependent on the size of the relevant market.  When the relevant market is small, limited dissemination is sufficient.  *See Coastal Abstract Serv*., 173 F.3d at 735 ("even a single promotional representation to an individual purchaser may be enough to trigger the protections of the Act").

In this case, there is a limited number of large-scale retailers that may be willing and able to sell Zinus' product.  Accordingly, a statement to Wal-Mart is sufficient dissemination to the

1  relevant purchasing public, and therefore, constitutes advertising within the industry.

2  For the reasons stated above, Zinus has neither sufficiently alleged that Simmons is liable, either

3  directly or vicariously, nor stated that the cease-and-desist letter satisfied all four criteria to

4  qualify as "advertising or promotion" under the Lanham Act.  However, because Zinus can

5  allege other facts to cure the defects, Defendant's motion to dismiss under Fed. R. Civ. Proc.

6  12(b)(6) is granted as to the Third Count with leave to amend.

7
8         **C.**    **Defendant Simmons' Motion to Dismiss the Fourth Count of Complaint for Breach of Contract**

9        Simmons asserted that Zinus failed to allege complete performance (Reply at 4).  In

10  response, Zinus obtained Simmons' stipulation to amend its complaint to allege its performance

11  more directly.  (Docket # 41).  Accordingly, Defendant's motion is granted as to the Fourth

12  Count.[4]

13  **IV.**    **CONCLUSION**

14        For the foregoing reasons, IT IS HEREBY ORDERED that:

15          1.    Simmons' Motion to Dismiss is granted as to the First and Second Counts

16               which are dismissed as to Simmons only and without leave to amend;

17          2.    Defendant's Motion to Dismiss the Third and Fourth Counts is granted

18               with leave to amend;

19          3.    Zinus shall file a Second Amended Complaint no later than December 4,

20               2007; and

21          4.    Simmons shall file a response within ten (10) days after Zinus' filing of the

22               Second Amended Complaint.

23        IT IS SO ORDERED.

24  Dated: December  5, 2007

25                                   _____

26                                   PATRICIA V. TRUMBULL
                                 United States Magistrate Judge

27
28     [4]    The Court will not grant the stipulation for a second amended complaint.  Instead, Zinus shall file a second amended complaint in conformance with this Order.