1  Kenneth B. Wilson, Calif. Bar No. 130009
   KWilson@perkinscoie.com
2  PERKINS COIE LLP
   Four Embarcadero Center, Suite 2400
3  San Francisco, CA  94111-4131
   Telephone:  415.344.7000
4  Facsimile:  415.344.7050

5  Attorneys for Defendant
   SIMMONS BEDDING COMPANY
6  and Defendant and Counterclaimant DREAMWELL, LTD.

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  ZINUS, INC. a California Corporation,        Case No. 07-CV-03012-PVT

13              Plaintiff,              **DREAMWELL'S MEMORANDUM IN
                                        OPPOSITION TO PLAINTIFF ZINUS INC.'S
14       v.                            MOTION FOR RECONSIDERATION**

15  SIMMONS BEDDING COMPANY, a
    Delaware corporation, and DREAMWELL,   **Date**:        January 22, 2008
16  LTD., a limited liability company of     **Time**:        10:00 a.m.
    Nevada,                                  **Before**:      The Honorable Patricia V. Trumbull
17                                           **Location**:    Courtroom 5
              Defendants.
18

19  ─────────────────────────────

20  AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................................... 1

Statement of Relevant Facts............................................................................................ 2

Argument ......................................................................................................................... 7

I.     ZINUS CANNOT PREVAIL ON ITS PROSECUTION HISTORY ESTOPPEL
       DEFENSE AS A MATTER OF LAW ................................................................. 7

       A.     The Law of Prosecution History Estoppel ...................................... 7

       B.     The Doctrine of Prosecution History Estoppel Is
              Inapplicable to the Containment Sleeve Element. ........................... 9

       C.     Even If the Doctrine of Prosecution History Estoppel
              Applied to the Containment Sleeve Element, It Would Not
              Preclude Dreamwell from Arguing that the Combination of
              Fabric and Tape or Bands Constitutes the Equivalent of a
              Containment Sleeve. ...................................................................... 11

              1.     The Rationale Underlying the Narrowing
                     Amendments Bear No More than a Tangential
                     Relation to Whether the Combination of Fabric and
                     Banding Tape or Plastic Stripping Is Equivalent to
                     the Claimed Containment Sleeve...................................... 12

              2.     There Are at Least Triable Issues of Fact Relating to
                     Whether Dreamwell Is Entitled to the
                     Unforseeability Exception to the Presumption of
                     Prosecution History Estoppel........................................... 13

Conclusion ..................................................................................................................... 18

1

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

2

**Cases**

3

*AquaTex Industries, Inc. v. Techniche Solutions,*

4
    479 F.3d 1320 (Fed. Cir. 2007)............................................................................... 9, 10

5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    493 U.S. 1368 (Fed. Cir. 2007)................................................................................. 1, 8

6

*Insituform Technologies, Inc. v. CAT Contracting, Inc.,*

7
    385 F.3d 1360, 1370 (Fed. Cir. 2004)......................................................................... 12

8

*Toro Company v. White Consolidated Industries, Inc.,*
    266 F.3d 1367 (Fed. Cir. 2001)..................................................................................... 7

9

*Warner-Jenkinson v. Hilton Davis Chemical Co.,*

10
    520 U.S. 17 (1997)........................................................................................................ 7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Introduction**

2    Plaintiff and counterclaim defendant Zinus, Inc.'s ("Zinus'") Motion for Reconsideration

3 is premised on an issue that was raised for the first time in Zinus' Reply Brief in support of its

4 original Motion for Summary Judgment[1]: whether the doctrine of prosecution history estoppel

5 precludes defendant and counterclaimant Dreamwell, Ltd. ("Dreamwell") from arguing that

6 Zinus' use of the combination of a sheet of reinforced fabric and bands of tape or plastic stripping

7 to prevent the compressed mattress from expanding during shipping is the equivalent of a

8 containment sleeve. However, Zinus' motion skips over the fundamental question of whether

9 prosecution history estoppel even applies to the claimed equivalent in question.

10    In particular, Zinus' argument appears to suggest (without any legal basis) that if a claim

11 element is modified, the components or terms within that element are not entitled to any scope of

12 equivalents. But the law is clear, and is properly stated (albeit not properly applied) at page 11 of

13 Zinus' Motion for Reconsideration: "any 'equivalent' that was within the scope of the claim

14 before amendment, and that is not within the scope of the claim after amendment, is presumed to

15 have been surrendered." *See also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493

16 U.S. 1368 (Fed. Cir. 2007) (*Festo 2007*) (emphasis added) ("A patentee's decision to narrow his

17 claims through amendment may be presumed to be a general disclaimer *of the territory between*

18 *the original claim and the amended claim*"). In other words, prosecution history estoppel only

19 serves as a limitation on the doctrine of equivalents to the extent an accused device or method

20 falls between the scope of the element as originally drafted and the scope of the claim as

21 ultimately issued.

22    Here, both Zinus' moving papers and the patent file history plainly demonstrate that the

23 only relevant amendment involved narrowing the subject of the patented method from generic

24 "compressed articles" to a specific mattress assembly "of coiled springs wherein each spring is

25

26    [1] Dreamwell submits that it is improper for Zinus to bring a "Motion for Reconsideration" based
on an argument raised for the first time in its Reply papers, and further notes that Zinus has failed to make
27 any showing that it is entitled to seek reconsideration, as required by Local Rule 7-9. However, since the
Court has already granted Zinus leave to bring this motion, Dreamwell has limited its Opposition to the
28 merits of Zinus' Motion.

