IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:  925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation,<br><br>       Plaintiff,<br>     v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>       Defendants.<br><br>DREAMWELL, LTD., a limited liability company of Nevada,<br><br>       Counterclaimant,<br>     v.<br><br>ZINUS, INC., a California corporation,<br><br>       Counterdefendant. | Case No. 07-CV-03012 PVT<br><br>**PLAINTIFF ZINUS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT DUE TO NO DIRECT INFRINGEMENT**<br><br>Date:      February 19, 2008<br>Time:     10:00 a.m.<br>Location:  Courtroom 5<br>Judge:    Hon. Patricia V. Trumbull |

**NOTICE OF MOTION AND MOTION**

      PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure Rule 56

Plaintiff and Counterdefendant Zinus, Inc. ("Zinus") will move, and hereby moves, for an

order granting this Motion for Summary Judgment that Zinus is not liable for infringement of

U.S. Patent Number Re. 36,142 ("the '142 Patent") because there is no direct infringement of

PLAINTIFF ZINUS' MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
DUE TO NO DIRECT INFRINGEMENT
   1
          Case No. C07-03012 PVT

1  any claim of the '142 Patent.

2       This Motion is based on this Notice of Motion and Motion, the accompanying

3  Memorandum of Points and Authorities and supporting declarations, and on all pleadings,

4  files and records in this action.

5

6                    **STATEMENT OF RELIEF SOUGHT**

7       Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Zinus moves this Court

8  for an Order granting summary adjudication that Zinus is not liable for infringement of any

9  claim of the '142 Patent due to Zinus' manufacture and sale of Zinus' Mattress-in-a-Box

10 product to Wal-Mart Stores, Inc.

11

12 Dated: January 14, 2008              By:  ____/s/ Darien K. Wallace____

13                                          Darien K. Wallace
                                           IMPERIUM PATENT WORKS
14                                         Attorneys for Plaintiff and Counterdefendant
                                           Zinus, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES................................................................. | 4 |
| NOTICE OF MOTION ..................................................................... | 1 |
| STATEMENT OF RELIEF SOUGHT................................................ | 2 |
| MEMORANDUM OF POINTS AND AUTHORITIES............................. | 5 |
| I.    INTRODUCTION.................................................................. | 5 |
| II.    SUMMARY OF ARGUMENT................................................ | 5 |
| III.    THE "SHIPPED UNITS" OF THE MATTRESS-IN-A-BOX PRODUCT........ | 6 |
| IV.    THE METHOD STEPS OF THE '142 PATENT................................ | 8 |
| V.    LEGAL STANDARDS............................................................ | 10 |
|     1. Summary Judgment ....................................................... | 10 |
|     2. Direct Infringement ..................................................... | 11 |
|     3. Indirect Infringement Requires A Finding Of Direct Infringement ............... | 11 |
|     4. The Federal Circuit's "Control or Direction" Requirement for Direct Infringement In Divided Infringement Situations................................................. | 11 |
|     5. An Arms-Length Sale Of A Product With User Instructions Is Not "Direction" Under The "Control or Direction" Requirement................................... | 13 |
| VI.    APPLICATION OF LAW TO THE FACTS....................................... | 15 |
|     1. Claim Interpretation Is Easy................................................ | 15 |
|     2. Zinus Is Not Liable As An Infringer Because No Entity Directly Infringes.... | 16 |
| VII.    CONCLUSION................................................................. | 21 |

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 60

    USPQ2d 1493 (Fed.Cir. 2001) ...................................................... 10, 16

*Barmag Barmer Maschinenfabrik AG. V. Murata Mach., Ltd.*, 731 F.2d 831, 221

    USPQ 561 (Fed.Cir. 1984) ............................................................ 10

*BMC Resources, Inc. v. Paymentech. L.P.*, 498 F.3d 1371, 84 USPQ2d 1545

    (Fed.Cir. 2006) .................................................................. 11-14, 18

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 46 USPQ2d 1169 (Fed.Cir. 1998).. 11

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 81 USPQ2d 1238 (Fed.Cir. 2006) ..... 13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed.Cir. 2004) ..... 11

*Gammino v. Cellco P'ship*, 2007 U.S. Dist. LEXIS 74201 (E.D. Pa. Oct. 4, 2007) ... 13

*General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed.Cir.

