IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:  925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ZINUS, INC., a California corporation,

                    Plaintiff,

          v.

SIMMONS BEDDING COMPANY, a
Delaware corporation, and DREAMWELL,
LTD., a limited liability company of
Nevada,

                    Defendants.

DREAMWELL, LTD., a limited liability
company of Nevada,

                    Counterclaimant,

          v.

ZINUS, INC., a California corporation,

                    Counterdefendant.

Case No. 07-CV-03012 PVT

**PLAINTIFF ZINUS, INC.'S REPLY
TO DREAMWELL'S OPPOSITION
TO ZINUS' MOTION FOR RECON-
SIDERATION OF THE ORDER
DENYING ZINUS' MOTION FOR
SUMMARY JUDGMENT OF
NON-INFRINGEMENT**

Date:       January 22, 2008
Time:       10:00 a.m.
Location:  Courtroom 5
Judge:     Hon. Patricia V. Trumbull

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ……........................................................................... ii

TABLE OF AUTHORITIES ...................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES................................... 1

I.      INTRODUCTION …............................................................... 1

II.     LITERAL INFRINGEMENT ........................................................... 1

III.    PROSECUTION HISTORY ESTOPPEL PRECLUDES EXPANDING THE
        "INSERTING" ELEMENT UNDER THE DOCTRINE OF EQUIVALENTS... 3

        A. The "Inserting" Claim Element Was Narrowed By Amendment ................... 4

        B. The Prosecution History Indicates That The "Inserting" Element Was
           Amended For Patentability Purposes ............................................. 6

        C. The Patentee Surrendered The Claim Scope Between The Original
           Claim Element And The Amended Claim Element ...................................... 8

        D. The Rolling-Up Step Is Even Outside The Scope Of The Broader
           Original "Inserting" Claim Element ............................................ 9

IV.     DREAMWELL CANNOT REBUT THE PRESUMPTION OF SURRENDER
        UNDER THE "TANGENTIAL RELATION" FESTO EXCEPTION .............. 12

V.      DREAMWELL CANNOT REBUT THE PRESUMPTION OF SURRENDER
        UNDER THE "UNFORESEEABLE" FESTO EXCEPTION …........................ 14

VI.     CONCLUSION................................................................... 15

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>                                                                    <u>Page(s)</u>

3    *AquaTex Industries, Inc. v. Techniche Solutions,* 479 F.3d 1320, 81 USPQ2d

4         1865 (Fed.Cir. 2007) ...................................................................... 10, 11

5    *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 122 S. Ct.

6         1831, 152 L. Ed. 2d 944, 62 U.S.P.Q.2d 1705 (2002) (Festo VIII) …........... 10

7    *Festo Corp. v. Shoketsu Kinzoku Kabushiki Co.*, 344 F.2d 1350, 68 U.S.P.Q.2d

8         1321 (Fed.Cir. 2003) (Festo X) ...................................................... 3, 9

9    *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 83

10        USPQ2d 1385 (Fed. Cir. 2007) (Festo XIII) ................................................. 14

11   *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41 USPQ2d 1865

12        (1997)............................................................................................. 4

13

14

## <u>Statutes and Rules</u>

15   35 U.S.C. §103 ........................................................................................ 5, 13

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In the papers filed in support of and in opposition to Zinus' Summary Judgment Motion[1] and Motion for Reconsideration, the decision on whether Zinus' swirl wrap method infringes any claim of U.S. Patent No. Re 36,142 ("the '142 Patent") has come to depend on whether a particular claim element of the '142 Patent was amended so as to narrow the scope of that claim element and thereby estop defendant and counterclaimant Dreamwell, Ltd. ("Dreamwell") from now recapturing surrendered claim scope through the doctrine of equivalents in order to cover Zinus' swirl wrap method.  In Dreamwell's Opposition to Zinus' Motion for Reconsideration (hereinafter "Dreamwell's Opposition"), Dreamwell contends that the amendments made during the prosecution of the '142 Patent did not limit or restrict the characteristics of the "containment sleeve" term. [Dreamwell's Opposition, 10:13-14]  Because this contention is false, Dreamwell is estopped from expanding the scope of the "inserting . . . into a containment sleeve" element so as to cover the step of the swirl wrap method that involves rolling up a mattress together with a sheet of film and tape or bands.

