IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone: 925-862-9972
Facsimile: 925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ZINUS, INC., a California corporation,

Plaintiff,

v.

SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,

Defendants.

DREAMWELL, LTD., a limited liability company of Nevada,

Counterclaimant,

v.

ZINUS, INC., a California corporation,

Counterdefendant.

Case No. 07-CV-03012 PVT

**ZINUS' MEMORANDUM IN OPPOSITION TO DREAMWELL'S BRIEF RE HYPOTHETICAL CLAIM ANALYSIS**

Date: February 19, 2008
Time: 10:00 a.m.
Location: Courtroom 5
Judge: Hon. Patricia V. Trumbull

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. HYPOTHETICAL CLAIM AND DREAMWELL'S ARGUMENT .......... 2

III. THE HYPOTHETICAL CLAIM WAS NOT PATENTABLE .......... 3

A. "Pocketed Coil Springs" Does Not Make The Hypothetical Claim Patentable 3

B. The "Solid Cover or Barrier of Flexible Material" Recitation Renders The Hypothetical Claim Invalid Under 35 U.S.C. §112, ¶1 .......... 7

C. "Solid Cover or Barrier of Flexible Material" Does Not Make The Hypothetical Claim Patentable .......... 8

D. Reciting That The Containment Sleeve Is "Pre-Cut" Does Not Make The Hypothetical Claim Patentable .......... 11

E. The "Tape, Adhesives or Fasteners" Recitation Renders The Hypothetical Claim Invalid Under 35 U.S.C. §112, ¶1 .......... 13

F. The Hypothetical Claim is Unpatentable Under 35 U.S.C. §112, ¶2 .......... 13

IV. CONCLUSION .......... 14

ZINUS' MEMORANDUM IN OPPOSITION TO DREAMWELL'S BRIEF RE HYPOTHETICAL CLAIM ANALYSIS ii Case No. 07-CV-03012 PVT

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 82 USPQ2d 1385 (2007) .... 5, 6

*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 76 USPQ2d 1724 (Fed.Cir. 2005) .... 7

*Moore USA, Inc. v. Standard Register Co.*, 229 F.3d 1091, 56 USPQ2d 1225 (Fed.Cir. 2000) .... 1

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 50 USPQ2d 1515 (Fed.Cir. 1999) .... 2

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir. 1990) .... 1, 2

**Statutes and Rules**

35 U.S.C. §103 .... 3

35 U.S.C. §112 .... 3, 7-8, 13-14

Manual of Patent Examining Procedure (MPEP) Section 2144.04, III .... 13

## I. INTRODUCTION

The Court has already found that Zinus' Swirl Wrap method does not literally infringe U.S. Patent No. Re 36,142 ("the '142 Patent"). The only remaining issue[1] is whether there can be infringement under the doctrine of equivalents.

As set forth previously by Zinus, there are three independent reasons why there can be no infringement under the doctrine of equivalents. If Zinus were to prevail on any one of the three, then Zinus' Swirl Wrap method cannot be found to infringe under the doctrine of equivalents. The three reasons are: (1) applying the doctrine of equivalents to the "inserting . . . into" claim element is barred due to prosecution history estoppel, (2) the scope of equivalency of the "inserting . . . into" element cannot be expanded so far as to encompass the Swirl Wrap method because doing so would result in the expanded right to exclude covering the prior art method of U.S. Patent No. 4,711,067 to Magni (the "Magni patent"), and (3) "inserting . . . into" is not the equivalent of "rolling up" under the insubstantial differences test (function/way/result).

Zinus submits that the cleanest and easiest way for the Court to dispose of the doctrine of equivalents issue is to find that the doctrine of equivalents is barred due to prosecution history estoppel. Such a finding can be made, as a matter of law, looking only at the intrinsic evidence. Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. A hypothetical claim analysis cannot operate to the exclusion of the doctrine of prosecution history estoppel or the All Limitations Rule. *Moore USA, Inc. v. Standard Register Co.*, 229 F.3d 1091, 56 USPQ2d 1225 (Fed.Cir. 2000).

