Kenneth B. Wilson, Calif. Bar No. 130009
  kwilson@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  415.344.7000
Facsimile:  415.344.7050

Attorneys for Defendant
SIMMONS BEDDING COMPANY
and Defendant and Counterclaimant DREAMWELL, LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC. a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 07-CV-03012-PVT<br><br>**DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER**<br><br>**Date**:     February 19, 2008<br>**Time**:    10:00 a.m.<br>**Before**:  The Honorable Patricia V. Trumbull<br>**Location**: Courtroom 5 |

# TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

Argument ..................................................................................................................................... 2

    I.    THE COURT CANNOT FIND AS A MATTER OF LAW THAT THE HYPOTHETICAL CLAIM WOULD HAVE BEEN REJECTED AS OBVIOUS IN LIGHT OF THE MAGNI PATENT. ............................................................................. 2

        A.    There Are Disputed Issues of Fact Relating to the Content of the Magni Patent and the Nature and Significance of the Differences Between the Magni Patent and the Hypothetical Claim, Taken as a Whole. ........................................................................................................ 3

            1.    The Magni Patent Does Not Disclose a Mattress Assembly Constructed of Coil Springs Wherein Each Spring Is Contained Within an Individual Pocket of Fabric. .......................... 4

            2.    There Is at Least a Triable Issue of Fact as to Whether the Magni Patent Discloses Inserting the Compressed Mattress into a "Solid Cover or Barrier of Flexible Material that Substantially Covers the Exposed Surface of the Mattress Assembly. ................................................................................................. 6

            3.    The Hypothetical Claim's Specification of the Cover or Barrier as Pre-Cut is Not Disclosed in the Magni Patent and, When Considered as Part of the Claim as a Whole, is Not Obvious in Light of that Prior Art. .................................................. 9

        B.    There Are Disputed Issues of Fact Relating to Secondary Considerations of Non-Obviousness. ....................................................... 10

    II.    THE PROPOSED HYPOTHETICAL CLAIM IS NOT INVALID UNDER 35 U.S.C. § 112 BECAUSE THAT STATUTE HAS NO APPLICABILITY TO A HYPOTHETICAL CLAIM ANALYSIS. ......................................................... 12

Conclusion ................................................................................................................................. 14

i

DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Dey*,
   287 F.3d 1097 (Fed. Cir. 2002)..................................................................................2, 5

*Bose Corp. v. JBL, Inc.*,
   98 F. Supp. 2d 80 (D. Mass 2000)..............................................................................3, 7

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)......................................................................................12

*Jurgens v. McKasy*,
   927 F.2d 1552 (Fed. Cir. 1991)...................................................................................3, 7

*KSR International Co. v. Teleflex Inc.*,
   ___ U.S.___, 127 S. Ct. 1727, 167 L.Ed.2d 705 (2007).................................................2

*Mars, Inc. v. Coin Acceptors, Inc.*,
   1996 WL 34385063, at *5 (D.N.J. 1996) ...............................................................3, 6, 12

*Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*,
   139 F.3d 877 (Fed. Cir. 1998).......................................................................................10

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc), *cert. denied*,
   126 S. Ct. 1332 (2006)....................................................................................................8

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
   927 F.2d 1565 (Fed. Cir. 1991)...................................................................................7, 9

*Streamfeeder, LLC v. Sure-Feed Systems, Inc.*,
   175 F.3d 974 (Fed. Cir. 1999).......................................................................................12

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007).......................................................................................2

*Tyler Refrigeration Corp. v. Kysor Industrial Corp.*,
   777 F.2d 687 (Fed. Cir. 1985)...................................................................................5, 12

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
   520 U.S. 17 (1997) ........................................................................................................13

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
   904 F.2d 677 (Fed. Cir. 1990)..................................................................................12, 13

*Wright Medical Tech., Inc. v. Osteonics Corp.*,
   1999 WL 130578 (D. Mass. 1999)..........................................................................passim

i

DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

**Statutes**

35 U.S.C. § 102 ............................................................................................................................... 13

35 U.S.C. § 103 ..................................................................................................................... 2, 3, 13

