IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:   925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation,<br><br>           Plaintiff,<br>      v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>           Defendants. | Case No. 07-CV-03012 PVT<br><br>**PLAINTIFF ZINUS, INC.'S REPLY TO DEFENDANTS' RESPONSE TO ZINUS' CLAIMS CONSTRUCTION BRIEF RE "INSERTING . . . INTO" AND "CONTAINMENT SLEEVE"** |
| DREAMWELL, LTD., a limited liability company of Nevada,<br><br>           Counterclaimant,<br>      v.<br><br>ZINUS, INC., a California corporation,<br><br>           Counterdefendant. | Date:       February 19, 2008<br>Time:       10:00 a.m.<br>Location: Courtroom 5<br>Judge:     Hon. Patricia V. Trumbull |

| | **TABLE OF CONTENTS** | **Page** |
|---|---|---|
| | TABLE OF AUTHORITIES ................................................................................................ | iii |
| | MEMORANDUM OF POINTS AND AUTHORITIES................................................... | 1 |
| I. | INTRODUCTION …................................................................................................ | 1 |
| II. | THE TIME IS RIPE...................................................................................... | 1 |
| III. | DREAMWELL'S OVERLY BROAD CONSTRUCTION VIOLATES THE WRITTEN DESCRIPTION REQUIREMENT .................................................. | 1 |
| IV. | MEANS-PLUS-FUNCTION IS A NON-ISSUE ............................................. | 2 |
| V. | ZINUS HAS NOT CHANGED ITS POSITION RE "INSERTING . . . INTO". | 4 |
| VI. | ZINUS' PROPOSED CONSTRUCTION OF "CONTAINMENT SLEEVE" IS PREFERABLE TO DREAMWELL'S ………….......................................... | 5 |
| | A. It is improper to base the meaning of "containment sleeve" on dictionary definitions .................................................................................................. | 5 |
| | B. The meaning of "containment sleeve" is properly determined based only on intrinsic evidence and not on dictionary definitions .................................... | 7 |
| VII. | ZINUS' PROPOSED CONSTRUCTION OF "INSERTING . . . INTO" IS PREFERABLE TO DREAMWELL'S ............................................................ | 11 |
| VIII. | DREAMWELL'S CONTINUED ALLEGED CONFUSION OVER MAGNI IS NOT A GENUINE ISSUE OF FACT ......................................................... | 12 |
| IX. | CONCLUSION ............................................................................................... | 14 |

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Depuy Spine, Inc. v. Medtronic*, 469 F.3d 1005, 80 USPQ2d 1865 (Fed.Cir. 2006)...    3

*Phillips v. AWH Corp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed.Cir. 2005) ................    3, 6

*Watts v. XL Sys. Inc.*, 232 F.3d 877 (Fed.Cir. 2000) ......................................................    3

**Statutes and Rules**

35 U.S.C. §112, ¶ 1 .........................................................................................................    1, 2

35 U.S.C. §112, ¶ 2 .........................................................................................................    4

35 U.S.C. §112, ¶ 6 .........................................................................................................    3, 4

## I. INTRODUCTION

In response to the Court's Interim Order of January 17, 2008, Zinus filed a Claims Construction Brief covering the terms "inserting . . . into" and "containment sleeve" as those two terms are used in U.S. Patent No. Re 36,142 ("the '142 Patent"). The brief also discussed the meaning of term "ribbon-shaped film" as that term is used in U.S. Patent No. 4,711,067 to Magni (the "Magni Patent"). In response, defendant Dreamwell filed a claims construction brief (the "Response"). In this Reply, Zinus replies to Dreamwell's Response.

## II. THE TIME IS RIPE

In its Response, Dreamwell states:

". . . [g]iven the amount of briefing the parties have conducted on the interpretation of the 'inserting . . . into' and 'containment sleeve' terms, Dreamwell agrees that the time is ripe for the Court to construe these two terms." [Response, 3:6-8 (emphasis added)].

Zinus wholeheartedly agrees that the time is ripe. The Court should construe these two simple terms. Each party has made its position clear. The Court should construe these two terms as a matter of law from the intrinsic record.