1    contained within an individual pocket of fabric." There was never any modification to the

2    "containment sleeve" language itself. Thus, while the doctrine of prosecution history estoppel

3    might impact Dreamwell's ability to argue under the doctrine of equivalents that its claims cover

4    a compressed article other than a pocketed coil innerspring mattress, it has no effect on the scope

5    of equivalents for the containment sleeve. Moreover, even if Dreamwell could somehow be

6    presumed to have surrendered some range of equivalents with respect to the containment sleeve,

7    the scope of subject matter surrendered could not as a matter of law be construed broadly enough

8    to preempt Dreamwell's doctrine of equivalents claim.

9        Once the law is properly applied, it is clear that the doctrine of prosecution history

10   estoppel has no applicability to Dreamwell's doctrine of equivalents argument. Indeed, the

11   governing case law demonstrates as a matter of law that Zinus' prosecution history estoppel is

12   legally and factually without merit. Accordingly, Dreamwell respectfully submits that Zinus'

13   Motion for Reconsideration must be denied.

14                        **Statement of Relevant Facts**

15       Although many of the facts relating to Zinus' Motion for Reconsideration were set forth in

16   Dreamwell's original Opposition to Zinus' Motion for Partial Summary Judgment (the "Summary

17   Judgment Opposition"), certain of the facts were not. Moreover, because prosecution history

18   estoppel was not raised as an issue until Zinus' Summary Judgment Reply Memorandum,

19   Dreamwell's Summary Judgment Opposition did not present the facts with an eye to that defense.

20   As a result, Dreamwell submits the following summary of facts that have particular relevance to

21   the prosecution history estoppel issue.

22   Background of the '142 Patent

23       As noted in Dreamwell's original Opposition to Zinus' Motion for Partial Summary

24   Judgment, the '142 Patent provides an improved method of packaging for shipment a particular

25   type of innerspring mattress assembly (i.e., a mattress assembly "wherein each spring is contained

26   within an individual pocket of fabric"). [*See, e.g.,* Declaration of Kenneth B. Wilson in

27   Opposition to Plaintiff Zinus, Inc.'s Motion for Summary Adjudication of Non-Infringement

28

1  ("Wilson Decl."), Exh. 1 ('142 Patent, 4:6-8, 4:43-45, 5:1-3, 5:25-59, 6:9-11)][2]  Such mattresses

2  "are lightweight and bulky and cannot be delivered to the consumer without an undesirably high

3  cost associated with shipment," which "adversely affect[s] the perceived value of the article to the

4  consumer."  [*Id.* ('142 Patent, 1:22-28]  To address these issues, the '142 Patent discloses a

5  method of packaging this particular type of innerspring mattress for shipment in a compressed

6  state, thereby simplifying and reducing the cost of shipping (and therefore potentially the cost to

7  consumers) of the product.  [*See id.* ('142 Patent, 1:15-20)]

8          On April 4, 1995, inventors C. Edward Steed and Rickey F. Gladney filed the application

9  on which the '142 Patent was based.  [Wilson Decl. Exh. 1 ('142 Patent, p. 1)]  The original

10  application contained four claims (one independent and three dependent), which sought broad

11  coverage of a method of packaging a "resiliently compressible article," rather than innerspring

12  mattresses.  [Exh. W-F][3]  Accordingly, each of the claims included the step of placing the generic

13  "compressible article" into a tube of deformable material, which was subsequently evacuated, as

14  well as the following element: "inserting said evacuated tube into a containment sleeve which is

15  dimensioned and configured to retain said ***compressed article*** in a compressed state."  [*Id.* (the

16  italicized phrase is the term in this element that was ultimately amended in the '142 Patent

17  claims)]

18          In its initial Office Action, the Patent Office rejected all four claims of the original

19  application as obvious in light of the Broyles prior art reference, which related to a process of

20  putting mattress springs into a cover.  [Exh. W-F]  In January 1996, the inventors therefore

21  submitted a response to this Office Action in which they amended the object of the claimed

22  process from a "resiliently compressible article" to an "assembly of coiled springs wherein each

23  spring is contained within an individual pocket of fabric."  Similarly, the element at issue was

24  amended to read as follows:  "inserting said evacuated tube into a containment sleeve which is

25  _____

26          [2] Rather than burden the Court with additional paper, and since this is a Motion for
Reconsideration, Dreamwell's evidentiary citations are to the Declarations filed in connection with Zinus'
underlying Motion for Partial Summary Judgment.  Moreover, as was the case with the original Motion,

27  when referring to the '142 Patent, "X:Y-Z" refers to column X, lines Y-Z of the patent.

28          [3] Citations to exhibits beginning with "Exh. R" or "Exh. W" refer to Exhibits to the Declarations
submitted by plaintiff Zinus in support of its original motion.

1    dimensioned and configured to retain said **compressed assembly** in a compressed state." ." [*Id.*

2    (again, the italicized phrase is the term in this element that was ultimately amended in the '142

3    Patent claims)]  In other words, the only modification to the "containment sleeve" element was to

4    change the word "article" to "assembly."  The inventors made no amendment to the "containment

5    sleeve" language itself.  In fact, the language "inserting said evacuated tube into a containment

6    sleeve which is dimensioned and configured to retain" remained unchanged throughout the

7    prosecution of the patent.