    1992) ............................................................................ 11

*Joy Techs. v. Flakt, Inc.*, 6 F.3d 770 (Fed.Cir. 1993) .................................. 11

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed.Cir. 2004) ........... 11

*Privasys, Inc. v. VISA Intl.*, 2007 U.S. Dist. LEXIS 86838 (N.D. Cal. Nov. 14,

    2007) ............................................................................ 13

*Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 USPQ2d 1103

    (Fed.Cir. 1997) .................................................................. 13

*Teleflex, Inc. v. Ficosa N. Am Corp.*, 229 F.3d 1313 (Fed.Cir. 2002) ........................ 11

*TGIP, Inc. v. AT&T Corp.*, 2007 U.S. Dist. LEXIS 79919 (E.D. Tex. Oct. 29, 2007) 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997)........... 11

## Statutes and Rules

Fed.R.Civ.P. 56(c) ................................................................ 1-2, 10

## Exhibits

Exhibit A – Declaration of Scott Reeves In Support Of Zinus' Motion For Summary

    Judgment of Non-Infringement Due To No Direct Infringement .......... 7-8, 15-20

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3    ## I. <u>INTRODUCTION</u>

4    As an introductory matter, Zinus states that this Motion for Summary Judgment of

5    Non-Infringement is different from Zinus' earlier filed Motion for Summary Judgment of

6    Non-Infringement[1] in the very important aspect that this Motion concerns both the "Duffel

7    Bag Mattress-in-a-Box" product, as well as the "Swirl Wrap Mattress-in-a-Box" product.

8    Prevailing in this Motion is therefore of substantial importance to Zinus, separate and apart

9    from Zinus' prevailing in its earlier filed Motion for Summary Judgment that concerns only

10   the Swirl Wrap Mattress-in-a-Box product.

11

12   ## II. <u>SUMMARY OF ARGUMENT</u>

13   For there to be any kind of liability for any type of patent infringement, there must

14   first be a finding of direct infringement.  In the present case where the '142 Patent has only

15   method claims, a finding of direct infringement requires a finding that one single party

16   performed each and every step of at least one claim of the '142 Patent (either literally or

17   under the doctrine of equivalents) or that the single party is found to "control or direct" the

18   conduct of another entity so that all the steps of a claim are performed by the combined

19   actions of the party and the controlled entity.

20   Zinus has sold the Mattress-in-a-Box product to no customer other than Wal-Mart

21   Stores, Inc. and its affiliates ("Wal-Mart").  In the present case involving the manufacture,

22   distribution, sale and use of the "Mattress-in-a-Box" product, neither Wal-Mart nor Wal-

23   Mart's retail customers perform all of the steps of the claims of the '142 Patent.  Steps that

24   Wal-Mart and its customers do not perform include the step of "<u>evacuating air</u> from said tube

25   . . . thereby deforming said tube around said mattress assembly and causing said mattress

26   assembly to compress" (emphasis added).  Neither Wal-Mart nor Wal-Mart's customers

27

28   [1] "Plaintiff Zinus, Inc.'s Notice of Motion and Motion For Summary Adjudication of Non-
     Infringement," filed October 2, 2007.

perform this "evacuating air" step[2] or anything resembling this step.  Accordingly, neither Wal-Mart nor Wal-Mart's customers can be direct infringers of the '142 Patent.

Moreover, Zinus does not perform the step of "<u>removing</u> said evacuated tube <u>from said containment sleeve</u>" (emphasis added) when Zinus supplies "shipped units" of the Mattress-in-a-Box product to Wal-Mart.[3]  And Zinus does not "control or direct" what either Wal-Mart or Wal-Mart's customers do with the Mattress-in-a-Box product after Wal-Mart takes delivery from Zinus.[4]  Because Zinus does not perform at least one step of each claim of the '142 Patent, and because Zinus does not control another entity to perform the step, Zinus cannot be a direct infringer of the '142 Patent.

Because none of the three entities[5] involved in the manufacture, distribution, sale and use of the shipped units of the "Mattress-in-a-Box" product  is a direct infringer of any claim of the '142 Patent, the manufacture and sale of the shipped units of the "Mattress-in-a-Box" product by Zinus involves no direct infringement of the '142 Patent.  Because there is no direct infringement, there can be no liability for indirect infringement as a matter of law.

Zinus therefore moves this Court to grant this Motion for Summary Judgment that Zinus' manufacture and sale of the shipped units of the "Mattress-in-a-Box" product by Zinus does not constitute infringement of the '142 Patent.  Deciding this Motion now on this basis will save the Court and the parties considerable time and expense.

### III.  THE "SHIPPED UNITS" OF THE MATTRESS-IN-A-BOX PRODUCT

This Motion concerns the manufacture, use and sale of a product called the "Mattress-in-a-Box" product.  There are two types of the "Mattress-in-a-Box" product as that term is used in this Motion:  1) a product referred to as the "Duffel Bag Mattress-in-a-Box" product, and 2) a product referred to as the "Swirl Wrap Mattress-in-a-Box" product.