As a fallback argument, Dreamwell now claims that it is entitled to use two *Festo* exceptions to rebut the presumption of prosecution history estoppel where a claim element has been amended for patentability purposes.  After admitting in its Opposition to Zinus' Summary Judgment Motion that the "inserting . . . into a containment sleeve" element was amended for patentability purposes, Dreamwell had the burden of rebutting the presumption of prosecution history estoppel by showing that it was entitled to a *Festo* exception. Dreamwell failed to rebut the presumption of estoppel at that time.  Although Dreamwell now raises new arguments concerning *Festo* exceptions, those new arguments are also inadequate to rebut the presumption of estoppel.

## II.  LITERAL INFRINGEMENT

As a preliminary matter, Dreamwell has now effectively admitted in Dreamwell's

---

[1]  Plaintiff and Counterdefendant Zinus, Inc.'s ("Zinus'") Motion For Summary Adjudication of Non-

1  Opposition that the swirl wrap method of rolling up a sheet of film together with a

2  compressed mattress does not literally infringe any claim of the '142 Patent.  Zinus stated in

3  its Summary Judgment Motion that "[n]o containment sleeve is involved in the 'swirl wrap'

4  packaging method. Accordingly, the 'swirl wrap' packaging method cannot literally infringe

5  any claim of the '142 Patent."  [Zinus' Summary Judgment Motion, 7:16-18; see also 19:5-8]

6  Zinus also stated in its Motion for Reconsideration, "The issue of literal non-infringement

7  has been effectively conceded by Dreamwell.  Dreamwell has not even attempted to argue

8  literal infringement." [Zinus' Motion for Reconsideration, 6:17-18]  Dreamwell now admits

9  in its Opposition that "Zinus has not argued and cannot seriously argue its combination of

10  reinforced fabric and bands of tape or plastic stripping was literally covered by the original

11  claims of the '142 Patent . . .." [Dreamwell's Opposition, 9:18-20]  Considering that the

12  original claims of the '142 Patent were narrowed as opposed to expanded by the subsequent

13  amendments, Dreamwell's statement is an admission that the swirl wrap method is not

14  literally covered by the narrower allowed claims of the '142 Patent.

15        Dreamwell nevertheless attempts, however, to avoid a finding of no literal

16  infringement by arguing that "Zinus never moved for a partial summary judgment on that

17  [literal] theory of infringement. Rather, Zinus moved for summary judgment on infringement

18  as a whole." [Dreamwell's Opposition, fn 5]  Contrary to Dreamwell's statement, Zinus is

19  entitled to a finding that the swirl wrap method does not literally infringe any claim of the

20  '142 Patent because (i) Dreamwell has presented no case for literal infringement, (ii) Zinus

21  has demonstrated that no containment sleeve whatsoever is involved in the swirl wrap

22  method, and (iii) Zinus moved for a finding "that the Swirl Wrap packaging method as

23  defined in Zinus' Memorandum of Points and Authorities and in the accompanying

24  declaration of Scott Reeves does not fall within the scope of any claim of U.S. Patent No. Re.

25  36,142, either literally or under the doctrine of equivalents." [Zinus' Proposed Order

26  Granting Zinus' Summary Judgement Motion (emphasis added)]

27

28

    Infringement filed on October 2, 2007.

### III.  PROSECUTION HISTORY ESTOPPEL PRECLUDES EXPANDING THE "INSERTING" ELEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Dreamwell argues that the doctrine of prosecution history estoppel is inapplicable to the "containment sleeve" term within the "inserting" claim element.  To determine whether prosecution history estoppel precludes the "inserting" claim element from being expanded under the doctrine of equivalents to cover the "rolling up" step of the swirl wrap method, the four questions outlined in *Festo X* should be analyzed.  *Festo Corp. v. Shoketsu Kinzoku Kabushiki Co.*, 344 F.2d 1350, 68 U.S.P.Q.2d 1321, 1326 (Fed.Cir. 2003) (Festo X).  First, the literal scope of the claim element must have been narrowed by amendment.  Second, the reason for the amendment must relate to patentability.  If the prosecution history reveals no reason for the narrowing amendment, the reason is presumed to relate to patentability, and the patentee may rebut the presumption that a narrowing amendment was made for patentability reasons and overcome this amendment-based estoppel.  Third, if the patentee does not rebut the presumption under amendment-based estoppel or if the prosecution history record indicates that an amendment was made for patentability purposes (argument-based estoppel), then the claim scope surrendered includes the subject matter between the original claim element and the amended claim element.  Of course, subject matter beyond the scope of the original claim language has also been surrendered, as explained below in Section D.  Fourth, the patentee may rebut the presumption that a particular equivalent that falls between the original claim element and the amended claim element has been surrendered by demonstrating that one of three exceptions applies.