The Court, however, has ordered the parties to brief the "hypothetical claim" analysis set forth in *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677 (Fed.Cir. 1990). Before engaging in this exercise, Zinus wishes to point out that the hypothetical claim procedure helps identify an outer limit, imposed by the prior art, of how

far the doctrine of equivalents can expand the right to exclude. The hypothetical claim analysis that identifies this outer limit is not, however, a substitute for the insubstantial differences test (or the associated function/way/result test). The insubstantial differences test is a separate and independent requirement for establishing infringement under the doctrine of equivalents.

In its Opening Brief re Hypothetical Claim Analysis ("Hypothetical Claim Brief"), Dreamwell proposes a hypothetical claim. Dreamwell has not, however, met its burden of proving the patentability of the hypothetical claim. The Court of Appeals for the Federal Circuit has held that the burden of proving patentability rests with the patentee:

> "It is well settled law that a patentee cannot assert a range of equivalents that encompasses the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683, 14 USPQ2d 1942, 1948 (Fed. Cir. 1990). To test this limit, the notion of a hypothetical claim may be useful. *904 F.2d at 684,* 14 USPQ2d at 1948. A hypothetical claim may be constructed to literally cover the accused device. *Id.* If such a claim would be unpatentable under 35 U.S.C. §§ 102 or 103, then the patentee has overreached, and the accused device is noninfringing as a matter of law. *904 F.2d at 683-84,* 14 USPQ2d at 1948. The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests with the patentee. *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 984, 50 USPQ2d 1515, 1521 (Fed. Cir. 1999)." [*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 61 USPQ2d 1152 (Fed.Cir. 2001)]

Dreamwell's hypothetical claim is unpatentable under both 35 U.S.C. §103 and 35 U.S.C. §112. Therefore, the Patent Office would not allow Dreamwell's hypothetical claim.

## II. HYPOTHETICAL CLAIM AND DREAMWELL'S ARGUMENT

Dreamwell's Hypothetical Claim Brief actually proposes two alternative hypothetical elements to take the place of the claim element "inserting . . . into said containment sleeve . . . for shipment". Dreamwell's two alternative hypothetical claim elements are:

> (1) "inserting said evacuation tube into a pre-cut, solid cover or barrier of flexible material that substantially covers the exposed surface of the mattress assembly and which is dimensioned or configured, including by use of tape, adhesives or fasteners, to retain said compressed mattress assembly in a compressed state for shipment."

---

[1] Concerning Zinus' Motion for Summary Adjudication of Non-Infringement, filed on October 2, 2007.

      (2) "positioning said evacuation tube within a pre-cut, solid cover or barrier of flexible material that substantially covers the exposed surface of the mattress assembly and which is dimensioned or configured, including by use of tape, adhesives or fasteners, to retain said compressed mattress assembly in a compressed state for shipment."

Dreamwell has two basic arguments as to why its hypothetical claim is patentable over Magni. First, the hypothetical claim recites that each spring of the mattress assembly being compressed is contained within its own individual pocket of fabric. According to Dreamwell, Magni does not disclose this, and for this reason the hypothetical claim is patentable over Magni. Second, the hypothetical claim recites that the compressed mattress assembly is inserted into a "<u>pre-cut</u>, solid cover or barrier of flexible material" that "substantially covers the exposed surface of the mattress assembly" (emphasis added). According to Dreamwell, Magni does not disclose either the "pre-cut" aspect or a "solid cover or barrier" that "substantially covers the exposed surface of the mattress assembly". For these reasons as well, Dreamwell asserts that the hypothetical claim is patentable over Magni.

Zinus respectfully disagrees. Dreamwell's hypothetical claim is unpatentable under both 35 U.S.C. §103 and 35 U.S.C. §112. Therefore, the Patent Office would not allow Dreamwell's hypothetical claim.