35 U.S.C. § 112 ............................................................................................................ 2, 13, 14, 15

**Introduction**

In its Opposition to Dreamwell's Brief re Hypothetical Claim Analysis (the "Hypothetical Claim Opposition"), Zinus does not dispute that the hypothetical claim proposed by Dreamwell is broader than the original claim. Zinus also implicitly concedes (based on its failure to address the issue) that the hypothetical claim is broad enough to literally cover the Zinus Swirl Wrap process. Moreover, Zinus does not argue that the prior art Magni patent anticipates the hypothetical claim. Instead, Zinus bases its Opposition on the proposition that the Patent Office would not have allowed the hypothetical claim to issue because it would have been invalid under 35 U.S.C. § 103(a) or 112.

Zinus' assertion that the hypothetical claim would have been rejected as obvious in light of the Magni patent is unfounded. Dreamwell has identified at least three differences between the hypothetical claim and the Magni patent that render the hypothetical claim non-obvious: 1) the hypothetical claim discloses a method of compressing pocketed coil innerspring mattresses, while the Magni patent makes no such disclosures; 2) the hypothetical claim discloses a "solid cover or barrier of flexible material that substantially covers the exposed surface of the mattress assembly," while the Magni patent does not; and 3) the hypothetical claim discloses a "pre-cut" cover or barrier of flexible material, and there is no similar disclosure in the Magni patent Although Zinus disputes the existence and significance of these differences, at the very least there are triable issues of fact regarding the disclosures of the Magni patent and the factual issues underlying any obviousness determination that would preclude resolving these issues on summary judgment. *See Wright Medical Tech., Inc. v. Osteonics Corp.*, 1999 WL 130578 (D. Mass. 1999) (denying summary judgment on a "practicing the prior art" defense; court found that a dispute over the disclosures of prior art references "cannot be resolved on a motion for summary judgment").

Zinus' argument that the hypothetical claim would be invalid under 35 U.S.C. § 112 is equally without merit. Indeed, the only court to directly consider the issue has held Section 112 to be inapplicable as a matter of law in the context of a hypothetical claim analysis. *See Wright*

1

DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

*Medical*, *supra* (rejecting the very argument now advanced by Zinus).  The hypothetical claim analysis thus confirms that it would be improper for the Court to grant summary judgment of non-infringement based on Zinus' "practicing the prior art" defense.

**Argument**

**I.    THE COURT CANNOT FIND AS A MATTER OF LAW THAT THE HYPOTHETICAL CLAIM WOULD HAVE BEEN REJECTED AS OBVIOUS IN LIGHT OF THE MAGNI PATENT.**

Zinus acknowledges (as it must) that "to make [a] hypothetical claim obvious, the court must find that 'the differences between the subject matter sought to be patented [i.e., the hypothetical claim] and the prior art are such that ***the subject matter as a whole*** would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Abbott Labs v. Dey*, 287 F.3d 1097, 1106 (Fed. Cir. 2002) (emphasis in original) (citing 35 U.S.C. § 103(a)).  Zinus also does not and cannot dispute that "a determination of obviousness requires resolution of four underlying factual issues:  1) the scope and content of the prior art; 2) the differences between the prior art and the claims; 3) the level of ordinary skill in the pertinent art; and 4) objective evidence of nonobviousness," such as commercial success, long-felt need, and unexpected results.  *See Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355-56 (Fed. Cir. 2007) (citing *KSR International Co. v. Teleflex Inc.*, ___ U.S. ___, 127 S. Ct. 1727, 167 L.Ed.2d 705 (2007).

As explained in Dreamwell's opening Hypothetical Claim Brief, there are several significant disputes between the parties regarding these underlying factual issues, including but not limited to the overall scope and content of the Magni patent; whether the Magni patent discloses a method of compressing and packaging pocketed coil innerspring mattress assemblies; the significance of this limitation; whether one of ordinary skill would have been motivated or otherwise inclined to extend the Magni patent process to pocketed coil innerspring mattress assemblies; whether the application of the methods of the hypothetical claim to pocketed coil innerspring mattress assemblies would have yielded unexpected results; whether the Magni patent discloses a cover or barrier of flexible material that substantially covers the exposed surfaces of

2
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

the compressed mattress; whether the Magni patent discloses the use of a "pre-cut" film to prevent the compressed mattress from expanding during shipping; the significance of this limitation; whether one of ordinary skill would have been motivated or otherwise inclined to utilize pre-cut covers or barriers of material to hold the compressed mattress, rather than continuous rolls of ribbon-shaped film; and various factual issues underlying these questions.