## III. DREAMWELL'S OVERLY BROAD CONSTRUCTION VIOLATES THE WRITTEN DESCRIPTION REQUIREMENT

In Zinus' Claims Construction Brief, Zinus explained that Dreamwell's construction of the terms "inserting . . . into" and "containment sleeve" is incorrect because such a construction would violate the written description requirement of 35 U.S.C. 112, ¶1[1]. See Zinus' Claims Construction Brief, page 16. In summary, the written description requirement of 35 U.S.C. 112, ¶1, requires that the specification provide objective evidence that the inventor was in possession of the full scope of the claimed invention. In the '142 Patent, the specification provides no objective evidence that the inventors ever conceived of,

---

[1] There are three requirements in 35 U.S.C. 112, ¶1: 1) best mode, 2) enablement, 3) written description.

contemplated, or had possession of the notion of rolling a compressed mattress up together with a sheet in the Swirl Wrap fashion. Yet if the claims are interpreted as proposed by Dreamwell, the claims would cover that subject matter. This would make the claims invalid under 35 U.S.C. 112, ¶1. As such, Dreamwell's construction is highly suspect.

Dreamwell's Response contains no discussion whatsoever of the written description requirement. Dreamwell's Response contains no explanation of where the '142 Patent provides objective evidence that the inventors had possession of the Swirl Wrap method. Dreamwell just asserts that "there is nothing in the '142 Patent that would limit the containment sleeve to a tubular or pocket shape" [Response, 7:25]. Zinus disagrees with Dreamwell. There is indeed something that limits the containment sleeve construction, and that is written description statutory requirement of 35 U.S.C. §112, ¶1. In the present case, where there is a reasonable construction that does not run afoul of 35 U.S.C. §112, ¶1, it makes no sense to construe the claim so that it would be invalid under one of the most common statutory requirements for a patent, 35 U.S.C. §112, ¶1.

### IV.  **MEANS-PLUS-FUNCTION IS A NON-ISSUE**

Dreamwell states that Zinus has made a new "assertion that the containment sleeve element is a means-plus-function element". [Response, 11:4-5]. Dreamwell then goes off in its now familiar fashion complaining about procedure. Zinus has three responses.

First, Zinus did not assert that the "containment sleeve . . . for shipment" recitation is a means-plus-function recitation. Dreamwell did not read Zinus' Claims Construction Brief carefully. What Zinus said was that

> "the 'containment sleeve . . . for shipment" recitation (in all claims of the '142 Patent) is *either*: 1) a means-plus-function recitation, *or* 2) the claims are invalid for being indefinite under 35 U.S.C. §112, ¶2, because the 'for shipment' words place no ascertainable limits on the 'containment sleeve', *or* 3) both." [Zinus' Claims Construction Brief, 12:17-21 (emphasis added)].

Second, as set forth in Zinus' Claims Construction Brief, the means-plus-function issue is a non-issue for purposes of deciding the Summary Judgment Motion because Zinus'

ZINUS' REPLY TO DEFENDANTS'  
RESPONSE TO ZINUS' CLAIMS  2  
CONSTRUCTION BRIEF

Case No. 07-CV-03012 PVT

1  Swirl Wrap method does not perform the recited function of the "which is dimensioned and
2  configured to retain . . . for shipment" element *exactly* according to the literal terms of the
3  recitation.  It is blackletter law that if an accused instrumentality does not perform the
4  function recited in a means-plus-function recitation *exactly*, then the means-plus-function
5  recitation does not literally cover the accused instrumentality.  Accordingly, there is no
6  reason to get into the more narrow analysis of §112, ¶6, equivalents here because the
7  "containment sleeve . . . for shipment" recitation does not read on Swirl Wrap under the
8  broader non-35 U.S.C. 112, ¶6, construction.  In other words, applying of §112, ¶6 leads to a
9  more narrow construction of the claim, both for literal infringement purposes and for doctrine
10 of equivalents purposes, and thus determining the §112, ¶6, equivalents of "containment
11 sleeve" is not necessary because the Swirl Wrap method does not include an equivalent to
12 any containment sleeve, even under the broader non-35 U.S.C. 112, ¶6, construction.