8            In presenting their patentability argument, the inventors reinforced that the subject matter

9    of the amendment was the type of article to be packaged, noting that "[i]n an effort to distinguish

10   even more clearly over Broyles, claim 1 has been amended herein to specifically recite a method

11   of packaging *pocketed* coils."  [Exh. W-F (emphasis in original)]  To support their argument that

12   a mattress assembly in which each spring is contained within an individual pocket of fabric

13   differs significantly from other types of mattresses (such as the Broyles mattress), the applicants

14   submitted the Declaration of co-inventor Ricky F. Gladney.  [*Id.* (Declaration of Ricky F.

15   Gladney Under Rule 1.132 ("Gladney Decl."))]  In this Declaration, Mr. Gladney detailed the

16   results of tests that he had conducted which established that the use of pocketed coil spring

17   assemblies with the other steps of the claimed method achieved substantial and unexpected

18   benefits over utilizing those steps with the prior art Broyles mattress assembly, which did not

19   contain pocketed coils.  [*Id.* (Gladney Decl. at ¶¶ 6-9)]

20           Notwithstanding these arguments, the Patent Office issued a "final rejection "of all claims

21   in light of the Broyles patent.  [Exh. W-F]  In response, on or about June 26, 1996, the inventors

22   submitted an Amendment After Final Rejection in which they again narrowed the type of material

23   to be packaged, this time from "an assembly of coil springs" to "a mattress assembly constructed

24   of coil springs."  The inventors correspondingly added the highlighted language to the

25   "containment sleeve" element:  "inserting said evacuation tube into a containment sleeve which is

26   dimensioned and configured to retain said **mattress assembly** in a compressed state **for**

27   **shipment**."  [*Id.*]  However, once again, the inventors did not offer any amendments that would

28   narrow or "surrender" any subject matter relating to the containment sleeve.

1    On October 30, 1996, after the inventors filed a continuation application containing the

2    four claims from the June 26, 1996 Amendment and abandoned the original application, the

3    Patent Office finally issued a Notice of Allowability confirming that the twice amended claims

4    were patentable.  [Exh. W-E]  On April 22, 1997, the Patent Office issued U.S. Patent No.

5    5,622,030 (the "'030 Patent"), which included these claims.  [*Id.*]

6    Roughly four months after the '030 Patent issued, the inventors filed an application for a

7    broadening reissue of the patent, based on errors in the original application.  The new application

8    contained a broader version of original independent claim 1, as well as five new dependent claims

9    that provided variations on the original patented method.  Neither the modified claim 1 nor the

10    new dependent claims (for of which ultimately issued as independent claims) contained any

11    modification to the element at issue in this motion, or otherwise narrowed the scope of the

12    claimed "containment sleeve".

13    On March 16, 1999, with only slight technical modifications that are irrelevant to this

14    motion, these claims "reissued" as the '142 Patent.  [Exh. W-D]

15    Zinus' Accused Swirl Wrap Process

16    According to Zinus' Amended Complaint, some seven years after issuance of the '142

17    Patent, Zinus introduced its original Mattress-in-a-Box product in about 100 Wal-Mart stores.

18    [Third Amended Complaint ¶ 20]  Zinus' original Mattress-in-a-Box product was packaged for

19    shipping in a "polyethylene duffel bag, the purpose of which (in the words of Zinus' President,

20    Scott Reeves) was "to limit or prevent the expansion of the compressed mattress" during

21    shipping.  [Wilson Decl. Exh. 2 (Deposition Transcript of Scott Reeves ("Reeves Depo."), 33:7-

22    10][4]

23    After receiving notice of Dreamwell's infringement claim, Zinus decided to replace the

24    polyethylene duffel bag, and to instead use a combination of reinforced fabric and banding tape or

25    plastic stripping to limit the expansion of the compressed mattress, in what Zinus refers to as the

26    "Swirl Wrap" process.  As part of this process, a compressed mattress is placed onto a rectangular

27    

28    _____

[4] When citing to the deposition transcript of Scott Reeves, "X:Y-Z" refers to page X, lines Y-Z.

1   sheet of flexible film or fabric that is slightly wider than the mattress, and is manually rolled up

2   into the sheet of fabric. [Wilson Decl. Exh. 2 (Reeves Depo., 28:8-20, 30:11-19)] In one

3   embodiment of this process, adhesive tape is wrapped around the outside of the fabric roll,

4   adhering to the fabric sheet and (along with the fabric sheet) preventing the compressed mattress

5   assembly from expanding during shipping. [*Id.* (Reeves Depo., 20:1-24, 28:21-29:11)] In

6   another embodiment, instead of adhesive tape, plastic stripping is wrapped around the rolled up

7   mattress to secure it. [*Id.* (Reeves Depo., 20:1-24, 38:23-40:4)] The bundled assembly is then

8   placed into a box for shipment. [*Id.* (Reeves Depo., 36:21-37:11)]

9        In the words of Zinus' President, Mr. Reeves, "[t]he flexible film and the tape or bands

10  [are] designed to limit the ability of the compressed mattress to expand" during shipping. [Wilson

11  Decl. Exh. 2 (Reeves Depo., 20:1-4; *see also* 29:24-30:8, 32:24-33:4)] The way in which Zinus

12  perform this function is by providing a barrier (i.e., the combination of the reinforced fabric and

13  the bands of tape or plastic stripping) that covers or surrounds a substantial portion of the exposed

14  surface of the mattress and that is sufficiently strong to restrict the ability of the compressed

15  mattress to expand (i.e., it "holds the mattress"). [*Id.* (Reeves Depo., 20:9-24; *see* also 30:24-31:8

16  ("The combination of the flexible film and tape or bands limit the compressed mattress from

17  expanding after it was rolled up. . . . [B]oth the flexible film that's reinforced and the strapping

18  material combined together to give us a strong hold on that mattress")] And Mr. Reeves