In making a unit of the "Duffel Bag Mattress-in-a-Box" product, a mattress is

---

[2]  See Reeves Decl., ¶¶ 8, 9, 10.
[3]  See Reeves Decl., ¶¶ 4, 6, 7.
[4]  See Reeves Decl., ¶¶ 16, 17.

compressed. The compressed mattress is then rolled and is placed into a duffel bag. The rolled mattress in the duffel bag has a cylindrical shape. Then the resulting rolled mattress and duffel bag assembly is placed into a cardboard shipping box. The cardboard shipping box is taped closed so that it contains the mattress and duffel bag assembly. The resulting "Duffel Bag Mattress-in-a-Box" product, where the mattress is in a compressed state in the duffel bag inside the sealed box, is then shipped from Zinus to Wal-Mart. [Declaration of Scott Reeves in Support of Zinus' Motion for Summary Judgment ("Reeves decl."), ¶ 3] All units of this "Duffel Bag Mattress-in-a-Box" product that have ever been supplied or sold to Wal-Mart are referred to in this Motion as the "shipped units" of the "Duffel Bag Mattress-in-a-Box" product.

At no time has Zinus opened any of the cardboard shipping boxes of any of the "shipped units" of the Duffel Bag Mattress-in-a-Box product. At no time has Zinus removed the mattress from even a single shipped unit of the Duffel Bag Mattress-in-a-Box product from its duffel bag and allowed the mattress to gradually return to an uncompressed state. Zinus simply manufactures units of the Duffel Bag Mattress-in-a-Box product, and then supplies the units to Wal-Mart, where the mattresses contained in the Duffel Bag Mattress-in-a-Box shipping boxes have never been removed from the shipping boxes and have never been made to return to their uncompressed state by Zinus. [Reeves Decl. ¶ 4]

In making a "Swirl Wrap Mattress-in-a-Box" product, a mattress is compressed and placed on a sheet of flexible film. The compressed mattress and the flexible film are then rolled up together to form a cylindrical rolled-up mattress assembly. Then the cylindrical rolled-up mattress assembly is held in place by applying either tape or ribbon-shaped strips of durable plastic stripping to the cylindrical roll. The cylindrical rolled-up mattress assembly is at no time placed into any duffel bag or into any containment sleeve. The taped or banded cylindrical rolled-up mattress assembly is placed into a cardboard shipping box, and the box is taped closed. The resulting Swirl Wrap Mattress-in-a-Box product, where the mattress is

---

5 Not Zinus, not Wal-Mart, and not Wal-Mart's retail customers.

in a compressed state within the sealed box, is then shipped from Zinus to Wal-Mart. [Reeves Decl. ¶ 5] All units of this Swirl Wrap Mattress-in-a-Box product that have ever been supplied or sold to Wal-Mart are referred to in this Motion as the "shipped units" of the Swirl Wrap Mattress-in-a-Box product.

At no time has Zinus ever opened any of the shipping boxes of the shipped units of the Swirl Wrap Mattress-in-a-Box product. At no time has Zinus removed the tape or plastic stripping from the mattress of a single shipped unit of the Swirl Wrap Mattress-in-a-Box product, and at not time has Zinus cause the mattress of a single shipped unit of the Swirl Wrap Mattress-in-a-Box to gradually return to an uncompressed state. Zinus simply manufactures units of the Swirl Wrap Mattress-in-a-Box product, and then ships the units to Wal-Mart, where the mattresses contained in the Swirl Wrap Mattress-in-a-Box shipping boxes have never been removed from the shipping boxes by Zinus and have never been allowed to return to their uncompressed state. [Reeves Decl. ¶ 6]

At no time in the manufacture or supplying to Wal-Mart of any of the shipped units of the Mattress-in-a-Box product (either Duffel Bag or Swirl Wrap) has Zinus ever performed the step of opening the shipping box and removing the compressed mattress assembly from the shipping box. At no time in the manufacture or supplying to Wal-Mart of any of the shipped units of the "Mattress-in-a-Box" product has Zinus ever performed the step of allowing a mattress of a shipped unit to return to an uncompressed state. [Reeves Decl. ¶ 7]

Zinus has shipped thousands of units of the Mattress-in-a-Box product to Wal-Mart. [Reeves Decl. ¶ 2]

## IV. **THE METHOD STEPS OF THE '142 PATENT**

It is very important to note that the '142 Patent includes only method claims. Each and every one of these method claims requires and recites the steps of:

1) "evacuating air from said tube . . . thereby deforming compressing a mattress said tube around said mattress assembly and causing said mattress assembly to compress";

2) "inserting said evacuated tube into a containment sleeve . . .";

3) "removing said evacuated tube from the containment sleeve"; and

4) allowing the mattress assembly "to gradually return to an uncompressed state".[6]

As set forth in further detail below, no single entity (neither Zinus, nor Wal-Mart, nor Wal-Mart's retail customers) performs all of these claim steps.

The '142 Patent is directed to a method of compressing and packaging a mattress. First, a "tube" of deformable material is provided. Figure 2 of the '142 Patent (replicated below) identifies the tube with reference numeral 22.



A mattress is then inserted into tube 22. Column 3, line 18, of the '142 Patent explains that "tube 22 has a length greater than the length [of the mattress] such that the two ends of the tube 22 define portions 24 of excess tube material 22." Next, a first end of the tube is sealed. Column 3, line 28, says "one end 24 of the tube 24 is gathered and sealed." This first end that is sealed may, for example, be the left end of the tube 22 illustrated in the figure above.