In this case, Dreamwell is precluded from expanding coverage of the claims beyond the scope of the amended "inserting" claim element because (i) the "inserting" claim element was narrowed by amendment, (ii) the prosecution history record indicates that the "inserting" claim element was amended for patentability purposes, and (iii) Dreamwell cannot demonstrate that any of the three *Festo* exceptions applies in order to rebut the presumption that the alleged equivalent of a sheet and tape or plastic stripping was surrendered.

## A.  The "Inserting" Claim Element Was Narrowed By Amendment

The first question in the *Festo X* analysis concerns whether a claim element was narrowed by amendment.  Dreamwell attempts to finesse this issue by arguing that even if the scope of equivalency of a claim element is limited because that element was amended for patentability purposes, an individual term within that claim element may nevertheless be entitled to a broader scope of equivalency than the narrowed claim element in which it is contained.  [Dreamwell's Opposition, 1:10-12]  Dreamwell  argues that prosecution history estoppel does not prevent the "inserting" claim element from covering the "rolling up" step of the swirl wrap method because "the 'containment sleeve' language was not substantively narrowed throughout the prosecution of the patent."  [Dreamwell's Opposition, 9:21-22]  Dreamwell places signficance in the fact that the "inventors made no amendment to the 'containment sleeve' language itself."  [Dreamwell's Opposition, 4:4-5]

Whether prosecution history estoppel estops a patentee from applying the doctrine of equivalents, however, is based on an element-by-element analysis as opposed to analyzing only specific claim terms within those elements.  Whether the patentee is estopped from applying an equivalency is not properly determined by analyzing only individual claim terms within a claim element and ignoring the scope of the claim element that was narrowed. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 41 USPQ2d 1865 (1997).

The scope of an individual claim term within a claim element may not be expanded beyond the scope of the claim element whose equivalents have been restricted by amendment.  Merely because an individual claim term within a claim element has not been changed does not mean that the claim term has not been narrowed by an amendment to the claim element.  In this case, amendments to the claim element "inserting . . . into a containment sleeve . . . for shipment" narrowed the "containment sleeve" term in order to avoid covering the containment sleeve disclosed in the Broyles reference.  Thus, Dreamwell's statement that "those amendments did not limit or restrict the characteristics of the containment sleeve element" is inaccurate.  [Dreamwell's Opposition, 10:13-14]  If the original "inserting . . . into a containment sleeve" had not been narrowed by amendment, it

1    would have covered sleeve 1, inner layer 42 and outer layer 43 of Broyles.  The prosecution

2    history record indicates that the applicants acknowledged that the original "inserting" claim

3    element covered each of sleeve 1, inner layer 42 and outer layer 43 of Broyles.  So the

4    applicants argued that the amended "inserting" claim element was narrower than Broyles and

5    did not read on sleeve 1, inner layer 42 and outer layer 43 because the amended "inserting"

6    claim element restricted the "structure and functioning" of the claimed containment sleeve.

7    In their amendment dated June 26, 1996, the applicants acknowledged that the "containment

8    sleeve" term was narrowed by amending the "inserting" claim element even though the

9    language of the "containment sleeve" term was not changed:

10       "In the Final Action mailed March 26, 1996, claims 1-4 were again rejected
         under 35 U.S.C. § 103 as being unpatentable over Broyles, U.S. Patent No.
11       3,611,524. In asserting this rejection, the Examiner states somewhat unclearly that
         sleeve 1 of Broyles holds the springs and acts as a containment sleeve. Also that the
12       springs are held by the inner layer 42 and outer layer 43 which reads on a
         containment sleeve. Therefore, Broyles shows a containment sleeve 43 holding the
13       springs in a compressed state.
14           Applicants respectfully traverse this basis for rejection of the claims. It is
         not seen how either sleeve 1 or outer layer 43 of Broyles functions in a way like the
15       containment sleeve specifically called for in the instant claims 1-4. This is
         obviously so because Broyles clearly is not directed to a packaging method which
16       permits convenient **shipment** of mattress assemblies constructed of pocketed coil
         springs. Broyles simply teaches a method for constructing mattresses. There is no
17       containment sleeve in Broyles which is meant to be placed over an evacuated tube
         of compressed springs to indefinitely retain the springs in a compressed state **for**
18       **shipment**." [6/26/1996 Amendment, 2:23-3:18 ( underlined emphasis in original,
         bold emphasis added), found in Exh W-F to Wallace Declaration to Zinus' Motion
19       for Summary Judgment]