## III. <u>THE HYPOTHETICAL CLAIM IS NOT PATENTABLE</u>

A. <u>"Pocketed Coil Springs" Does Not Make The Hypothetical Claim Patentable</u>.

Dreamwell's first argument for patentability of the hypothetical claim is that the hypothetical claim would have been patentable over Magni because the hypothetical claim recites that the mattress assembly that is being compressed is "constructed of pocketed coil springs" "wherein each spring is contained within an individual pocket of fabric". Dreamwell argues that the "pocketed coil springs" limitation renders the hypothetical claim non-obvious over Magni because Magni does not disclose an innerspring mattress with such individual pocketed coils. Dreamwell's argument is a loser because the Patent Office has already rejected it. Dreamwell has even admitted that the Patent Office determined that the

limitation of packaging "pocketed" coils did not distinguish the claims over packing generic spring mattresses. Dreamwell admitted:

> "The applicants also argued in this Amendment that '[i]n an effort to distinguish even more clearly over Broyles, claim 1 has been amended herein to specifically recited a method of packaging *pocketed* coils.' [Exh. W-F (emphasis in original)] To support their argument that a mattress assembly in which each spring is contained within an individual pocket of fabric differs significantly from other types of mattresses (such as the Broyles mattress), the applicants submitted the Declaration of co-inventor Ricky F. Gladney. . . .
>
> **Notwithstanding these arguments, the Patent Office issued a 'final rejection' of all claims** in light of the Broyles patent, **reasoning** in relevant part **that 'Broyles shows** a containment sleeve 43 **holding the springs in a compressed state**.'" [Dreamwell's Opposition to Zinus' Motion for Summary Adjudication, 4:6-19 (bold emphasis added)]

The Examiner confirmed that adding the "pocketed" coil limitation did not render the claims non-obvious over packing any type of compressible material. The declaration of the co-inventor also claimed that pocketed coils provided unexpected results. The Examiner did not find this secondary consideration sufficient to warrant patentability, and the Examiner rejected this argument. The Examiner stated, "Applicant's arguments filed 1/22/96 have been fully considered but they are not deemed to be persuasive. . . . Regarding the actual product that is being compressed, Broyles clearly shows the manipulative steps to package a resiliently compressible article. Broyles operation could package the product of the invention to a compressible state; therefore, little patentable weight is given to the actual product since the manipulative steps of Broyle could package any type of compressible material." [Office Action dated 3/26/96 in application 08/416,065, 2:23-3:8 (emphasis added)] In addition, the Advisory Action dated 7/23/96 suggests that the ultimate reason for patentability of the claims in the file wrapper continuing application 08/694,803 related to the final two claim elements and not to the "pocketed" coil limitation or to the secondary consideration of unexpected results. The Advisory Action states that claim amendments raised new issues that required further consideration because "[t]he 2 final steps were never considered before since the steps are directed towards opening the package." The two steps of opening the package have nothing to do with the unexpected results of compressing pocketed coil springs.

In the prosecution of the parent cases of the '142 Patent, the Patent Office rejected the applicants' argument that packing pocketed coils is non-obvious over packing generic spring mattresses. Especially with the more stringent standard for overcoming obviousness recently enunciated by the Supreme Court in *KSR v. Teleflex*, the Patent Office would not now find otherwise. The Patent Office would not find the hypothetical claim to be nonobvious over a method for packing generic spring mattresses simply because the hypothetical claim includes the limitation "pocketed coil springs". The Patent Office would not now find that pocketed coil springs provide sufficient unexpected results to warrant patentability when the Examiner rejected this argument in the original prosecution.[2] Therefore, the "pocketed coil springs" limitation does not render Dreamwell's hypothetical claim patentable.