While Zinus offers its own facts and argument to counter Dreamwell's evidence, its offerings do nothing more than highlight the existence of triable issues of fact. Those disputed factual issues render summary judgment inappropriate on the issue of ensnarement or "practicing the prior art." *See, e.g., Bose Corp. v. JBL, Inc.*, 98 F. Supp. 2d 80 (D. Mass 2000) (denying defendant's motion for summary judgment on ensnarement defense where parties disputed the disclosures of prior art references); *Wright Medical, supra*, 1999 WL 130578 (D. Mass. 1999) (denying summary judgment on a "practicing the prior art" defense; court found that a dispute over the disclosures of prior art references "cannot be resolved on a motion for summary judgment").[1]

### A. There Are Disputed Issues of Fact Relating to the Content of the Magni Patent and the Nature and Significance of the Differences Between the Magni Patent and the Hypothetical Claim, Taken as a Whole.

As Dreamwell's opening Hypothetical Claim Brief explained, the scope and teachings of the prior art are questions of fact, and a dispute over what the prior art discloses precludes entry of summary judgment on an ensnarement defense. *See, e.g., Mars, Inc. v. Coin Acceptors, Inc.*, 1996 WL 34385063, at *5 (D.N.J. 1996) (holding that where there is a factual disagreement regarding what the relevant prior art teaches, "the Court cannot summarily resolve the legal question of whether the prior art anticipated or rendered obvious [the proposed] hypothetical claim"), *citing Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991). Secondary considerations of non-obviousness, such as commercial success, long-felt need, and unexpected results, are additional factual issues that, if disputed, cannot be resolved in the context of a

---

[1] Dreamwell notes that Zinus' Opposition does not discuss or address in any way the cases cited in Dreamwell's moving papers.

3

DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

1  hypothetical claim analysis. *See Mars, supra.* As the *Mars* court observed, "without first trying
2  the factual questions upon which obviousness and anticipation are premised, the Court cannot say
3  whether infringement by equivalency would improperly expand the scope of protection set forth
4  in" the asserted claims. *Id.*

5        It is clear under these legal principles that on the facts of this case, the Court cannot
6  summarily resolve whether the Magni patent would have rendered obvious the proposed
7  hypothetical claim.

      **1.     <u>The Magni Patent Does Not Disclose a Mattress Assembly Constructed of Coil Springs Wherein Each Spring Is Contained Within an Individual Pocket of Fabric.</u>**

10        Zinus seems to acknowledge at pages 5-6 of its Hypothetical Claim Brief that the Magni
11  patent does not explicitly disclose compressing a mattress constructed of pocketed coil springs.
12  Zinus contends, however, that the Patent Office has already concluded that limiting the subject of
13  the patented method to an innerspring mattress assembly with individual pocket coils makes no
14  difference to patentability. The prosecution history does not support Zinus' claim.

15        Zinus notes that the Patent Office issued a "Final Office Action" rejecting the claims as
16  obvious even after they were amended to specify that the claimed method would apply only to
17  pocketed coil innerspring mattresses. Zinus ignores the rest of the story, however. Specifically,
18  as noted in Dreawmwell's initial Hypothetical Claim Brief, the inventors submitted an
19  Amendment After Final Rejection in which they included (among other modifications) an
20  amendment narrowing the type of material to be packaged from "an assembly of coil springs
21  wherein each spring is contained within an individual pocket of fabric" to "a mattress assembly
22  constructed of coil springs wherein each spring is contained within an individual pocket of
23  fabric." [Declaration of Darien K. Wallace in Support of Zinus, Inc.'s Motion for Summary
24  Adjudication of Non-Infringement, filed in this action on October 2, 2007 ("Wallace Decl."),
25  Exh. W-F] As Dreamwell also pointed out in its opening brief (and as Zinus also ignores in its
26  Opposition), the inventors also submitted argument in which they sought to "traverse" (or
27  overcome) the objections by identifying analytical errors in the Examiner's earlier analysis with