13         Third, Zinus submits that the law is not quite as clear as Dreamwell represents when
14 Dreamwell cites *Phillips*[2] and says that characterization of a limitation as a means-plus-
15 function limitation "applies only to purely function limitations that do not provide the
16 structure that performs the recited function" (emphasis added).  Despite this statement which
17 is indeed made in *Phillips* and other cases, there is other recent Federal Circuit[3] authority that
18 mentions a more lenient test of whether the limitation recites "sufficient structure" to
19 preclude the limitation from being a §112, ¶6, recitation.  The words "sufficient structure"
20 imply that there is some minimal amount of structure that can indeed be recited in a means-
21 plus-function recitation.  Moreover, Zinus submits that is likely that the Federal Circuit
22 would hold that the amount of structural recitation allowed in a means-plus-function
23 recitation can be influenced by express statements made the patentee in the prosecution
24 history that the recitation is a means-plus-function recitation.  In the present '142 Patent case,

---

[2] *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir. 2005).
[3] See, for example, the more recent *Depuy Spine, Inc. v. Medtronic*, 469 F.3d 1005, 80 USPQ2d 1865 (Fed.Cir. 2006) that mentions *Phillips* but also cites *Watts v. XL Sys. Inc.*, 232 F.3d 877, 880-81 (Fed.Cir. 2000) for the proposition that the presumption that an element is a means exists can be

the applicants represented to the Examiner and to members of the public who thereafter read the file wrapper that the "structure and functioning" of the "containment sleeve" was being "more clearly and specifically defined" by addition of the terms "for shipment". This issue has been thoroughly briefed and will not be repeated here. It is, however, a basic tenet of claim construction that the claims are to be construed in view of the prosecution history. Zinus therefore submits that this issue of how the Court elects to give meaning to "for shipment" in view of the prosecution history (intrinsic record) is not a simple one, and it may be that that the solution the Court eventually finds to be the most reasonable will be to find that the "inserting . . . into" step is a <u>step-plus-function</u> recitation subject to 35 U.S.C. §112, ¶6. It may be that the solution the Court eventually finds to be the most reasonable will be to find that the "containment sleeve . . . for shipment" is a <u>means-plus-function</u> recitation subject to 35 U.S.C. §112, ¶6. Alternatively, it may be that the solution the Court eventually finds to be the most reasonable is to invalidate the claim under 35 U.S.C. §112, ¶2, because "for shipment" is an intended use but has been misrepresented in the intrinsic record to be a structural limitation.

    Zinus only mentioned the future issue with "for shipment" and means-plus-function (or step-plus-function) in its Claim Construction Brief for "completeness." As set forth above, and in Zinus' Claims Construction Brief, this issue does not have to be decided[4] in order to construe the terms to an adequate degree of precision to find that the Swirl Wrap method does not infringe under the doctrine of equivalents.

### V. ZINUS HAS NOT CHANGED ITS POSITION RE "INSERT INTO"

On pages 12 and 13 of Dreamwell's Response, Dreamwell alleges that Zinus has

---

rebutted by showing that the claim element recites "sufficient structure" for performing that function.
[4] It is far preferable for the Court to dispose of the Swirl Wrap non-infringement issue now on summary judgment by deciding just two claim terms without trying to make sense of ill-conceived and vague terms in a Markman hearing. "For shipment" is but one example. In a Markman hearing, the Court will be in the unenviable position of having to try to make sense out of something that simply does not make sense and cannot be construed.

somehow "retreated" from some earlier position on what the term "insert . . . into" means. Without wasting the Court's time and recounting positions that are clear from the briefing, Zinus simply states for the record that it has changed no position whatsoever. It was, and remains, entirely true that Zinus does not practice the "inserting into" element because the bands of the Swirl Wrap product "are applied to the outside of the rolled-up mattress assembly without the rolled-up mattress assembly sliding or moving with respect to the bands." Zinus does not take a compressed mattress, roll it up, and "insert" it into retaining bands[5]. Zinus submits that to argue that applying retaining bands to the outside of a roll is the same as inserting the roll into its own retaining bands is almost absurd.