19  confirmed that the result of this combination is that it gives Zinus "a very stable product . . . , one

20  that will not expand" during shipping. [*Id.* (Reeves Depo., 20:5-24 (""The combination of the

21  film and the tape or the bands [is] effective in limiting the ability of the compressed mattress to

22  expand")]

23       Dreamwell's technical expert further corroborated Mr. Reeves' testimony regarding the

24  function and structure of the accused equivalent. [*See* Expert Declaration of Michael S. DeFranks

25  in Opposition to Plaintiff Zinus, Inc.'s Motion for Summary Adjudication of Non-Infringement

26  ("DeFranks Decl."), ¶¶ 12-19 ("the Swirl Wrap process also performs the function of preventing

27  or restricting the compressed mattress from expanding during shipment by providing a barrier that

28  covers or surrounds a substantial portion of the exposed surface of the mattress (in the form of the

1    combination of the reinforced fabric sheet and the ribbon-shaped bands of adhesive tape or plastic

2    stripping) and that is sufficiently strong to resist the internal forces of the compressed mattress")]

3                                          <u>**Argument**</u>

4    **I.     ZINUS CANNOT PREVAIL ON ITS PROSECUTION HISTORY
            ESTOPPEL DEFENSE AS A MATTER OF LAW**

5

6          Zinus' Motion for Reconsideration does not seek to challenge the general proposition that,

7    in assessing a motion for summary judgment of non-infringement under the doctrine of

8    equivalents, special care must be taken because "[i]nfringement under the doctrine of equivalents

9    requires an intensely factual inquiry."  *See, e.g., Toro Company v. White Consolidated Industries,*

10   *Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) (citations omitted) (reversing summary judgment of

11   non-infringement based on doctrine of equivalents); *see also Warner-Jenkinson v. Hilton Davis*

12   *Chemical Co.*, 520 U.S. 17, 39 n. 8 (1997).  Instead, Zinus argues that the Court can bypass this

13   fact-intensive inquiry because Zinus has presented a prosecution history estoppel defense that the

14   Court can decide as a matter of law and that, if decided in Zinus' favor, could resolve

15   Dreamwell's doctrine of equivalents claim as it relates to Zinus' Swirl Wrap packaging process.[5]

16         Dreamwell agrees that the merits of Zinus' prosecution history estoppel defense can likely

17   be decided as a matter of law.  However, contrary to Zinus' assertions, the evidence of record

18   mandates that this issue be decided in Dreamwell's favor.

19         **A.     <u>The Law of Prosecution History Estoppel</u>**

20         Dreamwell agrees with Zinus that the Federal Circuit has provided substantial and

21   detailed guidance on the law of prosecution history estoppel.  Specifically, as the Federal Circuit

22   recently summarized (and as reproduced by Zinus at page 1 of its Summary Judgment Reply

23   Memorandum), "[p]rosecution history estoppel limits the broad application of the doctrine of

24   equivalents by barring an equivalents argument ***for subject matter relinquished*** when a patent

25

26         [5] Although Zinus' Motion for Reconsideration contains a substantial discussion of Dreamwell's
     literal infringement claim, Zinus never moved for a partial summary judgment on that theory of

27   infringement.  Rather, Zinus moved for summary judgment on infringement as a whole.  Accordingly, and
     because Dreamwell has presented at least a triable issue of fact on its doctrine of equivalents argument,

28   Dreamwell has not addressed literal infringement in this Opposition.

1   claim is narrowed during prosecution." *Conoco, Inc. v. Energy & Environmental Intern., L.C.*,

2   460 F.3d 1349, 1363 (Fed Cir. 2006).

3        As Zinus properly recognized at page 2 of its Summary Judgment Reply Memorandum,

4   with respect to amendment-based estoppel (which is the species of prosecution history estoppel

5   that Zinus has asserted),[6] the Supreme Court has stated that "[a] patentee's decision to narrow his

6   claims through amendment may be presumed to be a general disclaimer *of the territory between*

7   *the original claim and the amended claim*." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*

8   *Co., Ltd.*, 535 U.S. 722, 740-41, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) (emphasis added).  In

9   other words (in fact, in Zinus' own words from page 11 of its Motion for Reconsideration), "any

10  'equivalent' that was within the scope of the claim before amendment, and that is not within the

11  scope of the claim after amendment, is presumed to have been surrendered."  On the other hand,

12  the presumption of prosecution history estoppel does not apply to a claim element that is not

13  amended, or to an accused equivalent that was not surrendered as part of a prosecution history

14  amendment.[7]  *See AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir.

15  2007).

16       Even where a claim has been amended in a way that the presumption of prosecution

17  history applies, the Supreme Court has noted in its *Festo* opinion that "[t]here are some cases . . .

18  where the amendment cannot reasonably be viewed as surrendering a particular equivalent. The

19  equivalent may have been unforeseeable at the time of the application; the rationale underlying

20  the amendment may bear no more than a tangential relation to the equivalent in question; or there

21  may be some other reason suggesting that the patentee could not reasonably be expected to have

---

22       [6] There is a second species of prosecution history estoppel, "argument-based estoppel," but for this

23  type of estoppel to apply, the inventors must "clearly and unmistakably surrender[] subject matter by
    arguments made to an examiner."  *See, e.g., Aquatex Industries, Inc. v. Techniche Industries*, 419 F.3d

24  1374 (Fed. Cir. 2005).  Here, the '142 Patent contains no "clear and unmistakable surrender of subject
    matter" relating to the containment sleeve, and not surprisingly, Zinus has not asserted that this species of

25  estoppel applies to Dreamwell's doctrine of equivalents claim.