Next, air is "evacuated from the tube through the second end thereby deforming the tube around the article and causing the article to compress." Col. 2, lines 38-40. The '142 Patent then explains that "while a vacuum is maintained in the tube, the second end of the tube is sealed closed." Col. 2, lines 40-41. All claims of the '142 Patent recite the very same step of "evacuating air from said tube through said second end thereby deforming said tube around said mattress assembly and causing said mattress assembly to compress." The

---

[6] Claim 1 uses slightly different verbiage: ". . . gradually returns to an uncompressed state".

resulting tube 22, with the compressed mattress inside, is referred to in the '142 Patent as the "evacuated tube".

The "evacuated tube" is then "inserted" into a "containment sleeve". In the figure above, reference numeral 26 identifies the "containment sleeve". Column 3, lines 24-26, explains that the compressed mattress assembly "is maintained in a compressed state by a containment sleeve 26." The resulting structure is pictured in the figure above.

This is not, however, the end of the claimed method. Next, the evacuated tube is removed from the containment sleeve. The '142 Patent states that "when the package 20 is delivered, the customer can sever the containment sleeve 26 . . ." The '142 Patent explains that ". . . initially, the tube 22 together with the article encapsulated therein will remain relatively compressed under the effect of the vacuum within the tube 22. Then, depending on the type of end 24 sealing method used, air will gradually bleed into the tube 22 allowing the compressed article to slowly expand . . ." Col. 3, lines 48-55.

## V. <u>LEGAL STANDARDS</u>

### 1. **Summary Judgment.**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. As the Court of Appeals for the Federal Circuit has made clear, "Markman does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the province of the court, not a jury. . . . <u>If the district court considers one issue to be dispositive, the court may cut to the heart of the matter</u> and need not exhaustively discuss all the other issues presented by the parties." (emphasis added) *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358, 60 USPQ2d 1493 (Fed.Cir. 2001). "<u>The court should utilize the salutary procedure</u> of Fed.R.Civ.Proc. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." (emphasis added) *Barmag Barmer Maschinenfabrik AG. V. Murata Mach., Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed.Cir. 1984).

**2.  Direct Infringement.**

The determination of infringement is a two-step process.  First, the court construes the claims to determine the correct scope of the claims.  Second, the court compares the properly construed claims to the accused products or methods.  See *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir. 1998); *Teleflex, Inc. v. Ficosa N. Am Corp.*, 229 F.3d 1313, 1323 (Fed.Cir. 2002).

To establish direct infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent.  Direct infringement requires a party to perform or use each and every step or element of a claimed method or product.  *Warner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17, 117 S.Ct. 1040 (1997).  For process or method claims, infringement occurs when a party performs all of the steps of the process.  *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed.Cir. 1993). Infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim.  *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274-1275 (Fed.Cir. 1992).

**3.  Indirect Infringement Requires A Finding Of Direct Infringement.**

When an entity participates in or encourages infringement but does not directly infringe the patent, the law provides remedies under principles of indirect infringement. Indirect infringement requires, as a predicate, a finding that "some party amongst the accused actors has committed the entire act of direct infringement".  *BMC Resources, Inc. v. Paymentech. L.P.*, 498 F.3d 1371, 84 USPQ2d 1545 (Fed.Cir. 2007); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed.Cir. 2004).  There can be no induced or contributory infringement without an underlying act of direct infringement. *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed.Cir. 2004).

**4.  The Federal Circuit's "Control or Direction" Requirement For Direct Infringement In Divided Infringement Situations.**

Even though direct infringement requires a finding that some party "has committed the entire act of direct infringement", a party cannot avoid infringement simply by

contracting out steps of a patented process to another entity.  In those cases, the party in

control is liable for direct infringement.  But, as recently explained by the Federal Circuit in

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 84 USPQ2d 1545 (Fed.Cir. 2007),

in order for a party to be liable for steps performed by another entity, the accused infringer

must exercise "control or direction" over the actions of the other entity.  If some steps of a

method claim are performed by one actor, and the rest of the steps are performed by another

actor who acted independently, then there is no direct infringement.  And if there is no direct

infringement, then there can be no indirect infringement on the part of any of the actors.

The Federal Circuit acknowledged that this "control or direction" requirement allows

parties to enter into arms-length agreements to avoid infringement.  The Federal Circuit

stated, "This court acknowledges that the standard requiring control or direction for a finding

of joint infringement may in some circumstances allow parties to enter into arms-length

agreements to avoid infringement" *(BMC Resources*, 498 F.3d at 1381).