20

21    Thus, the amendment to the "inserting" claim element narrowed the "containment sleeve"

22    term to a sleeve that functions differently than sleeve 1, inner layer 42 or outer layer 43 of

23    Broyles, namely a sleeve that is "meant to be placed over an evacuated tube of compressed

24    springs to indefinitely retain the springs in a compressed state for shipment" [2] (emphasis

25

26    _____

27    [2]  Although Dreamwell now asserts that Zinus "cannot argue that the addition of the clause 'for
      shipment' substantively narrowed the scope of the claims at all" [Dreamwell's Opposition, 10:21-
28    22], Dreamwell has already admitted that the applicants narrowed the claims by adding "for
      shipment" in order to distinguish the Broyles reference. Dreamwell acknowledged, "Moreover, the
      applicants noted that '[t]here is no discussion or even remote suggestion in Broyles relating to the

1    added).  The amended claim element no longer literally reads on sleeves that are <u>not meant to</u>

2    <u>be placed over</u> a compressed mattress for shipment.  For example, the amended "inserting"

3    claim element does not read on a sheet of film into which a compressed mattress is rolled up

4    because the sheet of film is not dimensioned and configured to be "placed over" the

5    compressed mattress, and the compressed mattress is not "inserted into" the sheet of film.

6    **B.  The Prosecution History Indicates That The "Inserting" Element Was**

7    **Amended For Patentability Purposes**

8    The second question in the *Festo X* analysis concerns whether a claim element was

9    amended for patentability reasons.  Dreamwell admitted in its Opposition to Zinus' Summary

10   Judgment Motion that the "inserting" claim element was twice amended for patentability

11   purposes.  In January 1996, the applicants first amended the "inserting" claim element by

12   narrowing what the containment sleeve was configured to retain. [<u>See</u> Exh W-B to Wallace

13   Declaration to Zinus' Motion for Summary Judgment]  The "inserting" element was

14   amended as follows: "inserting said evacuated tube into a containment sleeve which is

15   dimensioned and configured to retain said compressed [article] <u>assembly</u> in a compressed

16   state."  (Brackets denote deletion; underlining denotes addition.)  The originally recited

17   "resiliently compressible **article**" was changed to "an **assembly** of coil springs wherein each

18   spring is contained within an individual pocket of fabric".  Dreamwell admitted that this

19   amendment in January 1996 was made for purposes of narrowing the "containment sleeve"

20   term to avoid covering the containment sleeve disclosed in the Broyles reference.  Regarding

21   the amendment by the applicants, Dreamwell admitted, "They also noted that '[t]here is no

22   containment sleeve disclosed in Broyles which is intended to maintain the innerspring in a

23   compressed state after evacuation. The claims of the instant application all call for such a

24   containment sleeve.'" [Dreamwell's Opposition to Summary Judgment Motion, 4:2-5]  Thus,

25

26   *shipment* of the compressed mattress. Consequently, <u>Broyles does not need to use</u> – or even suggest
     using – <u>a containment sleeve 'to retain said compressed mattress assembly for shipment,'</u> as
27   required by the present claims.'" [Dreamwell's Opposition to Zinus' Summary Judgement Motion,
     6:14-17 (italicized emphasis in original; underlined emphasis added)] Dreamwell also admitted that

28

the "inserting" claim element was amended to limit the containment sleeve to one configured

to retain "an assembly of coil springs wherein each spring is contained within an individual

pocket of fabric" instead of a containment sleeve originally configured to retain a broader

"resiliently compressible article", which was disclosed in the Broyles reference.

Then in June 1996, the applicants again amended the "inserting" claim element for

patentability purposes.  Dreamwell admitted, "the inventors submitted an Amendment After

Final Rejection in which they added the highlighted language to the 'containment sleeve'

element: 'inserting said evacuation tube into a containment sleeve which is dimensioned and

configured to retain said *mattress* assembly in a compressed state *for shipment*.'"

[Dreamwell's Opposition to Zinus' Summary Judgment Motion, 4:20-23 (emphasis in

original)]  Dreamwell again acknowledged that the amendments to the "inserting" claim

element limited the "containment sleeve" claim term.  Dreamwell admitted:

> "The inventors noted that in these new elements, 'the structure and functioning of
> applicants' containment sleeve is more clearly and specifically defined.' [Id.] They
> also argued that '[t]here is *no containment sleeve* in Broyles which is meant to be
> placed over an evacuated tube of compressed springs to indefinitely retain the
> springs in a compressed state for shipment. . . . There is no suggestion at all in
> Broyles of using a containment sleeve to retain the springs in compression.'"
> [Dreamwell's Opposition to Summary Judgment Motion, 5:2-7 (emphasis in
> original)]

Thus, the applicants admitted that Broyles disclosed a containment sleeve, but distinguished

Broyles by arguing that the amended "inserting" claim element was limited to inserting an

evacuated tube into a containment sleeve having "the structure and functioning" of the

narrowed sleeve.