Dreamwell nevertheless argues in its Hypothetical Claim Brief that an example[3] in Magni that follows a generic teaching somehow would have taught one of ordinary skill away from using the Magni methods on an innerspring mattress with individual pocket coils. [Hypothetical Claim Brief, 7:18-22] This is incorrect because the specific example of foam mattresses in Magni follows a generic teaching, and Magni elsewhere refers to "the packing of spring mattresses". [Magni, 1:17-18]

The statement from Magni quoted by Dreamwell is only a generic statement, as Dreamwell admits. Dreamwell acknowledges that the Magni patent "generically states" that the Magni methods "may be adopted for many types of mattresses". The general applicability of the generic teaching of Magni is not limited to the specific examples that follow the generic teaching. Nothing in Magni suggests that its packaging method could not be applied to "<u>packing of spring mattresses</u> or other modern type mattresses made with synthetic resin foam or other materials". [Magni, 1:17-19 (emphasis added)] Moreover, the

---

[2] Dreamwell's assertion that there is "compelling evidence that the specific application of the patented compression and packaging techniques to pocketed coil innerspring mattress assemblies was a meaningful and non-obvious advance in the relevant art" is simply false. [Hypothetical Claim Brief, 15:9-12] The prosecution history proves the contrary.

[3] ". . . particularly for those which have an intermediate layer of rubber or a synthetic elastic foam resin and, possibly, outer layers of artificial or natural fibres on the surfaces ensuring the comfort of the user." (Magni, 2:5-9)

generic suggestion quoted by Dreamwell is made not to an "automaton", but rather to a creative person, who has experience with mattresses, and who is capable of fitting together multiple teachings. As previously set forth in detail in Zinus' Reply to Dreamwell's Opposition[4], the Supreme Court recently stated in *KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1740, 82 USPQ2d 1385 (2007) that the person of ordinary skill has "ordinary creativity", and is "not an automaton." The Supreme Court stated:

> "[I]n many cases, a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. . . . A person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR v. Teleflex*, 127 S.Ct. at 1742.

Here, where the Magni patent actually refers to "packing of spring mattresses" and suggests generic use "for many types of mattresses", not even ordinary creativity would have been required to apply the Magni method to another type of mattress, e.g., a pocketed coil innerspring mattress. The Supreme Court has confirmed that one of ordinary skill can implement a predictable variation[5]. Accordingly, when the familiar obviousness framework of *Graham* and *KSR* are properly applied, it is clear that one of ordinary skill reading the Magni patent would have had the minimal amount of creativity and common sense necessary to recognize, in view of the suggestion in Magni, that the Magni method applies to other types of mattresses such as pocketed coil springs mattresses. The Patent Office would not determine that the "pocketed coil spring" limitation of the hypothetical claim patentably distinguishes[6] the hypothetical claim from the Magni prior art under 35 U.S.C. §103 because the Patent Office already determined that the "pocketed coil spring" limitation has insufficient patentable weight to be distinguishable over the spring mattress of Broyles.

---

[4] Plaintiff Zinus, Inc.'s Reply To Dreamwell's Opposition To Plaintiff's Motion For Summary Adjudication Of Non-Infringement, filed November 27, 2007.

[5] "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, 35 U.S.C. 103 likely bars its patentability." *KSR v. Teleflex*, 127 S.Ct. at 1740.

[6] Zinus is mindful that the hypothetical claim is to be considered as a whole, but for ease of explanation and organization in this memorandum, each recitation that is argued by Dreamwell to distinguish the prior art is discussed separately.

B. The "Solid Cover or Barrier of Flexible Material" Recitation Renders The Hypothetical Claim Invalid Under 35 U.S.C. §112, ¶1.