28
4
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

respect to this limitation, and "not[ing] with some concern that no mention is made in the instant Office Action of the previously filed Rule 132 Declaration of inventor Rickey F. Gladney" setting forth evidence of unexpected results. [*Id.*] After these amended claims were refiled as part of a continuation application, the Patent Office allowed the claims to issue as U.S. Patent No. 5,622,030, the predecessor to the '142 Patent. [*Id.*]

Taking the prosecution history as a whole, it is impossible to conclude (as Zinus does) that the Patent Office ultimately determined that the specific application of the claimed packaging process to a pocketed coil mattress is irrelevant to patentability. Although the Examiner *initially* made comments to that effect, the Examiner ultimately issued the claims after receiving renewed argument from the inventors traversing the obviousness rejection. The Notice of Allowance did not explain why the claims were ultimately allowed. Thus, while it is possible the Examiner permitted the claims to issue as a result of one or more of the Amendments, it is also possible that the Examiner reconsidered and reversed his prior conclusion in light of the inventors' renewed arguments.

In any event, Dreamwell is not arguing that the application of the patented method to pocketed coil innerspring mattresses – alone and in isolation -- renders the hypothetical claim non-obvious in light of the Magni patent. Rather, Dreamwell is arguing that this difference between the hypothetical claim and the Magni patent, combined with the other differences between the hypothetical claim and the Magni patent, and viewed in the context of the claim as a whole and in light of the evidence of secondary consideration of non-obvious, makes the hypothetical claim patentable over Magni. *See Abbott Labs, supra.*

Rather than adopting Zinus' simplistic analysis, the Court must analyze the evidence as a whole and make its own assessment on the legal question of obviousness. *See, e.g., Tyler Refrigeration Corp. v. Kysor Industrial Corp.*, 777 F.2d 687 (Fed. Cir. 1985). Given the numerous and fundamental disputes on the underlying factual issues identified by Dreamwell, it would be premature for the Court to resolve the obviousness of the hypothetical claim as a matter of law at this early stage of the case, without further development of the factual record. *See Mars,*

*supra.* (denying summary judgment on hypothetical claim analysis where dispute existed over the existence and significance of differences between prior art and hypothetical claim).

### 2. There Is at Least a Triable Issue of Fact as to Whether the Magni Patent Discloses Inserting the Compressed Mattress into a "Solid Cover or Barrier of Flexible Material that Substantially Covers the Exposed Surface of the Mattress Assembly.

As shown in Dreamwell's opening Hypothetical Claim Brief, substantial evidence supports Dreamwell's assertion that the Magni patent discloses rolling up the mattress with a slender, "ribbon shaped film 222" that does not cover or surround a substantial portion of the exposed surface of the mattress. That evidence includes at least the following:[2]

- the Magni patent uses the term "ribbon-shaped film" on at least 16 occasions to describe film 222, the film in which the Magni mattress is rolled up;

- the term "sheet of film," which Zinus uses to characterize film 222, never once appears in the patent, nor does any similar description of film 222;

- the Magni patent does not indicate that any special uncommon definition should be given to the modifier "ribbon-shaped";

- the ordinary meaning of the phrase "ribbon-shaped film," as supported by various dictionaries defining "ribbon," is "a long, narrow-strip of film resembling a thin line;"

- when the Magni patent uses phrase "ribbon-shaped string," the term "ribbon-shaped" means "having a long, narrow shape resembling a thin line;"

- the Magni patent repeatedly uses the adjective "ribbon-shaped" to describe the shape of the film after it is cut from the spool and wrapped around the evacuated tube;[3]

- Zinus' own President verified that he understood the term "ribbon-shaped" to mean "significantly longer than it is wide," and testified that in his view the rectangular sheet of fabric in which Zinus rolls up its compressed mattresses (which is slightly wider than the width of the mattress and

---

[2] Evidentiary citations for these points are set forth in Dreamwell's opening Hypothetical Claim Brief.