## VI. ZINUS' PROPOSED CONSTRUCTION OF "CONTAINMENT SLEEVE" IS PREFERABLE TO DREAMWELL'S

The ordinary and customary meaning of the term "sleeve" as used in the '142 Patent is "a tubular or pocket-shaped part designed to fit over another part". As Zinus explained in its Claims Construction Brief, this interpretation of the term "sleeve" is based on the claim language, the specification and the prosecution history.

A. *It is improper to base the meaning of "containment sleeve" on dictionary definitions.*

Dreamwell repeatedly argues in its Response that the Court should not adopt Zinus' proposed claims constructions because Zinus' claim interpretations are based only on unsupported assertions of counsel. [Response, 4:14-15; 10:14-16; 13:21-23] Dreamwell implies that dictionary definitions constitute support for Dreamwell's proposed interpretations, whereas the claim language, the specification and the prosecution history that are the basis for Zinus' claim interpretations do not constitute support. In fact, it is Dreamwell's proposed interpretations that are unsupported because picking and choosing from among dictionary definitions is improper in this case. In this case, intrinsic evidence is sufficient to enable the Court to construe the term "containment sleeve". Ordinary people, as

---

[5] Dreamwell has taken the position that the sheet and the retaining bands in the Swirl Wrap method

well as those of ordinary skill in mattress packaging, know what a "sleeve" is. Therefore, it is improper to look to dictionary definitions and other extrinsic evidence in this case.

Dreamwell construes the term "sleeve" by starting with a broad dictionary definition including the term "case", and then attempts to whittle down that definition and argue why the construction does not contradict the claims or specification. The Federal Circuit has rejected this literalist approach used by Dreamwell. In *Phillips*, the Federal Circuit stated, "it is inevitable that the multiple dictionary definitions for a term will extend beyond the 'construction of the patent [that] is confirmed by the avowed understanding of the patentee, expressed by him, or on his behalf, when his application for the original patent was pending' . . . Thus, the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent." [*Phillips*, 415 F.3d at 1321-22] "The risk of systematic overbreadth is greatly reduced if the court instead focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down." [*Id.* at 1321]

Dreamwell's proposed construction for "sleeve" as "a case into which an object or device fits" is improper because it is nothing more than the definition from a dictionary that is most favorable to Dreamwell's cause. Dreamwell turns to extrinsic dictionary definitions first when Dreamwell should be looking to the intrinsic evidence (the claims themselves, then the specification and then the prosecution history). In *Phillips*, the Federal Circuit stated that for several reasons extrinsic evidence in general is less reliable than the patent and its prosecution history in determining how to read claim terms. [*Id.* at 1318] Zinus' proposed construction for "sleeve" as "a tubular or pocket-shaped part designed to fit over another part" is based on intrinsic sources and is consequently preferable to Dreamwell's proposed construction. There is nothing in the intrinsic evidence that justifies Dreamwell's broadening of the term "sleeve" to mean "case". Moreover, a "part designed to <u>fit over</u> another part" uses language from the specification, whereas "a case into which an object fits" does not.

---

both together constitute a "containment sleeve".

ZINUS' REPLY TO DEFENDANTS'
RESPONSE TO ZINUS' CLAIMS
CONSTRUCTION BRIEF

6

Case No. 07-CV-03012 PVT

    B. <u>The meaning of "containment sleeve" is properly determined based only on intrinsic evidence and not on dictionary definitions</u>.

        (i) <u>Determining the meaning of "containment sleeve" based on the claims</u>.