26       [7] At page 8 of its Motion for Reconsideration, Zinus erroneously asserts without citation to any
    case authority that "[t]he patentee is presumed to have disclaimed claim scope to equivalents of amended

27  claim elements."  As the U.S. Supreme Court and the Federal Circuit made clear in the *Festo* cases, this
    statement is overly broad; the patentee is presumed to have disclaimed claim scope, but only "of the

28  territory between the original claim and the amended claim."  As discussed in more detail below, this
    distinction is critical on the facts of this case.

---

1    described the insubstantial substitute in question. In those cases the patentee can overcome the

2    presumption that prosecution history estoppel bars a finding of equivalence." 535 U.S. at 740-41.

3        Finally, as Zinus correctly notes, as a general matter "[p]rosecution history estoppel as a

4    limit on the doctrine of equivalents is an issue of law which is reviewed without deference."

5    *Festo 2007*, 493 F.3d at 1376 (citations omitted). However, as Zinus also acknowledges at page 9

6    of the Motion for Reconsideration, the unforseeability exception to the presumption of

7    prosecution history estoppel may depend on the resolution of disputed facts issues. *Festo 2007* at

8    1375 (citations omitted) ("because by its very nature objective unforseeability depends on

9    underlying factual issues, district courts may hear expert testimony and consider other evidence

10   relating to the forseeability analysis"). Thus, while unforseeability is an issue to be decided by

11   the Court, its fact-intensive nature may make it inappropriate to resolve in the context of a

12   summary judgment motion.

13       **B.    The Doctrine of Prosecution History Estoppel Is Inapplicable to the
             Containment Sleeve Element.**

14

15       As noted above, the presumption (and therefore the defense) of prosecution history

16   estoppel only applies to limit a claim of infringement under the doctrine of equivalents where the

17   accused equivalent was "within the scope of the claim before amendment, and . . . is not within

18   the scope of the claim after amendment,. Zinus has not argued and cannot seriously argue its

19   combination of reinforced fabric and bands of tape or plastic stripping was literally covered by

20   the original claims of the '142 Patent, and that the claims were later amended to surrender this

21   embodiment. In fact, as the '142 Patent prosecution history clearly establishes, the "containment

22   sleeve" language was not substantively narrowed throughout the prosecution of the patent.

23   Accordingly, while Zinus' prosecution history defense may be decided as a matter of law, it

24   should be decided in Dreamwell's favor.

25       The Federal Circuit's opinion in *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d

26   1320 (Fed. Cir. 2007), is controlling on this issue. In *AquaTex*, the district court granted

27   defendant's motion for summary judgment of non-infringement, finding in relevant part that

28   plaintiff's claim of infringement under the doctrine of equivalents was barred by prosecution

1    history estoppel based on a narrowing amendment made during prosecution of the patent.  The

2    Federal Circuit reversed, holding that "[t]he subject matter surrendered by the narrowing

3    amendment bears no relation to the composition of the fiberfill batting material," which was the

4    basis for plaintiff's equivalence claim.  *AquaTex*, 419 F.3d at 1383.  In fact, the Court went on to

5    observe that the amendment in question "was directed to a completely different claim limitation -

6    the requirement that the overall method of cooling of the garment be by evaporation."  *Id.*  Thus,

7    the Court reasoned that "AquaTex surrendered no claim to the characteristics of the fiberfill

8    during prosecution and was not barred from asserting equivalents as to the 'fiberfill batting

9    material' limitation."  *Id.*

10       As was the case in *Aquatex*, while the inventors of the '142 Patent did make certain

11   narrowing amendments (by limiting the subject matter of the method to a mattress assembly

12   consisting of pocketed coil springs, as opposed to the generic "resiliently compressible articles

13   that were the original target of the patented method), those amendments did not limit or restrict

14   the characteristics of the containment sleeve element at issue in this motion.  Indeed, as in

15   *Aquatex*, these amendments were directed to an entirely different aspect than the containment

16   sleeve, namely the specific type of article or assembly on which the patented method would be

17   performed.  There is no conceivable argument that in making these amendments, the inventors

18   surrendered coverage of the Zinus combination of fabric and banding tape or plastic stripping.

19       Similarly, while the inventors of the '142 Patent modified the claims to clarify that the

20   function of the containment sleeve was "to retain said mattress assembly in a compressed state ***for***

21   ***shipment***," Zinus has not argued and cannot argue that the addition of the clause "for shipment"

22   substantively narrowed the scope of the claims at all, let alone that it surrendered subject matter

23   that would place Zinus' accused equivalent outside the scope of the '142 Patent claims.  To the

24   contrary, Zinus' President clearly and repeatedly testified that like the containment sleeve, the

25   purpose of the fabric sheet and tape/plastic stripping combination was to restrict the mattress

26   assembly from expanding during shipment.  [Wilson Decl. Exh. 2 (Reeves Depo., 20:1-4 ("[t]he

27

28

1  flexible film and the tape or bands [are] designed to limit the ability of the compressed mattress to

2  expand" during shipping); *see also* 29:24-30:8, 32:24-33:4)] [8]

3      In sum, the intrinsic record clearly establishes that Dreamwell surrendered no claim to the

4  characteristics of the containment sleeve during prosecution, and that the doctrine of prosecution

5  history estoppel therefore provides no limitation on Dreamwell's ability to assert infringement

6  under the doctrine of equivalents with respect to Zinus' fabric sheet and tape/plastic stripping

7  combination.  Dreamwell is entitled to resolution of this issue in its favor as a matter of law.