After acknowledging that arms-length agreements may be used to avoid infringement,

the Federal Circuit explained that expanding the rules governing direct infringement to reach

the independent conduct of multiple parties would subvert the statutory scheme for indirect

infringement.  The Federal Circuit stated:

> "expanding the rules governing direct infringement to reach independent
> conduct of multiple parties would subvert the statutory scheme for indirect
> infringement. Direct infringement is a strict-liability offense, but it is
> limited to those who practice each and every element of the claimed
> invention. By contrast, indirect liability requires evidence of 'specific
> intent' to induce infringement. Another form of indirect infringement,
> contributory infringement under §271(c), also requires a mens rea
> (knowledge) and is limited to sales of components or materials without
> substantial noninfringing uses. [If independent actors were liable for each
> other's actions in performing other steps of a method claim], a patentee
> would rarely, if ever, need to bring a claim for indirect infringement." (*Id.*)

The Federal Circuit went on to explain that:

>  "The concerns over a party avoiding infringement by arms-length
> cooperation can usually be offset by proper claim drafting.  A patentee can
> usually structure a claim to capture infringement by a single party. . . . In
> this case, for example, [the patentee] could have drafted its claims to focus
> on one entity." (*Id.*)

When the patentee in *BMC Resources* complained to the Federal Circuit of the difficulty of proving infringement due to the fact that the patentee's claims required multiple parties to perform different acts within one claim, the Federal Circuit responded stating that the patentee's claims were "ill-conceived". The Federal Circuit explained that as between the patentee and the public at large, it is the patentee who must bear the cost of the "ill-conceived" claims. The Federal Circuit stated:

> "[The patentee] correctly notes the difficulty of proving infringement of this claim format. Nonetheless, this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims. *See Sage Prods. Inc. v. Devon Indus. Inc., 126 F.3d 1420, 1425 (Fed.Cir. 1997)* ('[A]s between the patentee who had a clear opportunity to negotiate broader claim but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.')" (*Id.*)

**5. An Arms-Length Sale Of A Product With User Instructions Is Not "Direction" Under The "Control or Direction" Requirement.**

Zinus' counsel have examined the relevant case law and have located no authority that expressly states whether supplying user instructions to retail customers of a product, which is purchased in an ordinary arms-length commercial transaction at a retail store, can constitute the type of "direction" required under the Federal Circuit's "control or direction" standard for joint infringement liability as set forth in the recent *BMC Resources* case. The *BMC Resources* case, which was only recently decided in September of 2007, is too recent for there to have been extensive commentary[7] in other Federal Circuit opinions. Nonetheless, it is the function of the Court to determine what the law is, and if there are no disputes of fact, to apply the law and rule on Zinus' Motion for Summary Judgment.

Applying simple logic to the statements in the *BMC Resources* case leads to the inevitable conclusion that supplying user instructions and/or selling products to retail

---

[7] Another Federal Circuit case directed to this issue is the earlier case: *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 81 USPQ2d 1238 (Fed.Cir. 2006). Opinions that cite *BMC Resources* include*: Privasys, Inc. v. VISA Intl.*, 2007 U.S. Dist. LEXIS 86838 (N.D. Cal. Nov. 14, 2007); *Gammino v. Cellco P'ship*, 2007 U.S. Dist. LEXIS 74201 (E.D. Pa. Oct. 4, 2007); and *TGIP, Inc. v. AT&T Corp.*, 2007 U.S. Dist. LEXIS 79919 (E.D. Tex. Oct. 29, 2007).

customers cannot satisfy the "control or direction" standard.  The Federal Circuit

emphasized that there must be different requirements for showing direct infringement

(which is a strict-liability offense) and for holding a party liable under an indirect

infringement theory (indirect infringement is a form of vicarious liability).  In

particular, inducing infringement requires not just a showing that the inducer induced

another party to perform certain acts, but also requires a showing that the inducer had

specific intent to induce infringement.  There is even a requirement that the inducer

actually knew of the patent.  Simply showing that user instructions were provided along

with a product is not adequate to prove induced infringement.  Similarly, contributory

infringement requires more than a showing of sales of a component that has no

substantial non-infringing uses.  There are other requirements for a showing of

contributory infringement, including what the Federal Circuit referred to in the *BMC*

*Resources* case as a "mens rea (knowledge)".

If, on the other hand, the direct infringement requirement could be satisfied only

by showing that a defendant instructed a retail customer to perform certain steps of a

method (those claim steps that the defendant did not perform), or if the direct

infringement requirement could be satisfied by showing that a defendant sold a product

that was only capable of infringing uses, then "a patentee would rarely, if ever, need to

bring a claim for indirect infringement".  Direct infringement would be shown, and

there would be no need for the patentee to meet the additional requirements for

establishing liability for inducing infringement or contributory infringement.

The Federal Circuit rejected this approach in the *BMC Resources* case and

stated:

> ". . . expanding the rules governing direct infringement to reach
> independent conduct of multiple actors would subvert the statutory
> scheme for indirect infringement. . . . Under [the more relaxed standard
> being urged], a patentee would rarely, if ever, need to bring a claim for
> indirect infringement."