In their argument for allowability, the applicants clearly and unmistakably

surrendered claim coverage over any equivalent of inserting an evacuated tube into the type

of containment sleeve disclosed in Broyles.  The applicants argued:

> "In an effort to further clarify applicants' invention, the <u>Amendment</u> is requested
> for entry herein wherein the <u>structure and functioning of applicants' containment</u>

---

"the <u>primary function</u> of the containment sleeve element is to restrict the compressed mattress from
expanding <u>during shipment</u>." [Id. at 16;25-27 (emphasis added)]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sleeve is more clearly and specifically defined. No such element is found or even remotely suggested in Broyles. Accordingly, it is believed that the instant Amendment places the case in condition for allowance or in better condition for appeal." [6/26/96 Amendment (emphasis added), 4:1-7, found in Exh W-F to Wallace Declaration to Zinus' Motion for Summary Judgment]

Argument-based estoppel applies in this case because the prosecution history record indicates that the applicants limited the claim scope to avoid the Broyles reference. The applicants limited the claim scope of the amended claim to inserting an evacuated tube into a containment sleeve having "the structure and functioning" of the amended sleeve.

### C. The Patentee Surrendered The Claim Scope Between The Original Claim Element And The Amended Claim Element

If the prosecution history record indicates that an amendment was made for patentability purposes, then the third step in the *Festo X* analysis is to define the subject matter between the original claim element and the amended claim element that has been surrendered. Because the record is clear that the "inserting" claim element was narrowered for patentability reasons, this case involves argument-based estoppel as opposed to amendment-base estoppel.[3] The applicants surrendered claim scope to inserting a compressed mattress into any "containment sleeve" that does not have "the structure and functioning" of the sleeve in the amended "inserting" claim element.

The scope of the "containment sleeve" in the amended "inserting" claim element was surrendered over any sleeve with the structure or function of sleeve 1, inner layer 42 or outer layer 43 of Broyles. The applicants explicitly surrendered claim scope over any sleeve that is not meant to be placed over a compressed spring mattress to indefinitely retain the springs in a compressed state for shipment. Therefore, the claim scope that was surrendered includes subject matter describing a compressed mattress rolled up in a sheet of film because the sheet of film (i) has a different structure than the narrowed containment sleeve, (ii) is not dimensioned and configured to be "placed over" a compressed mattress, and (iii) the

---

[3] The statement in footnote 6 of Dreamwell's Opposition that amendment-based as opposed to argument-based estoppel applies in this case is incorrect because here the prosecution history record does indeed reveal the reasons for the narrowing amendments. See *Festo X*, 68 U.S.P.Q.2d at 1326.

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR RECONSIDER-    8
ATION OF ORDER DENYING SUMMARY JUDGMENT MOTION

Case No. 07-CV-03012 PVT

1   compressed mattress is not "inserted" into the sheet of film.  Dreamwell is precluded from

2   expanding the equivalency of the "containment sleeve" term to a sheet of film that does not

3   have the narrowed structure of the containment sleeve that was the basis for distinguishing

4   the containment sleeve of Broyles.

5       **D.  The Rolling-Up Step Is Even Outside The Scope Of The Broader Original**

6           **"Inserting" Claim Element**

7           Dreamwell even admits that rolling up a compressed mattress in a sheet of film and

8   wrapping the rolled up mattress with tape is outside of the scope of the original inserting

9   claim element.  Dreamwell states, "Zinus has not argued and cannot seriously argue its

10  combination of reinforced fabric and bands of tape or plastic stripping was literally covered

11  by the original claims of the '142 Patent . . .". [Dreamwell's Opposition, 9:18-20]  Then

12  Dreamwell concludes that, although a narrowed claim element cannot be expanded to an

13  equivalent in the territory between an original broader claim element and the narrowed claim

14  element, the narrowed claim element may nevertheless be expanded to an equivalent that is

15  outside even the broader scope of the original claim element.  Dreamwell argues that a

16  patentee "is presumed to have disclaimed claim scope, <u>but only</u> 'of the territory between the

17  original claim and the amended claim.'"  [Dreamwell's Opposition, footnote 7 (emphasis

18  added)]  Dreamwell also states that "the presumption (and therefore the defense) of

19  prosecution history estoppel <u>only applies</u> to limit a claim of infringement under the doctrine

20  of equivalents where the accused equivalent was 'within the scope of the claim before

21  amendment, and . . . is not within the scope of the claim after amendment,. [sic]" (emphasis

22  added).  These statements by Dreamwell mischaracterize the doctrine of equivalents.