The claims of the '142 Patent all recite a step of inserting the evacuated tube into a "containment sleeve". As Zinus has explained in prior briefing, the Swirl Wrap method does not involve a sleeve, but rather involves rolling a compressed mattress up with a sheet of flexible film as disclosed in the Magni patent. The Magni patent teaches performing this rolling in an assembly line manufacturing process whereby a compressed mattress is rolled up with a length of film that is being dispensed from a reservoir spool 220 (see Magni, Figs. 9 and 10). Then, after the mattress is rolled up (see Magni, Fig. 19) with the length of the film 222, the length of film is severed from the remainder of the film on the reservoir spool. In the Swirl Wrap method, on the other hand, a compressed mattress is simply rolled up with a rectangular sheet of film. The resulting rolled-up mattress products in both the Magni and Swirl Wrap methods are the same, but the Magni patent discloses a mechanized assembly line process whereby the film is cut after rolling.

Dreamwell, recognizing a slight difference between the Magni method and Swirl Wrap method, now seeks in its hypothetical claim to remove the problematical "sleeve" limitation and to substitute a very broad recitation of a "solid cover or barrier of flexible material". Just broadening the claim in this way, however, would leave the hypothetical claim reading on the prior art Magni method. Dreamwell therefore adds the term "pre-cut" in an attempt to distinguish the hypothetical claim from Magni, and at the same time to cover Zinus' Swirl Wrap method.

Dreamwell's scheme fails, however, because the '142 Patent fails to satisfy the written description requirement of 35 U.S.C. §112, first paragraph, for the contrived hypothetical claim. 35 U.S.C. §112, first paragraph, requires that a patent specification provide objective evidence that the inventor had possession of the full scope of the claim. *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-1345, 76 USPQ2d 1724 (Fed.Cir. 2005). In the case of the '142 Patent, only one object is disclosed into which the "evacuated tube" is "inserted", and this object is a tube. It is referred to as a sleeve and a

tube. It is illustrated as a sleeve and a tube. The '142 Patent states that the containment sleeve "preferably" "is an extruded tube of 4 mil polyethylene" ('142 Patent, 3:25-26).

Very importantly, nowhere in the '142 Patent is there any objective evidence that the inventors ever conceived of their containment sleeve being anything other than a tube. Nowhere in the '142 Patent is there any objective evidence that the inventors thought that, or knew that, the containment sleeve need not be a tube, but rather could be just a sheet of material. Moreover, nowhere in the '142 Patent is there any objective evidence that the inventors thought that, or knew that, such a sheet of material could be or should be rolled up with a compressed mattress. The term rolling or roll-up nowhere appears in the '142 Patent. Nowhere in the '142 Patent is there any disclosure of rolling anything up, much less rolling up a mattress.

Dreamwell's overly broad hypothetical claim, on the other hand, now encompasses a method involving rolling a sheet of material up with a compressed mattress, even though the '142 Patent utterly fails to provide any objective evidence whatsoever that the inventors had possession of, or ever conceived of, rolling a mattress in any way or rolling a sheet up with any object. The '142 Patent therefore fails to provide the necessary objective evidence that the inventors had possession of the full scope of the hypothetical claim as required by 35 U.S.C. §112, first paragraph. As such, the Patent Office would have rejected Dreamwell's hypothetical claim for violating the written description requirement of 35 U.S.C. §112, first paragraph. Dreamwell is simply not entitled to such a broad hypothetical claim under the *Wilson Sporting Goods* analysis because such a broad claim is not supported by the specification of the '142 Patent.

C. "Solid Cover or Barrier of Flexible Material" Does Not Make The Hypothetical Claim Patentable.

Dreamwell argues at length that Magni's use of the term "ribbon-shaped film" to describe film 222 means that the film 222 is "a narrow strand of film that is significantly narrower than the width of the mattress". [Hypothetical Claim Brief, 10:5-7]. Dreamwell states that "there is substantial evidence that the Magni patent discloses not a solid sheet of

film that substantially covers the exposed surface of the mattress as Zinus claims, but rather a long, narrow film that resembles a line and that is wrapped around the mattress at least once" [Id., 13:23-14:2]. Presumably it was Dreamwell's mistaken belief that Magni's ribbon-shaped film 222 was not as wide as Magni's mattress $M_9$ that led Dreamwell to include into the contrived hypothetical claim the recitation that the "cover" is "solid" and "substantially covers the exposed surface of the mattress assembly". Dreamwell states that the recitation in the hypothetical claim about the "solid cover or barrier" that "substantially covers the exposed surface of the mattress assembly" somehow distinguishes the Magni prior art because Magni (according to Dreamwell) does not disclose a solid sheet of film 222 that covers the entire exposed surface of the Magni mattress. [Hypothetical Claim Brief, 9:15-20]