[3] As noted in Zinus' initial Hypothetical Claim Brief, under Zinus' interpretation of the Magni "ribbon-shaped film" as film that is wide as the mattress, for a queen-sized bed, the length of the film would only be approximately 2.5 times greater than the width of the film/mattress. It is hard to imagine any definition of the term "ribbon-shaped" that would cover film of these dimensions. Certainly, a film with these relative dimensions would not satisfy Zinus' own understanding of the term "ribbon-shaped," as reflected in the testimony of its President.

6

appears to be roughly three times as long as it is wide) is *not* "ribbon-shaped"; and

- Figure 13 of the Magni patent discloses a series of narrow, parallel lines that criss-cross in some places, and could be viewed as multiple convolutions of a narrow, ribbon-shaped film. At a minimum, a reasonable finder of fact could infer from this evidence that Dreamwell's interpretation of the Magni patent disclosures is the correct interpretation. *See Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1570-71 (Fed. Cir. 1991) (in assessing a summary judgment motion, the evidence must be viewed in the light most favorable to the opponent of the motion, all doubts must be resolved in favor of the opponent, and all inferences must be drawn in favor of the opponent).

Zinus continues to point to other evidence (i.e., its new discussion of Figure 14 of the Magni patent)[4] that supposedly supports its interpretation of the Magni patent's disclosures. But Zinus has not disputed and cannot dispute that interpretation of the disclosures of a prior art reference is a question of fact. *See Jurgens, supra*, 927 F.2d at 1560 ("What a reference teaches is a question of fact for the jury to decide...."). Therefore, even if Zinus offers evidence that points to a contrary interpretation of the Magni patent than that proffered by Dreamwell, such evidence merely creates a factual dispute that would prevent this court from summarily adjudicating the disclosures of the Magni reference (and thus from deciding on summary judgment whether the hypothetical claim would be anticipated or rendered obvious by such prior art). *See, e.g., Bose, supra*, 98 F. Supp. 2d 80 (denying defendant's motion for summary judgment on ensnarement defense where parties disputed the disclosures of prior art references); *Wright Medical, supra*, 1999 WL 130578 (D. Mass. 1999) (same)

Although Zinus' Opposition ignores most of the evidence cited by Dreamwell in support of Dreamwell's position that the Magni patent does not disclose a solid cover or barrier of material that substantially covers the exposed surface of the mattress assembly, Zinus *has*

---

[4] Zinus' assertion that the discussion of this Figure in the Magni patent explains why film 222 is as wide as or wider than the mattress is based solely on the unsupported "technical" analysis of Zinus' counsel. With all due respect, whether "film 222 cannot be a narrow strand because the holes would not create suction with a narrow strand," and whether the semi-mandrels 207 (or guide means 224, which is not discussed in this context in Zinus' papers) is capable of moving laterally with respect to the mattress, is more appropriately the subject of expert testimony, and should not be resolved in the context of this early, pre-claim construction motion.

7

DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

1  attempted to address a small subset of that evidence. Zinus' arguments regarding that evidence,
2  however, merely highlight additional disputed issues of fact.

3  In particular, Zinus again criticizes Dreamwell's interpretation of Figure 13 of the Magni
4  patent, going so far as to accuse Dreamwell of deliberately "fabricating" an issue of material fact.
5  But as Dreamwell has previously observed, it is difficult to ascertain exactly what Figure 13 is
6  supposed to disclose. Rhetoric aside, Zinus has not addressed Dreamwell's explanation that in
7  addition to the checkerboard patterned lines marking the pattern of the mattress, Figure 13 shows
8  another series of narrow, parallel lines that criss-cross in some places. This latter series of lines
9  could be read to represent multiple convolutions of the ribbon-shaped film. Thus, even if the
10 Court credits the unsupported statement of Zinus' counsel that the dashed line leading to label C
11 is a "standard technical drafting convention" meaning that "mattress [sic] C is beneath film 222,"
12 that statement is not necessarily inconsistent with Dreamwell's position. Indeed, the volume of
13 argument advanced by the parties regarding the proper interpretation of Figure 13, and the
14 absence of any description in the patent that would provide definitive guidance regarding the
15 meaning of that drawing, demonstrates the ambiguity in this figure and the impropriety of trying
16 to resolve this ambiguity on summary judgment.