Zinus' proposed interpretation of the term "sleeve" as "a tubular or pocket-shaped part designed to fit over another part" is based on the claim language, the specification and the prosecution history. Yet Dreamwell argues that there is nothing in the intrinsic record that would warrant imposing the "tubular or pocket-shaped" limitation. [Response, 5:24-25; 6:14-15] Dreamwell does not, however, respond to Zinus' analysis as to why the "sleeve" is tubular or pocket-shaped in the context of the claims. Dreamwell simply argues that the "sleeve" term should not be limited to any particular dimension because the claims describe the "sleeve" as being "dimensioned" without specifying the dimensions. Dreamwell's argument, however, ignores the context of the claims that requires the "sleeve" to be tubular or pocket-shaped even though the "sleeve" is not limited to any particular dimensions. Dreamwell ignores that, in the context of the claims, the inserting-into-a-sleeve step occurs after the "evacuated tube" has been formed. So the "sleeve" will contain a tube, and the sleeve must have a tubular or pocket form into which the evacuated tube can be inserted in the inserting-into-a-sleeve step.

        (ii) <u>Determining the meaning of "containment sleeve" based on the specification</u>.

Dreamwell also ignores the teachings in the specification disclosing that the "sleeve" is tubular or pocket-shaped. Dreamwell implies that the specification does not teach a tubular containment sleeve because the specification "describes how <u>the compressed mattress</u> relies on the 'outer containment sleeve' to remain in its compressed state". [Response, 6:25-7:2 (emphasis added)] Presumably Dreamwell is arguing that the specification does not disclose that a compressed mattress is tubular. But it is a mischaracterization to state that the specification anywhere describes a "compressed mattress" in a containment sleeve. The '142 Patent does not disclose a containment sleeve containing a compressed mattress. Instead, the containment sleeve contains a tube with strings of pocketed coil springs. ['142 Patent, 3:60-63] The packing method of the '142 Patent is used for the convenient shipment of mattress

ZINUS' REPLY TO DEFENDANTS'                             Case No. 07-CV-03012 PVT
RESPONSE TO ZINUS' CLAIMS     7
CONSTRUCTION BRIEF

1  parts, as opposed to whole mattresses. The specification discloses packaging springs, not
2  spring mattresses. Specifically, the specification discloses a method for packing "bolsters"
3  having a generally rectangular cross section comprising a casing that contains lengths of
4  pocketed spring coils. ['142 Patent, 1:59-65] Thus, the only shape or dimension of the
5  containment sleeve described in the specification is a tubular containment sleeve.
6         Dreamwell does cite some passages of the specification that do not discuss the shape of
7  the "sleeve". But merely citing some passages in the specification that do not limit the term
8  "sleeve" to be tubular or pocket-shaped does not rebut the argument that other passages do
9  limit the term "sleeve". There is only one embodiment of a containment sleeve disclosed in the
10 '142 Patent, and that is the tubular containment sleeve 26 of Figure 3 (replicated below).



18 The only disclosures in the '142 Patent of the shape or dimensions of a containment sleeve
19 are the illustration of Figure 3 and the statement, "Preferably, the containment sleeve 26 is an
20 extruded tube of 4 mil polyethylene" ['142 Patent, 3:24-26]. Thus, the specification defines
21 the containment sleeve as a tube.
22         Dreamwell argues that although the containment sleeve *may be* tubular, the
23 specification (i) describes the tubular form only in the context of the preferred embodiment
24 and (ii) does not mention a pocket-shaped sleeve. [Response, 7:15-17] The specification of
25 the '142 Patent, however, discloses only one embodiment. No disclosure is present that
26 would support any other shape or dimension of the "sleeve" other than tubular or pocket-
27 shaped. Nowhere in the '142 Patent is there any indication that the inventors of the '142
28 Patent had possession of any invention where the "sleeve" did not have a tubular shape or a

pocket shape into which an object is inserted. Nowhere in the '142 Patent is there any indication that the inventors of the '142 Patent had possession of any invention involving rolling up a compressed mattress in a sheet. In all references to the "sleeve" in the specification of the '142 patent, the "sleeve" is fitted over or installed over an evacuated tube. Thus, after the "sleeve" is fitted over the tube, the "sleeve" is tubular in all embodiments disclosed in the '142 Patent.