8      C.    **Even If the Doctrine of Prosecution History Estoppel Applied to the
        Containment Sleeve Element, It Would Not Preclude Dreamwell from**

9      **Arguing that the Combination of Fabric and Tape or Bands
        Constitutes the Equivalent of a Containment Sleeve.**

10

11      While Dreamwell is confident that the Court will find that the presumption of prosecution

12  history estoppel is inapplicable on the facts of this case because Dreamwell is not seeking to

13  recapture subject matter that it surrendered during prosecution of the '142 Patent, even if the

14  Court were somehow to decide to apply the presumption, Zinus still cannot establish that the

15  prosecution history amendments operate to bar Dreamwell's doctrine of equivalents claim.  .

16  This is because Dreamwell is entitled to the benefit at least two of the *Festo* exceptions to the

17  presumption:  1) the rationale underlying the amendments bears no more than a tangential relation

18  to the equivalent in question; and 2) there is at least a triable issue of fact regarding whether the

19  claimed equivalent would have been unforeseeable at the time of the application.

20

21

22

23

---

24      [8] The only other amendment that could conceivably impact the scope of equivalents allotted to the

25  "containment sleeve" element is the addition of the element ""removing said evacuated tube from said
   containment sleeve."  However, while this language may, in the words of the inventors, enable "the
   structure and functioning of applicants' containment sleeve [to be] more clearly and specifically defined,"

26  it does not provide any substantive limitation on the containment sleeve element.  Zinus has not suggested
   that this language caused any meaningful narrowing of the containment sleeve element.  Indeed, removing

27  the compressed mattress and evacuated tube from the containment sleeve is an inherent characteristic of
   the claimed invention, since the mattress could not be used for its intended purpose while in the

28  containment sleeve.

1

**1.    The Rationale Underlying the Narrowing Amendments Bear
No More than a Tangential Relation to Whether the
Combination of Fabric and Banding Tape or Plastic Stripping
Is Equivalent to the Claimed Containment Sleeve.**

2

3

4          While Zinus only makes passing reference to the "tangential relation" exception to the

5    prosecution history estoppel doctrine at pages 12-13 of its Motion for Reconsideration, this

6    exception relates directly to the doctrine of equivalents claim in question here.  As articulated by

7    the Supreme Court in *Festo*, this exception applies where "the rationale underlying the

8    amendment [bears] no more than a tangential relation to the equivalent in question.  535 U.S. at

9    740-41.  Put another way, in assessing the availability of this exception, the Court must ascertain

10    "whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the

11    alleged equivalent."  *Insituform Technologies, Inc. v. CAT Contracting, Inc*., 385 F.3d 1360, 1370

12    (Fed. Cir. 2004).  As Zinus correctly noted, this determination is a question of law.

13          The Federal Circuit's opinion in *Insituform* is instructive.  There, the original dependent

14    claim of the patent-in-suit, which related to a vacuum-based method for performing pipe repair

15    without taking the damaged pipe out of the ground, did not specify either the position or number

16    of vacuum cups used in the patented method or the location of the vacuum source.  The claims

17    were amended during prosecution to specify use of a single vacuum cup.  The patentee

18    subsequently argued that a multiple cup process infringed its patent under the doctrine of

19    equivalents.  Nonetheless, the Federal Circuit affirmed the district court's refusal to apply the

20    doctrine of prosecution history estoppel to bar plaintiff's doctrine of equivalents argument,

21    reasoning that "the narrowing amendment in this case was for the purpose of distinguishing the

22    invention over Everson.  *Insituform* made it clear that the difference between its process and

23    Everson was that its process did not have the disadvantage of the Everson process of a large

24    compressor at the end of the liner.  There is no indication in the prosecution history of any

25    relationship between the narrowing amendment and a multiple cup process, which is the alleged

26    equivalent in this case.  Thus, we hold that plaintiffs have successfully rebutted the *Festo*

27    presumption by establishing that the amendment narrowing the claimed invention from multiple

28

1  cups to a single cup was tangential to accused Process 1, which used multiple cups attached at

2  different points along the liner tube."  385 F.3d at 1369-70.

3      Here, the narrowing language on which Zinus bases its prosecution history estoppel

4  defense involves narrowing the subject of the patented method from generic "compressed

5  articles" to a specific mattress assembly "of coiled springs wherein each spring is contained

6  within an individual pocket of fabric."  [*See* Motion for Reconsideration at 11; Summary

7  Judgment Reply at 2-3]  As discussed in detail in the Statement of Facts, the purpose of this

8  amendment was to distinguish the claimed inventions from the Broyles prior art reference, which

9  was not used on a mattress assembly "of coiled springs wherein each spring is contained within

10  an individual pocket of fabric."  There is no indication in the prosecution history of any

11  relationship between the narrowing amendment and the use of a structure like the Zinus fabric

12  and tape combination to restrict the compressed assembly from expanding during shipping.  Thus,

13  as was the case in *Insituform*, Dreamwell has successfully rebutted the presumption of

14  prosecution history estoppel as a matter of law by establishing that the narrowing amendments are

15  at most tangentially related to the subject matter of Dreamwell's equivalence argument.

16          **2.      There Are at Least Triable Issues of Fact Relating to Whether**
                    **Dreamwell Is Entitled to the Unforseeability Exception to the**
17                  **Presumption of Prosecution History Estoppel.**

18      Zinus argues for the first time in its Motion for Reconsideration that Dreamwell is not

19  entitled to rely on the unforseeability exception to the prosecution history estoppel defense

20  because the combination of a sheet of reinforced fabric and banding tape or plastic stripping was

21  known in the prior art.  Specifically, Zinus asserts that this combination was present in U.S.