Therefore,  the "control or direction" requirement, by application of reasoning and by

considering the stated policy concerns of the Federal Circuit in the *BMC Resources*

case, must require more than an "arms-length cooperation" where a manufacturer sells a product in an "arms-length commercial transaction" and has no control over the purchaser and has no control over what happens to the product after the sale. A finding that customer instructions supplied in an arms-length commercial transaction satisfy the "control or direction" requirement of *BMC Resources* would subvert the statutory scheme for indirect infringement.

## VI.  APPLICATION OF LAW TO THE FACTS

### 1.  Claim Interpretation Is Easy.

The Court need not interpret all of the many terms in the claims of the '142 Patent in order to decide this Motion for Summary Judgment in Zinus' favor. The Court must only consider two phrases: 1) "evacuating air from said tube . . . thereby deforming said tube around said mattress assembly and causing said mattress assembly to compress", and 2) "removing said evacuated tube from said containment sleeve". These phrases do not include complicated technical terms that require the Court to consider extrinsic evidence. The terms are ordinary English terms whose meaning is evident from the intrinsic record.

Moreover, the Court need not determine the meaning of the terms in these phrases to a high degree of specificity. For example, the Court need not determine whether the phrase "evacuating air from said tube" covers both compressing a mattress in a hydraulic press and thereby forcing air out of a tube containing the mattress, as well as using a vacuum to suck air out of a tube containing a mattress and thereby cause the mattress to compress. All the Court must determine is that Wal-Mart and Wal-Mart's retail customers do not "evacuate air" by any mechanism out of any structure. As explained in the declaration of Scott Reeves, neither Wal-Mart nor Wal-Mart's retail customers cause air to be evacuated in any way from the bag containing the compressed mattress. Neither Wal-Mart nor Wal-Mart's customers cause air to be removed in any fashion whatsoever. [Reeves Decl., ¶ 8-11]  Consequently, the Court can easily determine on summary judgment, without the difficulties of a Markman hearing and comprehensively construing all the terms of the claims to a high degree of

specificity, that neither Wal-Mart nor Wal-Mart's customers performs the recited step of "evacuating air".

Similarly, the Court can decide this Motion for Summary Judgment without determining the meaning of the term "removing" to a high degree of specificity.  The Court can construe the term "removing" only to the extent necessary to determine whether the Mattress-in-a-Box product infringes.  See Ballard Medical Products, 268 F.3d at 1358.  Zinus does not "remove" the mattress of any shipped unit of the Duffel Bag Mattress-in-a-Box product from its duffel bag in any fashion whatsoever. [Reeves Decl., ¶ 4] Zinus places the compressed mattress in the duffel bag, places the compressed mattress and duffel bag assembly in a box, seals the box, and then ships the sealed box to Wal-Mart. [Reeves Decl., ¶ 3]  In the case of shipped units of the Swirl Wrap Mattress-in-a-Box product, Zinus never removes the compressed mattress from the sheet with which the mattress was rolled. [Reeves Decl., ¶ 6]  For both the Duffel Bag and Swirl Wrap Mattress-in-a-Box products, Zinus simply does not remove the compressed mattresses of any shipped units in any fashion whatsoever, out of any structure.  [Reeves Decl., ¶ 7]  Determining that Zinus does not perform the "removing" step is therefore exceedingly simple, and can be done without formulating a precise and specific definition of the term "removing".

**2. Zinus Is Not Liable As An Infringer Because No Entity Directly Infringes.**

As explained above, Zinus manufactures a product called the "Mattress-in-a-Box" product, and supplies or sells units ("shipped units") of this product in sealed shipping boxes to Wal-Mart.  Zinus does not open the shipped units of the Mattress-in-a-Box product. [Reeves Decl., ¶ 7]  Wal-Mart receives the "shipped units" from Zinus and, without opening the shipping boxes and without causing the mattresses contained in the shipping boxes to return to an uncompressed state, sells the "shipped units" to retail customers.  [Reeves Decl., ¶ 8, 9]  Wal-Mart's retail customers purchase the shipped units from Wal-Mart in ordinary arms-length commercial retail sales transactions.  [Reeves Decl., ¶ 24]  An individual retail customer, in order to use the purchased product, presumably then opens the shipping box, removes the compressed mattress that was contained in the box, and then allows the

compressed mattresses to uncompress.  Neither Wal-Mart, nor its retail customers, ever "evacuates air" from any tube to compress the mattress of a shipped unit of a Mattress-in-a-Box product in any fashion.  [Reeves Decl., ¶¶ 8-11]

The issue for this Motion for Summary Judgment is whether Zinus can be held liable for infringement of the '142 Patent for supplying the shipped units of the Mattress-in-a-Box product to Wal-Mart, and more particularly whether any of the three actors (Zinus, Wal-Mart, or Wal-Mart's retail customers) can be held to be a direct infringer of any claim of the '142 Patent.  Direct infringement of a method claim requires that some actor perform each and every step of the claimed method, either literally or by a substantial equivalent.  When an actor participates in or encourages infringement but does not actually directly infringe, the actor can be found liable as an infringer under an indirect infringement theory.  There are two types of indirect infringement: 1) contributory infringement, and 2) induced infringement.  There can, however, be no finding of indirect infringement unless one actor has committed the entire act of direct infringement.  A finding of direct infringement is a predicate to a finding of indirect infringement.