23  Dreamwell quotes no case authority for its proposition.  In fact, not only is a patentee

24  precluded from asserting an equivalent in the surrendered territory between an original claim

25  and a narrowed amended claim, but the patentee is also precluded from asserting an

26  equivalent that is beyond the broader scope of the original claim.

27          Zinus has found no statement in case authority that explicitly precludes an equivalent

28  from being asserted on subject matter that is even outside the broader scope of a pre-

1    amendment claim probably because courts have found no need to state the obvious.  Subject

2    matter that was always outside the broader scope of a pre-amendment claim is not an

3    insubstantial substitute and cannot be reached by asserting an "equivalent".  Certainly the

4    *Festo VIII* and *Aquatex* [4] cases cited by Dreamwell in Dreamwell's Opposition do not hold

5    that an equivalent may be asserted on subject matter that was beyond even the broader scope

6    of a claim before it was narrowed by amendment.  In fact, *Festo VIII* states, "Where the

7    original application once embraced the purported equivalent but the patentee narrowed his

8    claims to obtain a patent or to protect its validity, the patentee cannot assert that he lacked the

9    words to describe the subject matter in question".  *Festo VIII*, 62 USPQ2d at 1171 (emphasis

10    added).  "By amending the application, the inventor is deemed to concede that the patent

11    does not extend as far as the original claim". [*Id*. at 1707, 1712 (emphasis added)].  "A

12    patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the

13    broader subject matter, . . .." [*Id*. at 1712 (emphasis added)]   Here, the original claim

14    language did not embrace the purported equivalent, and the amended claim language does

15    not extend even as far as the original claim, much less beyond the original claim.

16        *Festo VIII* does not hold, as Dreamwell implies, that the surrendered territory extends

17    only as far as the original claim and not to the territory beyond the original claim.  Of course,

18    the broader subject matter, including the territory beyond the original claim, is surrendered as

19    well.  Where the original claim language did not embrace a purported equivalent, the

20    patentee may not argue that subject matter beyond even the original scope of an amended

21    claim comprises an "insubstantial substitute" and an "unforeseen equivalent."  The patentee

22    may not argue that he could not reasonably be expected to have drafted a claim that would

23    have literally encompassed an equivalent that lies beyond even the original claim before it

24    was amended.

25        *Aquatex* also does not hold, as Dreamwell implies, that territory surrendered by

26

27    _____

28    [4] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944, , 62 U.S.P.Q.2d 1705 (2002) (Festo VIII); *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed.Cir. 2007).

1   amendment extends <u>only</u> as far as the original claim and not to the territory beyond the

2   original language of the amended claim element.  In *Aquatex*, the Court held that where a

3   patentee amends and narrows one claim element, the patentee is not thereby barred from

4   asserting an equivalent to a completely different claim element that was not amended.

5   Prosecution history estoppel is analyzed on an element-by-element basis. *Aquatex*, 479 F.3d

6   at 1328.  Neither argument-based nor amendment-based estoppel applied to the "fiberfill

7   batting material" element of *Aquatex* because "neither the arguments nor amendments made

8   during prosecution relate to the composition of the fiberfill batting".  [*Id.* at 1326].  Instead, a

9   completely different claim element was narrowed so that it applied only to "evaporatively

10  cooling" a person.  *Aquatex* does not state that the patentee did not surrender claim scope to

11  subject matter that was broader than "evaporatively cooling" a person, including subject

12  matter beyond even the original language "employing said multi-layered, liquid retaining

13  composite as a garmet or a flat sheet".  Although the Court found that the patentee was not

14  barred from asserting an equivalent to the "fiberfill batting material" element, the Court

15  nevertheless found summary judgment of non-infringement was appropriate because the

16  patentee had presented only lawyer argument and no evidence on an element-by-element

17  basis explaining the insubstantiality of the difference between the patented method and the

18  accused product.