The recitations in the hypothetical claim of the cover being "solid" and a "barrier" that "substantially covers the exposed surface of the mattress assembly" does nothing whatsoever to distinguish Magni. Magni discloses this subject matter. Magni discloses that the ribbon-shaped film is "rolled up at least partially together with said mattress and <u>enveloping</u> the rolled mattress". [Magni, 2:46-48 (emphasis added)] Dreamwell has simply misread the Magni patent and refuses to admit the error. Alternatively, Dreamwell has knowingly misrepresented the disclosure of Magni in an attempt to fabricate an issue of material fact in a desperate attempt to postpone inevitable findings that should be determined by summary judgment. [Id., 9:1-2] The issue of whether film 222 is a "narrow strand" is not genuine.

In fact, Dreamwell has fabricated the notion that film 222 is "a narrow strand" and "a long, narrow strip of film resembling a thin line". [Id., 10:6, 11:9-10] Dreamwell has fabricated the notion that multiple convolutions of film 222 criss-cross the compressed mattress in Figure 13 of Magni. [Id., 13:17-19] Nowhere does Magni state that film 222 is narrow, a thin line or a strand. There is no mention of criss-crossing in Magni. There is, however, disclosure in Magni that precludes film 222 from being narrow, a thin line or a strand or from criss-crossing mattress C in Figure 13. Dreamwell has chosen to ignore this

disclosure in Magni and to argue based on dictionary definitions of "ribbon".[7] Using extrinsic evidence, such as dictionaries and deposition testimony, to contradict how the term "ribbon-shaped film" is used in Magni is improper.

Magni explains why film 222 is as wide as the two semi-mandrels 207 in Figure 14. Figure 14 shows that the two semi-mandrels 207 are as wide as cylinder 215. Figures 9 and 10 show that cylinder 215 and spool 220 are wider than mattress C. Magni explains:

> "Each semi-mandrel 207 is internally hollow to form a suction chamber through the holes 209 distributed along each semi-mandrel. . . .
> A reservoir-spool 220 feeds a ribbon-shaped film 222, which is passed through guide means 224 located in the vicinity of the cylinder 215. The end of the film 222 may be approached to the mandrel formed by the coupled semi-mandrels 207, when the cylinder is lifted (FIG. 15) and when a vacuum has been created inside the two semi-mandrels. The end of the film 222 can thus be made to adhere by pneumatic suction against the mandrel." [Magni, 5:50-6:6]

Thus, the film 222 adheres to the coupled semi-mandrels 207 by suction through the holes 209 distributed along each semi-mandrel, as shown in Figure 14 of Magni. Film 222 cannot be a narrow strand because the holes would not create suction with a narrow strand. Moreover, the two semi-mandrels 207 do not move laterally with respect to the mattress as the mattress is rolled up inside the film. Therefore, Magni's description of feeding the end of film 222 to the two semi-mandrels 207 and rotating the semi-mandrels to roll up the flattened mattress together with the film 222 is inconsistent with the film criss-crossing the mattress.

In its attempt to fabricate an issue of material fact, Dreamwell has also ignored standard technical drafting conventions. Dreamwell states, "while Zinus has asserted that the label C refers to a cover that lies underneath ribbon-shaped film 222, there would be no reason to label and depict the cover for the mattress and to show the pattern of the mattress if the cover and pattern were not visible after application of the 'ribbon-shaped film 222.'"