17 Finally, while Zinus argues in footnote 7 that Dreamwell has improperly applied the
18 doctrine of claim consistency with respect to the terms "ribbon-shaped film" and "ribbon-shaped
19 strings," it is actually Zinus that has misapplied the doctrine. Zinus starts by properly stating the
20 relevant legal principle, noting that "usage of a term in one place provides guidance regarding the
21 meaning of the same term in other places." *See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314
22 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006). Zinus goes on, however, to
23 assert that Dreamwell inconsistently uses "ribbon shaped" in connection with "film" and
24 "strings". To the contrary, Dreamwell contends that "ribbon-shaped" should be given the *same*
25 definition in the phrase "ribbon-shaped film" as it is given in the phrase "ribbon-shaped strings."
26 It is clear from the discussion and drawings in the Magni patent that "ribbon-shaped," as used in
27 the context of "ribbon-shaped strings," means "having a long, narrow shape resembling a thin

28
8
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

line." Under the doctrine of claim term consistency, "ribbon-shaped" should be given the same definition in the context of the phrase "ribbon-shaped film."

In sum, Dreamwell has proffered evidence from which a trier of fact could conclude that the Magni patent does not disclose a solid cover or barrier of flexible material that substantially covers the exposed surfaces of the compressed mattress. *See Scripps, supra*. Zinus has not disputed that if Dreamwell's interpretation is correct, the hypothetical claim is non-obvious over the Magni patent. At the very least, the evidence and argument submitted by Dreamwell creates a genuine issue of material fact with respect to the facts underlying an obviousness determination that prevents the Court from entering summary judgment of non-infringement based on Zinus' "practicing the prior art" defense.

### 3. The Hypothetical Claim's Specification of the Cover or Barrier as Pre-Cut is Not Disclosed in the Magni Patent and, When Considered as Part of the Claim as a Whole, is Not Obvious in Light of that Prior Art.

Zinus has created a straw man definition for the term "pre-cut" as used in Dreamwell's proposed hypothetical claim, and has then attempted to knock down that straw man by arguing that "the nebulous 'pre-cut limitation does not distinguish Magni because Magni discloses that film 222 is pre-cut." According to Zinus, "one end of film 222 is always 'pre-cut' before it is rolled up together with a flattened mattress." But that makes no sense. Under Zinus' interpretation of Dreamwell's hypothetical claim term, "pre-cut" means that the film is cut on one end. But if that were so, then any film would be pre-cut, unless it was of infinite length. With all due respect, that argument is preposterous. Obviously, "pre-cut" in the context of the hypothetical claim means that *both* ends of the solid cover or barrier of material are cut before the compressed mattress is inserted into or positioned within it.

As a fallback position, Zinus suggests that it would have been obvious to one of ordinary skill reading the Magni patent to use a pre-cut cover or barrier of flexible material rather than the spool of ribbon-shaped film disclosed in the Magni patent. That argument, however, is based solely on the unsupported assertions of Zinus' counsel; no *record evidence* supports it. In fact, it

9
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

is hard to imagine how one of ordinary skill, faced with the mechanized process of the Magni patent, would think to replace the spool of ribbon-shaped film mounted on pressing and rolling machine 45 with precut pieces of ribbon-shaped film. To do so, one of ordinary skill would need to decide to change the material in which the mattress is rolled up from a long, narrow strand of film to a cover or barrier of material that is roughly as wide as the mattress.[5] He or she would need to further change the material from a continuous roll of film to pre-cut sheets of film. And he or she would also need to eliminate rolling up and pressing machine 45 altogether, as it is clearly not designed for use with individual pre-cut covers or sheets of material. In other words, the entire structure for containing the compressed mattress would have to be fundamentally altered, as would the steps for implementing a containment structure. Dreamwell submits that there is nothing in the Magni patent (or elsewhere in the prior art) that would suggest such a dramatic change to the process. Certainly, the current state of the record would not support a finding as a matter of law that such modifications would have been "obvious."