Dreamwell implies that because the word "pocket" is not mentioned in the specification, the specification does not support Zinus' interpretation of the "sleeve" as including a pocket-shape. [Response, 7:15-17] Of course, not all words used in claims constructions need be mentioned in the specification. The specification could be interpreted, however, as disclosing a tubular sleeve in which one end of the tube has been sealed. The specification does explicitly disclose and claim sealing one end of the evacuated tube. A tube has no sealed end or bottom; a pocket has a sealed end or bottom. Zinus added the "pocketed-shaped" language to cover the situation in which one end of the containment sleeve is sealed, even though the step of sealing the "sleeve" (as opposed to sealing the tube) is not explicitly disclosed. Adding the term "pocket-shaped" to the term "tubular" broadens the proposed construction of the term "sleeve".

In addition, Dreamwell implies that if the inventors had intended the claim element "containment sleeve" to be tubular, the inventors would have used the word "containment tube" considering that the inventors used the term "evacuated tube"[6]. [Response, 7:21-24] Regardless of whether the term "containment sleeve" or "containment tube" was used, however, it is clear from the specification that the "sleeve" takes on a tubular shape when the tubular "evacuated tube" is inserted into the sleeve. (In addition, the containment sleeve has a pocket shape when one end of the tube is sealed.) Consequently, the claims and the specification of the '142 Patent support Zinus' interpretation of "sleeve" as being "a tubular or pocket-shaped part designed to fit over another part".

ZINUS' REPLY TO DEFENDANTS'
RESPONSE TO ZINUS' CLAIMS
CONSTRUCTION BRIEF

9

Case No. 07-CV-03012 PVT

(iii) <u>Determining the meaning of "containment sleeve" based on the prosecution history</u>.

Dreamwell argues that the prosecution history does not support limiting "sleeve" to be tubular or pocket shaped because cover 1 of Broyles[7] would not qualify as a pocket-shaped structure. [Response, 9:4-5] Dreamwell argues that cover 1 of Broyles was understood by both the Patent Office and the inventors to disclose a "sleeve", so "sleeve" cannot be interpreted so narrowly that it does not read on cover 1. Although Zinus agrees to some extent with the logic of Dreamwell's argument, Dreamwell has incorrectly concluded that cover 1 of Broyles is not pocket-shaped. The statements made in the prosecution history, and specifically the portion of the prosecution history cited by Dreamwell, are consistent with interpreting "sleeve" to have a tubular or pocket-shaped form. Figure 7 of Broyles (reproduced below) shows that cover 1 is pocket-shaped. The compressed mattress is being inserted into Broyles' pocket-shaped sleeve ("cover" 1). Indeed, Broyles states,



"cover 1 . . . is intended for end feeding, that is, the mattress body will be insertable thereinto through such end presented line of opening." [Broyles, 3:29-32] Broyles also explains, "With the inner spring 9 so compressed . . . the end portion thereof remote from that engaged to vacuum head 23 is addressed to the line of opening 6 of cover 1 (see FIG.7) for movement therethrough into the interior of said cover 1." [Broyles, 4:20-25] Thus, cover 1 is pocket-shaped with an opening 6 that receives an inner spring mattress into the interior of the cover.

---

[6] Similarly, Zinus could argue that had the inventors intended the containment sleeve to be a "case", they would have used the term "containment case".

[7] The applicants attempted to distinguish the claims over U.S. Patent No. 3,611,524 to Broyles.

ZINUS' REPLY TO DEFENDANTS'  
RESPONSE TO ZINUS' CLAIMS  
CONSTRUCTION BRIEF

10

Case No. 07-CV-03012 PVT

## VII. ZINUS' PROPOSED CONSTRUCTION OF "INSERTING . . . INTO" IS PREFERABLE TO DREAMWELL'S

Dreamwell proposes construing the term "<u>inserting</u> said evacuated tube <u>into</u> a containment sleeve . . ." as "<u>arranging</u> the evacuated tube and containment sleeve <u>such that</u> . . .". Dreamwell then states that it is irrelevant whether the evacuated tube or the containment sleeve moves so long as the evacuated tube winds up inside the containment sleeve. [Response, 12:7-10] The implication of Dreamwell's argument is that it is irrelevant whether the tube is inserted into the sleeve or whether the sleeve is arranged such that the tube winds up inside the sleeve. Dreamwell's proposed construction of "arranging . . . such that" incorrectly construes the "inserting . . . into" term because it is relevant that the tube is inserted into the sleeve as opposed to merely being arranged such that the tube winds up inside the sleeve. Dreamwell's proposed construction clearly expands the scope of the claims to cover subject matter never contemplated by the inventors, such as rolling the evacuated tube up together with a rectangular sheet.