22  Patent No. 4,711,067, also referred to as the "Magni Patent," and that Zinus is merely practicing

23  the prior art.  Once again, this argument is based on a fundamental misreading of the Magni

24  reference.

25      In particular, Zinus again misrepresents at page 12 of its Motion for Reconsideration that

26  like Zinus, in the Magni Patent, the compressed mattress (which is not a pocketed coil innerspring

27  mattress of the type claimed in the '142 Patent) is "rolled up together with a ***sheet***" of "film,"

28

---

1  which in turn is held together with "ribbon-shaped strings."  However, unlike the Zinus Swirl

2  Wrap process, which uses a contiguous sheet of reinforced fabric that covers or surrounds a

3  substantial portion of the exposed surface of the mattress and (along with the tape or bands)

4  restricts the compressed mattress from expanding, the Magni patent discloses rolling up the

5  mattress with one or more "convolutions"[9] of "a **ribbon shaped** film 222" that does not cover or

6  surround a substantial portion of the exposed surface of the mattress.  [Exh. W-A (Magni patent

7  5:66, 6:30-31, 6:58-59 (emphasis added) (all specifically referring to "ribbon-shaped film

8  222"))][10]  This distinction is discussed in detail at pages 20-24 of Dreamwell's Opposition to the

9  original Summary Judgment motion.

10          Zinus' mischaracterization of the Magni Patent is highlighted in Figure 13 of the Patent,

11  which Zinus relies on and reproduces at page 5 of its Summary Judgment Reply Memorandum.

12  Zinus suggests that this figure shows a sheet of film that covers the compressed mattress.  But a

13  careful examination of the figure and the related text in the patent reveals that the portion of the

14  figure labeled as 222A does not represent a sheet of film; rather, it refers to an "outside

15  convolution 222A of ribbon shaped film 222."  [Exh. W-A (Magni patent 6:29-31)]  Figure 13

16  also labels and points to an item "C", which the patent discloses is the cover for the mattress.

17  [Exh. W-A (Magni patent, 4:29-37)]  There would be no reason to label the cover for the mattress

18  if it was not visible after application of the "convolution" or "convolutions" of "ribbon-shaped

19  film 222."  Thus, properly understood, Figure 13 discloses a process that involves wrapping a

20  compressed mattress in a criss-cross pattern with one or more revolutions of a narrow, ribbon-

21  shaped strand of film.  There is simply is no disclosure in Figure 13 (or anywhere else in the

22  Magni Patent) of using a solid sheet of fabric or other material that extends beyond and covers or

23  surrounds a substantial portion of the exposed surface of the mattress to restrict the mattress from

24  expanding during shipping.

25  _____

26      [9] A "convolution" is commonly defined as "a turn of anything coiled."  [Wilson Decl. Exh. 9
        (dictionary.com definition)]  Therefore, in this context, the term "at least one outside convolution" means
27      that the ribbon-shaped film makes at least one turn around the circumference of the rolled-up mattress

        [10] Zinus verified that its rectangular sheet of fabric cannot be considered "ribbon-shaped."
28      [Wilson Decl. Exh. 2 (Reeves Depo., 24:23-25:1)]

1    In sum, there is absolutely no evidence that the use of combination of a sheet of reinforced

2    fabric and banding tape or plastic stripping to restrict a compressed pocketed coil mattress from

3    expanding during shipping was used prior to the '142 Patent, or that such a structure would have

4    been obvious or foreseeable at the time the original '142 Patent claims were drafted.  Indeed, as

5    noted in Dreamwell's original Opposition papers, the limitation of applying the compression

6    process to a pocketed coiled mattress was added to distinguish the '142 Patent claims over the

7    Broyles prior art, and the Patent Office refused to allow issuance of the patent until this limitation

8    was added.  [*See* Exh. W-F]  At the very least, in light of this and other intrinsic evidence that the

9    proposed equivalent was not foreseeable and the dispute as to the scope and disclosure of the

10   Magni reference, the resolution of the merits of this factually intensive issue should be postponed

11   until the record can be more fully developed.

12   **II.    RESPONSE TO ZINUS' THREE "COMMENTS."**

13   Toward the end of the Motion for Reconsideration, Zinus makes what it refers to as "three

14   comments with respect to the Court's Order Denying Zinus' Motion for Summary Judgment."

15   Since Zinus starts its Motion for Reconsideration by proclaiming that the motion "concentrates

16   on" the prosecution history defense, as opposed to the other reasons that Zinus lists as a basis for

17   its original motion, it is unclear whether Zinus intends any of these "comments" to serve as a

18   basis for its motion for reconsideration.  Nonetheless, out of an abundance of caution, Dreamwell

19   will briefly address each of these "comments" in turn.

20   As its first comment, Zinus complains about the Court's finding that issuing a substantive

21   ruling on Zinus' non-infringement argument at this early stage of the case, before the claims have

22   been construed, is not feasible.  To support this complaint, Zinus reiterates arguments made in its

23   original moving papers and at the hearing on the original motion.  However, it is significant to

24   note that with respect to Dreamwell's doctrine of equivalents claim, Zinus' argument that an early

25   resolution is feasible depends on the Court ruling that prosecution history estoppel bars such an

26   equivalence claim.  As noted above, the record before the Court does not support such a ruling.