In the present case, all claims of the '142 Patent recite the steps of "inserting a mattress assembly  . . . into said tube", "sealing a first end of said tube", "evacuating air from said tube . . . thereby deforming said tube around said mattress assembly and causing said mattress assembly to compress", and "inserting said evacuated tube into a containment sleeve...".   Neither Wal-Mart, nor its retail customers, performs any of these steps.  As explained above, both Wal-Mart and its retail customers receive the Mattress-in-a-Box in a sealed condition, with the compressed mattress inside the shipping box in a compressed state.  [Reeves Decl., ¶¶ 4, 6, 9]  Neither Wal-Mart nor a Wal-Mart retail customer "evacuat[es] air from [a] tube. . . thereby . . causing [a] mattress assembly to compress".  Accordingly, neither Wal-Mart nor its retail customers can be found to be a direct infringer because neither entity performs all the steps of any claim of the '142 Patent.

Very importantly, all claims of the '142 Patent recite the further steps of "removing said evacuated tube from said containment sleeve" and then allowing the mattress assembly

"to gradually return to an uncompressed state". Zinus does not perform either of these additional two steps. As explained above, Zinus manufacturers the Mattress-in-a-Box product and then supplies the shipped units of the product in shipping boxes to Wal-Mart. Once Zinus has compressed the mattresses and sealed them into shipping boxes, Zinus does not thereafter open the shipping boxes, nor does Zinus allow the compressed mattresses to "return to an uncompressed state". [Reeves Decl., ¶¶ 4, 6] Accordingly, because Zinus does not perform the further two steps set forth above, Zinus is not a direct infringer of any claim in the '142 Patent.

As set forth above in the Legal Standards section, it is not always necessary that all the steps of a method claim be performed by a single actor in order for there to be finding of direct infringement. Under what is sometimes referred to as a "divided infringement" theory, a party who exercises "control or direction" over another entity to perform some of the steps of a patented method will be liable for direct infringement if together the actions of the party and the controlled entity carry out all the steps of the patented method. For direct infringement to be found, however, it is necessary that the accused infringer be found to "control or direct each step of the patented process."

The leading case in the area of so-called divided infringement and what satisfies the "control or direction" requirement is the recent Federal Circuit opinion of *BMC Resources, Inc. v. Paymentech, L.P.* The Federal Circuit in *BMC Resources*, after mentioning the standard requiring "control or direction" and acknowledging that the standard "may in some circumstances allow parties to enter into ***arms-length agreements*** to avoid infringement" (emphasis added) stated that:

> ". . . this concern does not outweigh concerns over expanding the rules governing direct infringement. For example, expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement." *BMC Resources*, 498 F.3d at 1381.

In the present case, Zinus does not "control" what Wal-Mart does with any shipped unit of the Mattress-in-a-Box product. [Reeves Decl., ¶¶ 16, 17] Wal-Mart has never acted as an agent of Zinus when Wal-Mart purchases and sells shipped units of the Mattress-in-a-

1  Box product.  [Reeves Decl., ¶ 18]  Wal-Mart is not acting on behalf of Zinus in any fashion.

2  [Reeves Decl., ¶ 19]  Zinus and Wal-Mart have an arms-length business relationship.  Zinus

3  and Wal-Mart have never had any contract or agreement that concerns the issue of removing

4  the mattress of any shipped unit of a Mattress-in-a-Box product from its shipping box, and

5  returning the mattress to an uncompressed state. [Reeves Decl., ¶¶ 14, 15].

6        Not only does Zinus not control what Wal-Mart does with the Mattress-in-a-Box

7  product, but Zinus also does not "control" what Wal-Mart's retail customers do with their

8  shipped units of the Mattress-in-a-Box product after they receive the product from Wal-Mart.

9  [Reeves Decl., ¶ 22]  Wal-Mart's retail customers do not act as agents of Zinus.  [Reeves

10  Decl., ¶ 20]   Wal-Mart's retail customers do not act on behalf of Zinus in any fashion.

11  [Reeves Decl., ¶ 21]   Zinus and Wal-Mart's retail customers who purchase "shipped units"

12  of the Mattress-in-a-Box product from Wal-Mart do not have any contractual relationship

13  with Zinus other than an ordinary manufacturer's warranty. [Reeves decl., ¶ 23].