19         In this case, Dreamwell argues that, although the narrowed "inserting" element

20  cannot be expanded to an equivalent in the territory between the original "inserting" element

21  and the narrowed "inserting" element, the narrowed "inserting" element may nevertheless be

22  expanded to an equivalent that is beyond even the broader scope of the original "inserting"

23  element.  Neither established law on the doctrine of equivalents, nor the *Festo VIII* or

24  *Aquatex* cases cited by Dreamwell, supports Dreamwell's argument.  The amendment that

25  narrowed the "inserting" element for patentability reasons also estops Dreamwell from

26  expanding the scope of the narrowed "inserting" element to cover the "rolling up" step of the

27  swirl wrap method, which Dreamwell admits was not covered by the original claims of the

28  '142 Patent.

## IV. **DREAMWELL CANNOT REBUT THE PRESUMPTION OF SURRENDER UNDER THE "TANGENTIAL RELATION" FESTO EXCEPTION**

Dreamwell claims for the first time in Dreamwell's Opposition that it is entitled to apply two of the *Festo* exceptions to rebut the presumption that claim scope has been surrendered beyond the literal scope of a claim element that was admittedly narrowed for patentability reasons. Dreamwell asserts that it is not estopped from asserting that the combination of fabric and tape or bands is equivalent to a containment sleeve because, as Dreamwell now maintains, the rationale underlying the narrowing amendments bears "no more than a tangential relation" to the equivalent in question. To convince the Court that the narrowing amendments made to the "inserting" claim element during prosecution bear no more than a tangential relation to the alleged equivalent, Dreamwell relies on a misleading explanation of the prosecution history in an attempt to argue that the "inserting" claim element was narrowed only to change a generic recitation of "compressed articles" to a specific recitation of "coiled springs". Dreamwell summarizes the prosecution history by recounting that the applicants amended the "containment sleeve" term as follows: "inserting said evacuation tube into a containment sleeve which is dimensioned and configured to retain said ***mattress assembly*** in a compressed state ***for shipment***" (emphasized words added by amendment). However, Dreamwell then inaccurately represents to the Court that "the inventors did not offer any amendments that would narrow or 'surrender' any subject matter relating to the containment sleeve." [Dreamwell' Opposition, 4:25-28]

This statement is false. Dreamwell did make amendments that narrowed and surrendered subject matter relating to the "containment sleeve." Dreamwell has failed to inform the Court that the patentees affirmatively represented to the patent Examiner that the amendment "more clearly and specifically defined" "the structure and functioning of applicants' containment sleeve" and that this statement about the amendment was made to distinguish the Broyles patent. [See 6/26/96 Amendment, 4:1-5, found in Exh W-F to Wallace Declaration to Zinus' Motion for Summary Judgment; the Broyles patent is found in Exh W-D to Wallace Declaration to Zinus' Motion for Summary Judgment] This

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR RECONSIDER-    12
ATION OF ORDER DENYING SUMMARY JUDGMENT MOTION

Case No. 07-CV-03012 PVT

amendment bears an important and direct relation to the "containment sleeve" element and cannot be passed off as bearing no more than a tangential relation to whether the structure of the narrowed containment sleeve covers the alleged sheet and tape or bands equivalent.

What Dreamwell's Opposition hides from the Court is as follows. The claims were initially rejected under 35 U.S.C. § 103 as being unpatentable over the Broyles prior art. Broyles teaches putting a mattress on a sheet of plastic 19 (see Figure 3 reproduced below), wrapping the plastic sheet around the mattress, and then sucking air out of the sheet (see Figure 4), thereby compressing the mattress. The compressed mattress is then inserted (see Figure 7) into a cover 1. The applicants were obviously not the first to compress a mattress, and the parallels between the applicants' invention and Broyles were obvious. Once the mattress in Broyles is in cover 1, Broyles allows the mattress to return to an uncompressed state so that it fills the inside volume of cover 1. In making the § 103 rejection, the Examiner stated that Broyles' cover 1 satisfied the "containment sleeve" wording of the claim.



The applicants then argued that the cover 1 of Broyles was different than the recited containment sleeve because "Broyles needs only to compress a slight amount" whereas the applicants' method was "directed to reducing the volume of coil springs . . . such that the springs can be shipped". [1/16/96 Amendment, 3:22-4:6 (emphasis added), found in Exh W-B to Wallace Declaration to Zinus' Motion for Summary Judgment] The applicants therefore added the last two steps of the claim and added the "for shipment" limitation to the "inserting into a containment sleeve" element. After adding "for shipment", the applicants represented to the Examiner that the amendment "more clearly and specifically defined" the "structure and functioning of applicants' containment sleeve". [6/26/96 Amendment (emphasis added),