---

[7] Dreamwell also incorrectly applies a principle of claim construction to the words "ribbon-shaped". Dreamwell states that the usage of a term in one place provides guidance regarding the meaning of the same term in other places. [Hypothetical Claim Brief, 11:19-21] But Dreamwell applies this principle to the different terms "film" and "strings". Dreamwell chooses to ignore that fact that Magni distinguishes between "ribbon-shaped film 222" and "ribbon-shaped strings 230". [Magni, 2:46-55] Under the tenets of claim differentiation, these different terms "ribbon-shaped film" and "ribbon-shaped string" are to be interpreted differently.

[Hypothetical Claim Brief, 13:14-19] Dreamwell chooses to ignore that the lead line to "C" in Figure 13 is dashed to indicate that the mattress C is beneath film 222. Dreamwell chooses to ignore that mattress C in Figure 10 has a dashed outline and a dashed lead line because mattress C is within wrapper P. The elastic masses $M_7$ and $M_9$ are also designated in Figure 10 with dashed lead lines to indicate that they are beneath other components. Thus, it is clear from the disclosure of Magni that Figure 13 does not show criss-crossing strands.

Despite Dreamwell's attempt to create a dispute of fact, Magni's film 222 is clearly as wide as Magni's mattress, and there is no <u>genuine</u> issue of fact regarding the width of film 222.

D. <u>Reciting That The Containment Sleeve Is "Pre-Cut" Does Not Make The Hypothetical Claim Patentable</u>.

As set forth above, Dreamwell attempts to fashion a hypothetical claim that covers the Swirl Wrap method without covering the Magni method by including the term "pre-cut" in the hypothetical recitation: "inserting said evacuation tube into a <u>pre-cut</u>, solid cover or barrier of flexible material that substantially covers the exposed surface of the mattress assembly and which is dimensioned or configured, including by use of tape, adhesives or fasteners, to retain said compressed mattress assembly in a compressed state for shipment." (emphasis added).

The nebulous "pre-cut" limitation does not distinguish Magni because Magni discloses that film 222 is pre-cut. Magni states:

> "At this point, a mechanically or even <u>manually operated cutting means cuts the film 222</u> and the end stretch of the film which has been rolled up together with the mattress is laid down on the outside convolution 222A." [Magni, 6:25-29]
>
> "The <u>end of the film 222 may be approached to the mandrel</u> formed by the coupled semi-mandrels 207 . . . The <u>end of the film 222 can thus be made to adhere</u> by pneumatic suction against the mandrel." [Magni, 5:68-6:6]

Before the end of the film 222 is approached to the mandrels for suction, the film 222 has already been mechanically or manually cut either after rolling the previous mattress or in order to make the spool of film 222. Thus, one end of film 222 is always "pre-cut" before it is rolled up together with a flattened mattress.

Even if Dreamwell is permitted to amend its hypothetical claim to replace the "pre-cut" recitation with one that covers the sheet of the Swirl Wrap method without covering the roll of the Magni method, it is obvious to cut both ends of a sheet of the film 222 of Magni before the rolling step instead of cutting one end before the rolling and the other end after the rolling. It would have been obvious to one of ordinary skill, after reading the Magni patent and learning of Magni's mechanized, assembly-line method of making the rolled mattress product, to make the same rolled mattress product in a less sophisticated way using a pre-cut, rectangular sheet of film. Zinus submits that taking a mechanized assembly-line manufacturing process for making a product, and dumbing it down, and then making the product on an individual basis in a less mechanized way is obvious. It is especially obvious under the teaching-suggestion-motivation test (TSM) to modify the mechanized process of Magni to be a manual process considering that Magni teaches manually cutting film 222.