### B. There Are Disputed Issues of Fact Relating to Secondary Considerations of Non-Obviousness.

Zinus has not disputed and cannot dispute that Dreamwell offered evidence in the form of the Declaration of Ricky Gladney showing that applying the patented packaging steps to individual pocketed coil mattress assemblies was non-obvious and would produce unexpected results. [Wilson Decl., Exh. 10] Zinus also does not dispute the existence of such evidence can be sufficient to warrant denial of Zinus' summary judgment motion. *See Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 884 (Fed. Cir. 1998) (evidence that a patented invention yielded unexpected results created a disputed issue of fact sufficient to warrant denial of a motion for summary judgment of obviousness).

Instead, Zinus brushes off this evidence, asserting (as it did with the pocketed coil limitation that is present in the hypothetical claim but not in the Magni patent) that "the Examiner

---

[5] This assumes that Dreamwell's interpretation of the Magni patent is correct. Even under Zinus' interpretation of the Magni patent disclosures, all the other changes discussed in this paragraph would be required.

10
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

rejected this argument in the original prosecution." [Opposition at p. 8] Once again, the prosecution history does not support Zinus' argument.

In the Patent Office's March 26, 1996 Office Action, the Examiner did state generically that "Applicant's arguments filed 1/22/96 have been fully considered but are not deemed to be persuasive," but the Examiner made no mention of the contemporaneously filed Gladney Declaration or the facts set forth in that Declaration. In response to that Office Action, the inventors submitted a new amendment including various modifications to the claims and accompanying argument to traverse the prior rejection. Among other things, the inventors stated:

> "Applicants note with some concern that no mention is made in the instant Office Action of the previously filed Rule 132 Declaration of inventor Rickey F. Gladney setting forth specific] technical data consisting of the results of a comparative analysis of Broyles-type springs versus applicants' pocketed coils springs in compressibility testing. These tests are believed to factually demonstrate the unexpected results obtainable in compressing applicants' pocketed coil springs. It is respectfully submitted that this Declaration should be given weight in the present situation of an obviousness-type rejection as a secondary consideration of patentability."

[Wallace Decl. Exh. W-F]

The next substantive action by the Patent Office was a Notice of Allowability in which the claims were allowed without further comments. [*Id.*] Thus, while it is possible that the reason for allowance was one or more of the amendments,[6] it is also possible that (a) the claims were allowed because the Examiner revisited the Gladney Declaration as requested by the applicants and recognized that it presented substantial evidence of non-obviousness that warranted allowance of the claim, or (b) the claims were allowed due to a combination of the amendments

---

[6] Remarkably, Zinus argues that the reason the claims were allowed was the addition of the final two method steps, which relate to removing the mattress from the evacuation tube and letting it return to its uncompressed state. Dreamwell uses the term "remarkably" because in its Motion for Reconsideration, Zinus argued vociferously that it was the additional of the "for shipment" limitation in the containment sleeve that led to the issuance of the claims. The reality is that the final Amendment contained changes to the pocketed coil limitation and to the containment sleeve element, it added the final two method steps, and that it sought reconsideration of the Gladney Declaration. The Patent Office did not specify which of these modifications justified allowance of the claims. [Wallace Decl., Exh. W-F]

11

and the Gladney Declaration. At a minimum, the Gladney Declaration cannot be summarily rejected as Zinus has proposed. *See Tyler Refrigeration, supra.*

In sum, given the numerous disputed issues of fact, it would be inappropriate for the court to conclude as a matter of law at any point -- let alone at this early point in the case -- that the Patent Office would have found the hypothetical claim obvious in light of the Magni prior art. *See Mars, supra.*

## II. THE PROPOSED HYPOTHETICAL CLAIM IS NOT INVALID UNDER 35 U.S.C. § 112 BECAUSE THAT STATUTE HAS NO APPLICABILITY TO A HYPOTHETICAL CLAIM ANALYSIS.