Dreamwell states that Zinus has argued that the "inserting . . . into" term requires a moving tube to be slid into a stationary sleeve. [Response, 12:11-14] Zinus' proposed construction has no such limitation. The claim does not limit whether the tube moves into a stationary sleeve, or a sleeve is fitted over a stationary tube. Zinus explained that, in the context of the claims as a whole, the "inserting . . . into" term requires the tube to move coaxially in relation to the sleeve. The term "sleeve" limits the meaning of the term "inserting" because the act of "inserting" must be consistent with the "sleeve" structure. The claims recite that a tube is already formed at the beginning of the "inserting' step. Because the specification states that the "sleeve" is <u>fitted over</u> the tube, the act of "inserting" must encompass a manner of coaxially inserting the tube into the sleeve in an "arm-into-a-sleeve" type movement. The claims also include a second use of the term "inserting . . . into" in the element "inserting a mattress assembly constructed of pocketed coil springs into said tube". This second use of the term "inserting . . . into" is also consistent with coaxially inserting a mattress assembly into a tube.

"Inserting into" and "fitting over" are narrower than "arranging such that". Dreamwell's proposed construction of "arranging . . . such that" expands the scope of the claims such that the tube need not be coaxially inserted into the sleeve. Dreamwell's proposed construction would even cover folding the tube up in the sleeve or rolling the tube up in the sleeve. These broader actions are inconsistent with "inserting" the tube "into" the sleeve and cover subject matter never contemplated by the inventors.

Dreamwell argues that its proposed "arranging such that" construction for "inserting into" is preferable to Zinus' proposed construction of "putting or setting into or between" because the '142 Patent does not disclose "<u>dropping</u> the compressed mattress assembly <u>into</u> a stationary containment sleeve". [Response, 14:8-10 (emphasis added)]  "Dropping" has nothing to do with Zinus' proposed construction. "Dropping" implies releasing an object so that the gravitational pull of the earth accelerates the object downward. Where does Dreamwell come up with this notion of "dropping"? It was not from Zinus.

Zinus' proposed construction of "putting or setting a tube into or between a sleeve" is supported by both the claims and the specification. The claims view the movement from the perspective of the tube being "inserted into" the sleeve, whereas the specification views the movement from the perspective of the sleeve being "fitted over" the tube. In both cases, the movement is the same and does not involve "dropping". But both the claims and the specification do describe a particular movement that is missing from Dreamwell's proposed construction of simply "arranging the tube and sleeve such that" and "so long as the evacuated tube winds up inside of the containment sleeve". [Response, 13:5-6]

### VIII. DREAMWELL'S CONTINUED ALLEGED CONFUSION OVER MAGNI IS NOT A GENUINE ISSUE OF FACT

The "ribbon-shaped film" 222 of the Magni patent, and how wide it is relative to Magni's mattress $M_9$, has now been exhaustively and fully briefed. Ribbon-shaped film 222 is dispensed from reservoir spool 220, and it is as wide as Magni's mattress $M_9$. Dreamwell's argument that the "ribbon-shaped film" is not as wide as the compressed

mattress of Magni is simply a baseless assertion that contradicts the disclosure of Magni. Dreamwell ignores the meaning of the term "ribbon-shaped film" as used in the Magni Patent and engages in an academic exercise of describing what the Magni patent would disclose if the term "film" had the dimensions associated with a standard dictionary definition of the word "ribbon" instead of the meaning that the patentee gave the terms "ribbon-shaped film" and "ribbon-shaped strings".  The patentee referred to film 222 on spool 220 as "ribbon-shaped" not because film 222 is narrow, but rather because film 222 is very long compared to its width when it is on spool 220.  The Magni method results in film 222 being a rectangular sheet after film 222 is cut.