27   Accordingly, Zinus' complaint in this regard is without merit.

28

1         Next, Zinus complains about Dreamwell's contention that Zinus failed to raise the issue of

2    prosecution history estoppel until its Summary Judgment Reply Brief, and therefore effectively

3    prevented Dreamwell from addressing this affirmative defense in the context of the original

4    summary judgment motion.  While the record confirms that Dreamwell's contention was

5    accurate, Zinus' complaint is moot, since Dreamwell has now addressed Zinus' prosecution

6    history estoppel argument on the merits in this Opposition

7         Finally, Zinus complains about the Court's observation in its Order that the briefing on

8    Zinus' original motion raised "additional complexity" beyond what Zinus had initially

9    represented, and about the Court's separate reference to Zinus' argument (articulated for the first

10   time in its Summary Judgment Reply Brief) that the Swirl Wrap product cannot infringe the '142

11   Patent under the doctrine of equivalents because it merely practices what was obvious in light of

12   the prior art Magni Patent.  Linking the two observations, Zinus suggests that its "practicing the

13   prior art" defense does not create complexity because the Court does not have to determine

14   whether the claims of the '142 Patent is "obvious" in light of the prior art; rather, it only needs to

15   determine whether an equivalent to those claims is obvious.  Zinus' argument is flawed on its

16   face.

17        Dreamwell submits that even without considering Zinus' "practicing the prior art"

18   defense, there is more than enough complexity in the issues raised by Zinus' original summary

19   judgment motion to render a substantive ruling on the merits of that motion premature.  Even

20   setting that complexity aside, however, as Zinus itself points out in its third "comment," to grant

21   Zinus' motion that the Magni Patent precludes Dreamwell's doctrine of equivalents claim, the

22   Court would have to find that "the elements of the claims of the '142 Patent, including an

23   expanded equivalency of the 'inserting' claim element, would have been obvious over the Magni

24   patent."  While Zinus correctly notes that such a determination does not require an additional

25   finding that the literal scope of the claims of the '142 Patent would have been obvious in light of

26   the Magni reference, the complexity in determining whether equivalents of the '142 Patent are

27   obvious in light of Magni are no less complex than that determination, and no more susceptible to

28   summary determination.

1    To be clear, as Dreamwell described in detail at pages 20-24 of its Summary Judgment

2    Opposition, there are substantial differences between the Magni Patent and the '142 Patent (or

3    claimed equivalents) that preclude the Court from resolving on summary judgment the fact-

4    intensive question of whether the claims of the '142 Patent or their equivalent (as practiced by

5    Zinus) are obvious in light of the Magni Patent.[11]  In particular, the claims of the '142 Patent are

6    expressly limited to "[a] method of packaging a mattress assembly constructed of coil springs

7    wherein each spring is contained within an individual pocket of fabric," while the Magni Patent

8    does not disclose packaging of an innerspring mattress with individual pocket coils; indeed, Zinus

9    has not even attempted to argue that this claim limitation is disclosed in Magni.[12]  This is a

10   critical and patentable distinction, as evidenced by the fact that this language was added to

11   distinguish the claims over the Broyles prior art, and the Patent Office refused to allow issuance

12   of the patent until this limitation was added.  [*See* Exh. W-F]  The claims of the '142 Patent

13   require "removing said evacuated tube from said containment sleeve, whereby said mattress

14   assembly in said tube gradually returns to an uncompressed state," or a step in which "said

15   evacuated tube is punctured to allow said mattress assembly in said tube to gradually return to

16   said uncompressed state," or a step in which "said containment sleeve is severed to allow said

17   mattress assembly in said tube to gradually return to said uncompressed state;"  Zinus has not

18   even attempted to demonstrate that these elements are disclosed in the Magni Patent.  And as

19   discussed in detail above, there is no disclosure in the Magni Patent of a containment sleeve to

20   retain the compressed mattress in a compressed state for shipping, as claimed in the '142 Patent,

21   or of using the combination of a solid sheet of fabric and tape or other banding material to

22   perform the same function as Zinus has done in its Swirl Wrap process.

23

24   _____

25   [11] While Dreamwell acknowledges that obviousness is a question of law, it depends on underlying
     factual determinations relating to the level of ordinary skill, the scope and content of the prior art, the
26   differences between the prior art and the claims at issue, and secondary considerations of non-obviousness
     that make this issue difficult to resolve on summary judgment.

27   [12] Zinus' assertion at page 14 of its Motion that Magni discloses that its process "may be adopted
     for many types of mattresses" falls far short of disclosing a method for packaging the specific type of
28   mattress covered by the '142 Patent.

1        Boiled down to basics, and notwithstanding Zinus' protestations to the contrary, the Court

2    got it right in the Order Denying Zinus' Motion for Summary Judgment.  Adjudication of the

3    issues raised by Zinus' original motion is not feasible prior to a claim construction, and it is

4    certainly not possible to adjudicate those issues in Zinus' favor given the record before the Court.

5    And with respect to the prosecution history estoppel issues raised for the first time in Zinus'

6    Summary Judgment Reply, while those issues may be resolved prior to claim construction, the

7    record establishes that they must be decided in Dreamwell's favor.

8                                          **<u>Conclusion</u>**

9        For the foregoing reasons, Zinus' Motion for Reconsideration should be denied.

10    DATED:  January 8, 2008                **PERKINS COIE LLP**

11

12                                          By _____/s/_____
                                                    Kenneth B. Wilson

13                                          Attorneys for Defendant
                                            SIMMONS BEDDING COMPANY
14                                          and Defendant and Counterclaimant DREAMWELL,
                                            LTD.

15

16

17

18

19

20

21

22

23

24

25

26

27

28