14        Limited user instructions in schematic form were and are printed on the outside of the

15  shipping boxes of the shipped units. [Reeves Decl., ¶ 12]  Photographs of portions of the

16  outside of the shipping boxes of the Duffel Bag Mattress-in-a-Box product are attached to the

17  Declaration of Scott Reeves as Exhibits A-D.  In addition, a copy of an instruction sheet that

18  was provided inside the shipping boxes of the Duffel Bag Mattress-in-a-Box product is

19  attached as Exhibit E to the Declaration of Scott Reeves.  Photographs of portions of the

20  outside of the shipping boxes of the Swirl Wrap Mattress-in-a-Box product are attached to

21  the Declaration of Scott Reeves as Exhibits F-G.  The existence of such user instructions

22  cannot satisfy the "control or direction" requirement for direct infringement under a divided

23  infringement theory, however, because mere user instructions that are supplied with a

24  product that is sold to a retail customer in an ordinary arms-length commercial sales

25  transaction cannot satisfy the "control or direction" requirement under *BMC Resources*[8].

26  Holding that such user instructions give rise to direct infringement would make it "rarely, if

27

28
_____
[8]  See the explanation and discussion above in the Legal Standards section.

1  ever" necessary to bring a claim for indirect infringement and would subvert the statutory

2  scheme that governs indirect infringement.[9]

3          Even if user instructions supplied in a commercial arms-length transaction could

4  legally satisfy the "control or direction" requirement, the limited instructions provided by

5  Zinus in this case do not direct retail customers to remove the clear plastic wrapper from the

6  compressed mattress in such a way that the mattress "gradually returns" to an uncompressed

7  state, as recited in the claims of the '142 Patent.  The instructions depicted in the photographs

8  of Exhibits A-G of the Reeves declaration instead give general directions on removing the

9  plastic bag.  The instructions on the outside of the box state: "from box to your bed in

10 minutes", "this advanced mattress expands in minutes", and  "Unroll compressed mattress

11 and cut away the clear plastic wrapper. Mattress recompresses [sic] instantly. Pull away clear

12 plastic".  The instructions on the instruction sheet state, "Carefully cut open the vacuum

13 sealed bag and mattress will expand. Remove bag. Allow mattress to fully expand to its

14 original shape."  Nowhere do these instructions direct an end customer to cause a mattress to

15 expand at a slow speed.  If anything, the instructions indicate that the mattress is to expand

16 "instantly" or rapidly, or as fast as it possibly can.[10]  Because there have been no user

17 instructions included with shipped units of either the Duffel Bag Mattress-in-a-Box product

18 or the Swirl Wrap Mattress-in-a-Box product that direct end customers to remove the

19 compressed mattress from the clear plastic wrapper in such a way that the mattress

20 "gradually" returns to an uncompressed state [Reeves Decl., ¶ 13], the limited instructions

21 provided in the shipped units do not constitute direction under the *BMC Resources* "control

22 or direction" requirement.

23

24 [9] Allowing user instructions to give rise to direct infringement would impose infringement liability
25    for the acts of others without establishing the intent required for contributory or induced
      infringement. But indirect infringement could not be established in this case because Zinus never
26    intended for the compressed mattress to be removed from its clear plastic wrapper in such a way
      that the compressed mattress gradually returns to an uncompressed state. [Reeves Decl., ¶ 13]
27 [10] Zinus intended for the end customer of the Mattress-in-a-Box to be able to sleep on the mattress "as
      soon as possible after removing the compressed mattress from the shipping box" and never
28    intended for the mattress to be removed in such a way that it gradually returns to an uncompressed
      state.  [Reeves Decl., ¶ 13]

PLAINTIFF ZINUS' MOTION FOR SUMMARY                          Case No. C07-03012 PVT
JUDGMENT OF NON-INFRINGEMENT              20
DUE TO NO DIRECT INFRINGEMENT

Accordingly, because Zinus does not exercise "control or direction" over what either Wal-Mart or Wal-Mart's customers do with the shipped units of the Mattress-in-a-Box product, the combined actions of Zinus and Wal-Mart and Wal-Mart's retail customers do not constitute direct infringement under Federal Circuit precedent. The ill-conceived claims in the '142 Patent are simply not directly infringed by any party.

## VII.  CONCLUSION

Under Federal Circuit precedent, including the recent opinion *BMC Resources v. Paymentech, L.P*, the supply and sale by Zinus of the shipped units of the Mattress-in-a-Box product to Wal-Mart and the subsequent sale by Wal-Mart of the shipped units to retail customers in ordinary arms-length commercial retail transactions does not involve direct infringement on the part of any of Zinus, Wal-Mart or Wal-Mart's retail customers. Because there is no direct infringement, there can be no liability to any party for patent infringement under any theory. Accordingly, this Motion for Summary Judgment that Zinus' supply and sale of the shipped units of the Mattress-in-a-Box product to Wal-Mart does not constitute infringement of the '142 Patent should be granted. Deciding this Motion now on this basis will save the Court and the parties considerable time and expense.


Dated:  January 14, 2008                    By: _____/s/_____

                                            Darien K. Wallace
                                            IMPERIUM PATENT WORKS
                                            Attorneys for Plaintiff and Counterdefendant
                                            ZINUS, INC.