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR RECONSIDER-    13
ATION OF ORDER DENYING SUMMARY JUDGMENT MOTION

Case No. 07-CV-03012 PVT

4:1-7, found in Exh W-F to Wallace Declaration to Zinus' Motion for Summary Judgment]

This important representation is nowhere mentioned Dreamwell's otherwise detailed explanation of the prosecution history. In Zinus' view, this omission is inexcusable and can lead to a distorted reading of the prosecution history. The statement in Dreamwell's Opposition that "the inventors did not offer any amendments that would narrow or 'surrender' any subject matter relating to the containment sleeve" is false. To the contrary, the prosecution history reveals that the narrowing amendments bear a direct relation to the structure and functioning of the "containment sleeve" limitation. The amendment to the "inserting" element therefore clearly bears "more than a tangential relationship to the equivalent in question" because the structure and functioning of the narrowed "containment sleeve" limitation is clearly relevant to whether rolling up a compressed mattress in a sheet with tape or bands is equivalent to inserting a compressed mattress into a containment sleeve, as the structure and function of the containment sleeve were narrowed by the amendment.

## V. DREAMWELL CANNOT REBUT THE PRESUMPTION OF SURRENDER UNDER THE "UNFORESEEABLE" FESTO EXCEPTION

*Festo XIII* holds that an equivalent is foreseeable if the equivalent was disclosed in the pertinent art at the time of the amendment. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1378, 1380, 2007 U.S. App. LEXIS 15942, 83 U.S.P.Q.2d 1385 (Fed.Cir. 2007) (*Festo XIII*). The alleged equivalent (combination of sheet and tape or bands) was known in the field of the invention at the time of the amendment because the prior art Magni patent discloses rolling up a compressed mattress assembly in a sheet of film.

Dreamwell does not argue that it would not be barred from using the "unforeseeable" exception if the Magni patent discloses rolling up a compressed mattress assembly in a sheet of film. Instead, Dreamwell again claims that Zinus has misrepresented that Magni discloses the alleged equivalent. It is Dreamwell, however, that misrepresents the disclosure of Magni. It is simply incorrect that Magni "involves wrapping a compressed mattress in a criss-cross pattern with one or more revolutions of a narrow, ribbon-shaped strand of film." [Dreamwell's Opposition, 14:19-21] Dreamwell's reference to making a criss-cross pattern

1   with a narrow strand is simply a fabrication.  In fact, the dashed lead-line to "C" in figure 13

2   of Magni denotes that the mattress cover C is underneath (and not visible through) the film

3   222A.  The criss-cross pattern in Figure 13 represents the quilting on mattress cover C of

4   Figure 12 when the compressed mattress is rolled up inside film 222A.  As explained in

5   Zinus' Summary Judgment Reply memorandum, the "ribbon-shaped film 222" becomes the

6   sheet, and "ribbon-shaped strings 230" become the bands.  The ribbon-shaped film 222 is not

7   a narrow strand, as Dreamwell represents.  Rather, the ribbon-shaped film 222 on the

8   reservoir-spool 220 at the right in Figures 9 and 10 of Magni is as wide as the mattress

9   $M_3/M_5/M_7/Mg$ of Figure 10.  It is also apparent from Figures 10 and 13 of Magni that the

10  film 222A does not leave any exposed surface on the circumference of the rolled mattress.

11      The alleged equivalent of the combination of a sheet and tape or bands was

12  foreseeable as a matter of law because it was disclosed in the prior art at the time of the

13  amendment, and Dreamwell may not use the "unforeseeable" Festo exception to rebut the

14  presumption that claim scope over the alleged equivalent was surrendered by the amendment

15  to the "inserting" claim element that was made for patentability reasons.[5]

16      **VI.  CONCLUSION**

17      For the foregoing reasons, Zinus' Motion for Reconsideration should be granted, and

18  Zinus is entitled to a finding that the swirl wrap method does not fall within the scope of any

19  claim of the '142 Patent, either literally or under the doctrine of equivalents.

20

21  Dated:  January 15, 2008                    By: _____/s/_____

22                                                  Darien K. Wallace
                                                    IMPERIUM PATENT WORKS
23                                                  Attorneys for Plaintiff and Counterdefendant
                                                    ZINUS, INC.
24

25

26

27  [5] Although no underlying facts need be considered in this case to preclude Dreamwell from using the
    "unforeseeable" exception, the resolution of factual issues underlying Dreamwell's rebuttal under
28  the "unforeseeable" exception could properly be decided by the Court. *Festo X*, 68 USPQ2d at
    footnote 3.