Once the rolled-up mattress structure of Magni is known to one of ordinary skill in the mattress packaging arts, that person of ordinary skill would realize the most straight-forward way of making the structure, namely placing a compressed mattress on a rectangular sheet of film, and then rolling the compressed mattress and sheet up together. One of ordinary skill would recognize that the mechanized manner of making the product involving rolling the mattress onto a mandrel 207, and dispensing film from a reservoir spool 220, is not the only way that the product could be made. One of ordinary skill would know that the product could, for example, be made by hand in the most straight-forward way by placing a compressed mattress on a pre-cut rectangular sheet of the film, and then manually rolling the mattress and film up together.

Zinus has attempted to find legal authority for the broad proposition that manually performing a disclosed mechanical process is just as obvious as providing a mechanical means to replace manual activity that accomplishes the same result, but Zinus has been unable to find such authority. There is, however, authority used by Patent Examiners to reject applications that provide an automatic or mechanical means to replace a manual

activity in the prior art which accomplished the same result[8]. Zinus supposes that the reason that authority could not be found for the proposition that manually performing a disclosed mechanical process is obvious in view of a mechanical means that performs the process automatically is that making the counter argument borders on frivolous. It is not generally argued in the Patent Office that dumbing down a process and carrying out the process in a less efficient manner than the prior art is a non-obvious advance worthy of a patent.

E. The "Tape, Adhesives or Fasteners" Recitation Renders The Hypothetical Claim Invalid Under 35 U.S.C. §112, ¶1.

Dreamwell's hypothetical claim would not have been allowed by the Patent Office because there is no written description support in the '142 Patent for the claim term "tape", or for the claim term "adhesives", or for the claim term "fasteners". None of the terms "tape", "adhesives" or "fasteners" appears in the '142 Patent. Moreover, nowhere does the '142 Patent disclose or suggest the use of "tape, adhesives, or fasteners" as part of a containment sleeve equivalent. Nowhere does the '142 Patent disclose or suggest the use of "tape, adhesives, or fasteners" as part of any object into which the "evacuated tube" is inserted. No such "tape, adhesives, or fasteners" is illustrated in any diagram. There is absolutely no objective evidence in the specification of the '142 Patent that the inventors of the '142 Patent ever had possession of an invention involving such structures. Accordingly, had the inventors attempted to insert such words into their claims during prosecution of the '142 Patent, the Patent Office would have responded by rejecting the claims under 35 U.S.C. §112, first paragraph, for failing to satisfy the written description requirement.

F. The Hypothetical Claim is Unpatentable Under 35 U.S.C. §112, ¶2.

Dreamwell's hypothetical claims would be rejected under 35 U.S.C. §112, second paragraph, as being indefinite for failing particularly to point out and distinctly claim the

---

[8] The Manual of Patent Examining Procedure, used by Patent Examiners as a guide and directive on how to examine patent applications, contains Section 2144.04, III, entitled "Automating A Manual Activity". This section explains to Examiners that providing an automatic or mechanical means to replace a manual activity which accomplished the same result is not sufficient to distinguish over the prior art.

subject matter that the applicants regard as their invention. Specifically, claiming in the alternative is indefinite and impermissible. Dreamwell's hypothetical claims use the term "or" in multiple places and do not attempt to place their alternative claiming in a Markush format. For example, Dreamwell's hypothetical claim 1 includes "cover or barrier", "tape, adhesives or fasteners" and "dimensioned or configured". Dreamwell's litigators included the terms "dimensioned or configured" even though the allowed claims recited "dimensioned and configured".

## IV. CONCLUSION

Dreamwell's overly broad hypothetical claim would not be allowed by the Patent Office because the hypothetical claim: 1) is unpatentable for being obvious under 35 U.S.C. §103 in view of the prior art Magni patent, and 2) is unpatentable under 35 U.S.C. §112, first paragraph, because the specification of the '142 Patent does not provide a written description for the full scope of the hypothetical claim.

Dated: February 5, 2008

By: /s/

Darien K. Wallace
IMPERIUM PATENT WORKS
Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.