Without offering any legal authority or other support, Zinus asserts that Dreamwell's proposed hypothetical claim must be rejected because certain of the language added to the hypothetical claim would render the claim unpatentable under 35 U.S.C. § 112. Zinus cites no authority because there is no legal basis for Zinus' assertion that Section 112 has any relevance to a hypothetical claim analysis. *See Wright Medical, supra*, 1999 WL 130578.

Certainly *Wilson Sporting Goods*, the first case to apply a hypothetical claim analysis, does not suggest that Section 112 is relevant to that analysis. In that case, the Federal Circuit held that a district court should ascertain whether there is a hypothetical patent claim that is "sufficient in scope to literally cover the accused product" and that "could have been allowed by the PTO ***over the prior art***." *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990) (emphasis added). Similarly, in the *Streamfeeder* opinion cited in the Court's Interim Order, the Federal Circuit noted that the patentee's burden in a hypothetical claim analysis is "to show that its claim does not cover the prior art;" there is no reference to Section 112. *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999) (emphasis added). Likewise, in *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001), cited at page 2 of Zinus' Hypothetical Claim Opposition Brief, the Federal Circuit held that if a hypothetical claim "would be unpatentable ***under 35 U.S.C. §§ 102 or 103***, then the patentee has overreached," and the doctrine of equivalents cannot be applied to the accused product or method. *Id.* at 1380 (emphasis added). None of these cases suggest that the

12
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

court must also determine whether the hypothetical claim would be patentable under 35 U.S.C. § 112.

Indeed, the only court to address this issue has clearly and directly held that Section 112 has no applicability to a hypothetical claim analysis. In *Wright Medical Technology, Inc. v. Osteonics Corp.*, 1999 WL 130578 (D. Mass. 1999), defendant Osteonics moved for summary judgment of non-infringement based on the doctrine of equivalents, arguing (as Zinus argues here) that a hypothetical claim that would literally cover its device would be invalid under the written description requirement of 35 U.S.C. § 112. The district court correctly rejected this argument, noting that "the 'written description' requirement imposed by 35 U.S.C. § 112 . . . is not intended to be part of the analysis of infringement by equivalents." The court further noted that "Osteonics candidly acknowledges that it is aware of no case that has applied § 112's written description requirement to a claim hypothesized as suggested (for a different purpose) by *Wilson Sporting Goods*."

The *Wright Medical* court went on observe that "[i]n effect, Osteonics is suggesting that a patent might contain a sufficient written description to support the claims literally set forth, but nevertheless insufficiently describe a different device, not literally claimed, that is accused of being a substantial equivalent of the patented invention." As the court persuasively reasoned, "[t]his proposition not only has no authoritative support, but also runs counter to what the Supreme Court has said about the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997). There, in addition to emphasizing what must be shown to establish infringement by equivalents, the Court pointed out that it was not necessary to proving infringement to show that the patent disclosed equivalents to the invention. *Id*. at 1053 (rejecting the proposition that equivalents must 'be actually disclosed in the patent in order for such equivalents to infringe upon the patent'). The patent's written description must support what is disclosed; there is no reason to require description of what need not be disclosed." *Wright Medical, supra.*

13
DREAMWELL'S SURREPLY BRIEF RE HYPOTHETICAL CLAIM
ANALYSIS PER COURT'S JANUARY 17, 2008 INTERIM ORDER
65839-0001/LEGAL13953523.1

In sum, the law is clear: the hypothetical claim framework does not involve an analysis of whether such a claim would be patentable under the written description requirement of 35 U.S.C. § 112. Zinus' attempt to strike Dreamwell's proposed hypothetical claim based on a Section 112 analysis should be summarily rejected.

## Conclusion

For the foregoing reasons, Zinus' request for a summary adjudication of non-infringement based on its "ensnarement" or "practicing the prior art" arguments must be denied.

Dated: February 12, 2008         **PERKINS COIE LLP**

By _____/s/_____
Kenneth B. Wilson

Attorneys for Defendant SIMMONS BEDDING COMPANY and Defendant and Counterclaimant DREAMWELL, LTD.