Dreamwell ignores the fact that the patentee used the terms "ribbon-shaped film" and "ribbon-shaped strings" to describe thicker and thinner ribbons and is left arguing that both the film and the strings must have the same dimensions because both contain the term "ribbon-shaped".  [Response, 18:14-19:4]  This simply ignores the meaning imparted to the terms "film" and "strings" in an attempt to create a dispute of fact.  The Court should not reward this transparent feigned misunderstanding of a clear prior art disclosure by allowing Dreamwell to fabricate a dispute of fact and thereby to extort concessions from an accused infringer who would otherwise have to wait years until trial to prove simple facts that are not really in dispute.

Dreamwell complains that Zinus has not expressly set forth a proposed definition for "ribbon-shaped film".  "Ribbon-shaped film" is not, however, a claim term of the '142 Patent for which a definition is required.  Instead, the task of construing "ribbon-shaped film" is to explain the meaning of the term in order to determine whether the film used in the Swirl Wrap method is disclosed by the "ribbon-shaped film" of Magni when the "ribbon-shaped film" is rolled up in a compressed mattress and cut.  The object of construing "ribbon-shaped film" is not merely to replace these words with other words.  The object is to determine the meaning of "ribbon-shaped film" based on the public record since the Magni Patent issued. The public record corresponds to the intrinsic evidence and not to dictionary definitions from litigation counsel.  The public had no way of knowing which dictionary definition litigation

counsel would use to support its litigation strategy. The public had no way of knowing how testimony elicited in litigation would interpret claim terms. The public, including potential infringers such as Zinus, is entitled to rely on the meaning of patent terms based only on how those terms are used in the public record. Thus, construing "ribbon-shaped film" by relying on extrinsic evidence to determine the dimensions of a "ribbon", as Dreamwell is suggesting, would be highly improper.

Dreamwell's proposition that the "ribbon-shaped film" of Magni should be interpreted as a narrow strand or a thin line is based mainly on extrinsic evidence. Where Dreamwell attempts to base this interpretation on the Magni Patent, Dreamwell's arguments are transparently contrived. Dreamwell has now retreated from its preposterous position that the quilting pattern of mattress "C" in Figure 13 actually shows a criss-cross pattern of strands of ribbon-shaped film. Dreamwell now admits that the "outside of the mattress roll also shows the mattress cover, as also depicted in Figure 12". [Response, 20:8-9] Yet Dreamwell still argues that there would be no reaons to label and depict the mattress cover to show the checkerboard pattern of the mattress if the cover were not visible after applying "ribbon-shaped film". This is not a serious argument; it simply ignores that objects are labeled and/or depicted in Figures 1, 8, 10, 14 and 15 of Magni even though they are not visible. See, for example, mattress 1 in Figure 1. In addition, Dreamwell now raises the equally preposterous proposition that <u>the shading</u> on the mattress roll of Figure 13 actually shows multiple, criss-crossed convolutions of thin lines of "ribbon-shaped film". [Response, 20:13-18] This is not a serious argument and should not be taken seriously. Dreamwell has not put forth evidence that one of ordinary skill would be confused by Magni's description and illustration of "ribbon-shaped film" 222. The feigned confusion of a lawyer cannot make an issue a "genuine issue of fact".

### IX.  CONCLUSION

As Dreamwell states, and Zinus wholeheartedly agrees, "the time is ripe" for the Court to construe the two terms "insert . . . into" and "containment sleeve". Common people

know what a "sleeve" is, and common people know what "inserting" a "tube" into a "sleeve" means. Although Dreamwell has thrown up a lot of smoke, construing these terms is not complicated.

Zinus looks forward to obtaining the Court's constructions of the terms.

Dated: February 12, 2008                By: _____/s/_____

                                        Darien K. Wallace
                                        IMPERIUM PATENT WORKS
                                        Attorneys for Plaintiff and Counterdefendant
                                        ZINUS, INC.