IMPERIUM PATENT WORKS
DARIEN K. WALLACE (State Bar No. 139798)
T. LESTER WALLACE (State Bar No. 159967)
P.O. Box 587
Sunol, California 94586
e-mail: Darien@ImperiumPW.com
Telephone:  925-862-9972
Facsimile:   925-835-5804

Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ZINUS, INC., a California corporation,<br><br>    Plaintiff,<br>v.<br><br>SIMMONS BEDDING COMPANY, a Delaware corporation, and DREAMWELL, LTD., a limited liability company of Nevada,<br><br>    Defendants.<br><br>DREAMWELL, LTD., a limited liability company of Nevada,<br><br>    Counterclaimant,<br>v.<br><br>ZINUS, INC., a California corporation,<br><br>    Counterdefendant. | Case No. 07-CV-03012 PVT<br><br>**PLAINTIFF ZINUS, INC.'S REPLY TO DREAMWELL'S OPPOSITION TO ZINUS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT DUE TO NO DIRECT INFRINGEMENT**<br><br>Date:      March 4, 2008<br>Time:     10:00 a.m.<br>Location: Courtroom 5<br>Judge:    Hon. Patricia V. Trumbull |

**TABLE OF CONTENTS**         **Page**

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES............................................................. 1

I.    Introduction and Summary of Argument ............................................................. 1

II.   An Arms-Length Sale Of A Product With User Instructions Is Not "Direction" Under The "Control of Direction" Requirement ............................. 1

III.  Dreamwell's "Other Cases" Are Not On Point And Add Nothing To *BMC Resources* ........................................................................................................ 5

IV.  Zinus' "User Instructions" Do Not Direct Users To Perform The Last Claim Step .......................................................................................................... 6

V.   There Is No "Triable Issue of Fact" Regarding Whether Zinus' Mattress-in-a-Box "Gradually" Re-Expands ................................................................................. 7

VI.  No Additional Discovery Is Necessary ............................................................... 9

VII. There Is No Dispute Of Material Fact ................................................................. 9

VIII. Conclusion ……..................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*BMC Resources, Inc. v. Paymentech. L.P.*, 498 F.3d 1371, 84 USPQ2d 1545
    (Fed.Cir. 2006) ........................................................................................   1, 3

*DSU Medical Corporation v. JMS Co., Ltd.*, 471 F.3d 1293, 81 USPQ2d 1238
    (Fed.Cir. 2006) ........................................................................................   3

*Privasys, Inc. v. Visa International, Inc.*, 2007 WL 3461761, 2007 U.S. Dist.
    LEXIS 86838 (N.D. Cal. 2007) .......................................................................   5

**Table of Exhibits**

Exhibit A – Declaration of Darien K. Wallace ............................................................   8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction and Summary Of Argument

Indirect infringement (either induced infringement or contributory infringement) requires, as a predicate, a finding that some party committed the entire act of direct infringement. There can be no induced or contributory infringement without an underlying act of direct infringement. For a method claim, direct infringement requires that a single party perform each and every step of the claim.

A party cannot, however, avoid infringement simply by contracting out steps of a patented process to another entity. In those cases, the party "in control" would be liable for direct infringement. Parties can, however, enter into "arms-length agreements" to avoid direct infringement. The Court of Appeals for the Federal Circuit in *BMC Resources v. Paymentech* has articulated a "control or direction" standard for determining whether the actions of a second party can be attributed to a first party for purposes of determining whether the first party is a direct infringer of a method claim. *BMC Resources, Inc. v. Paymentech. L.P.*, 498 F.3d 1371, 1381, 84 USPQ2d 1545 (Fed.Cir. 2006).

In the present case, every claim of the '142 Patent concludes with two steps: a step of "*removing* said evacuated tube from said containment sleeve", and a step of somehow allowing the mattress "to *gradually return* to an uncompressed state" (emphasis added)[1]. Zinus does not perform either of these two steps on the Mattress-in-a-Box units that Zinus ships (i.e., the "shipped units") to Wal-Mart. Zinus does not open the boxes, and Zinus does not allow the mattresses contained in the boxes to return to an uncompressed state. Moreover, Zinus does not have the specific intent to instruct anyone to open the Mattress-in-a-Box product so that the mattress "gradually returns" to its uncompressed state. Zinus therefore filed a Motion for Summary Judgment of Non-Infringement Due to No Direct Infringement" on January 14, 2008.

---

[1] The exact wording in claim 1 is "whereby said mattress assembly in said tube **gradually returns** to an uncompressed state." (emphasis added)

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR SUMMARY         1           Case No. C07-03012 PVT
JUDGMENT OF NO DIRECT INFRINGEMENT

1  Dreamwell responded in its Opposition by acknowledging that the Federal Court in
2  *BMC* was saying "that if two parties agree that one party will perform certain steps in an
3  infringing method claim and the other party will perform the remaining steps, they may avoid
4  liability for direct infringement, so long as one party does not direct or control the activities
5  of the other." [Dreamwell's Opposition, 15:21-24].  Dreamwell, however, maintained that
6  the situation in the present case is different in that one party (Zinus) has provided user
7  instructions to the second party (Wal-Mart's end customers who open the Mattress-in-a-Box
8  product).  Dreamwell maintains that the existence of these user instructions satisfies the
9  "control or direction" standard set forth by the Federal Circuit for determining whether the
10 actions of a second party are attributed to a first party for purposes of determining whether
11 the first party is a direct infringer.
12 Zinus disagrees and responds to Dreamwell's Opposition.

## II. An Arms-Length Sale Of A Product With User Instructions Is Not "Direction"Under The "Control of Direction" Requirement

16 As set forth in Zinus' Motion papers, Zinus has located no authority that expressly
17 states whether supplying user instructions to retail customers of a product, which is
18 purchased in an ordinary arms-length commercial transaction at a retail store, can constitute
19 the type of "direction" required under the Federal Circuit's "control or direction" standard for
20 joint infringement liability as set forth in *BMC Resources*.  Applying simple logic, however,
21 leads to the inevitable conclusion that simply supplying user instructions and/or selling
22 products to retail customers cannot be enough to satisfy the "control or direction" standard.
23 If all a supplier would have to do to be declared a direct infringer would be to sell a
24 product with user instructions that instructed the user to perform claim steps not performed
25 by the supplier, then in situations involving user instructions the supplier would be declared a
26 direct infringer regardless of the supplier's state of mind.  Holding a supplier liable
27 regardless of his state of mind runs contrary to the statutory scheme for indirect infringement.
28 Under the statutory scheme, a party is liable for induced infringement only if, under Federal

Circuit precedent, that party knew of the patent and in addition had specific intent to cause infringement. It is not induced infringement if the party did not have this specific intent. It is not enough that the party intended the recipient of the instructions to perform certain acts, even if those acts constitute direct infringement by someone else. The party must know of the patent, and also must specifically intend that the recipient of the instructions infringe the patent. *DSU Medical Corporation v. JMS Co., Ltd.*, 471 F.3d 1293, 1306, 81 USPQ2d 1238 (Fed.Cir. 2006). Similarly, in order for a party to be liable for contributory infringement for selling a component of a patented process that does not have a substantial non-infringing use, the party must know (mens rea) that the component is specially made or specially adapted for use in an infringement. Accordingly, in both types of indirect infringement, the statutory scheme requires a specific intent that there be infringement.

If a party who does not have this specific intent could be held liable for the actions of its customers just because the party sends user instructions to its customers, then the party would be deemed a direct infringer even though the party did not have the required "specific intent." *BMC Resources, Inc.*, 498 F.3d at 1381. The patentee could sue the party as a direct infringer of the method claim without having to provide the much more difficult proofs required for showing induced infringement. The patentee could sue the party as a direct infringer regardless of whether or not the party had the specific intent to induce infringement. In the words of the Federal Circuit, "a patentee would rarely, if ever, need to bring a claim for indirect infringement". *Id.* at 1381. Allowing such an easy end-run around the more stringent requirements for indirect infringement would subvert the statutory scheme for indirect infringement. Zinus therefore submits that the mere supplying by a seller of user instructions to retail customers who only have an ordinary arms-length commercial relationship with the seller is not the type of "direction" the Federal Circuit is referring to in its "control or direction" standard.

Zinus submits that the Federal Circuit's "control or direction" requirement is referring to some form of actual control over a second party by a first party, such as by contract or other obligation to perform the claimed method steps on behalf of the first party. Although a

contract might not be required to meet the "control or direction" standard, more is required than merely supplying user instructions along with a product that is sold in an ordinary arms-length commercial sale to an ordinary retail customer. If this were not so, the law of indirect infringement could be skirted. This is especially so where the supplier of the product does not possess the specific intent required for liability under an indirect liability theory.

The fact that user instructions in an ordinary arms-length commercial sale do not satisfy the "direction or control" standard enunciated in *BMC Resources* is the central of point of Zinus' Motion for Summary Judgment. This is a legal issue. To decide this issue, the Court need not resort to interpreting the last to two steps of the '142 Patent to any high degree of specificity because Zinus does not perform these steps in any fashion whatsoever. The following facts are undisputed:

1. Zinus does not "remove" the mattress of any "shipped units" of the Mattress-in-a-Box product that Zinus ships to Wal-Mart. [Declaration of Scott Reeves in Support of Motion for Summary Judgment filed on January 14, 2008, ¶¶ 4, 6 ("Reeves Decl.")]

2. Zinus does not allow any mattress from a "shipped unit" of the Mattress-in-a-Box product to re-expand to an uncompressed state. [Reeves Decl., ¶¶ 4, 6]

3. Zinus and Wal-Mart's retail customers who have purchased "shipped units" of the Mattress-in-a-Box product from Wal-Mart have never had any contractual relationship with Zinus other than a manufacturer's warranty. [Reeves Decl., ¶ 23]

4. Wal-Mart's retail customers who have purchased the "shipped units" of the Mattress-in-a-Box product from Wal-Mart have never acted as agents of Zinus and are not now acting as agents of Zinus. Wal-Mart's retail customers do not report to Zinus and are not obligated to Zinus in any way. [Reeves Decl., ¶ 20]

5. The relationship between Zinus and Wal-Mart regarding the "shipped units" of the Mattress-in-a-Box product is an ordinary arms-length commercial sales relationship between two independent companies. The arms-length relationship does not concern the issue of opening any "shipped unit" of the Mattress-in-a-Box product and does not concern causing any mattress to return to an uncompressed state. [Reeves Decl., ¶ 14]

6.   Zinus and Wal-Mart have never had and do not now have any contract or agreement that concerns the issue of removing the mattress of any "shipped unit" of a Mattress-in-a-Box product from its shipping box, and returning the mattress to an uncompressed state. [Reeves Decl., ¶ 15]

### III. Dreamwell's "Other Cases" Are Not On Point And Add Nothing To *BMC Resources*

As set forth in Zinus' Motion papers, Zinus has located no authority that states whether supplying user instructions to retail customers of a product, which is purchased in an ordinary arms-length commercial transaction at a retail store, can constitute the type of "direction" required under the Federal Circuit's "control or direction" standard for joint infringement liability as set forth in *BMC Resources*.   Dreamwell, after apparently searching far and wide, down to District Courts from Texas to New York, has also not located any authority.  Not one of the opinions Dreamwell cites is on point, or is even a Federal Circuit opinion.  Two of the four "other cases" are District Court cases decided before *BMC Resources*.  None of the opinions holds that the supplying of user instructions to a retail customer in an ordinary arms-length commercial sale, in the absence of any contractual or other obligatory relationship between the seller and buyer, can turn the seller into a direct infringer.

For example, Dreamwell cites *Privasys v. Visa* as holding that a defendant may be deemed to perform a patented step if the defendant provides instructions regarding that step. *Privasys, Inc. v. Visa International, Inc.*, 2007 WL 3461761, 2007 U.S. Dist. LEXIS 86838 (N.D. Cal. 2007).  But in *Privasys*, the situation did not involve the mere sale into the market of a product with user instructions.  In *Privasys*, there was concerted and joint action by multiple parties, including Visa, merchants and financial institutions.  There was evidence that Visa exercised control over the customer-merchant interaction by providing instructions <u>to the merchants</u> regarding use by customers of a pay card and through a "contractual relationship" between Visa and financial institutions.

Here, in relation to the packaging method for the Mattress-in-a-Box product, Zinus has no contractual relationship with anyone regarding the future disposition of the Mattress-in-a-Box product, but rather just sells the product in an ordinary arms-length commercial sale.  Moreover, the Court in *Privasys* made no decision as to what satisfied the "control or direction" requirement.  The question was just whether a plaintiff should be granted leave to amend a complaint under a broader evidentiary standard.

### IV. Zinus' "User Instructions" Do Not Direct Users To Perform The Last Claim Step

On the last page (page 20) of Zinus' Motion for Summary Judgment, Zinus explained in one paragraph that: 1) nowhere do Zinus' user instructions direct an end customer to cause the mattress to expand at a slow speed (i.e., gradually), and 2) Zinus never intended for the compressed mattress to be removed in such a way that the compressed mattress "gradually returns" to an uncompressed state.  Zinus included this explanation at the end of its Motion papers to communicate to the Court that there is no way that Zinus can ultimately be held to have possessed the higher degree of "specific intent" required under the law for a showing of induced infringement.  The last step of the method claim specifically requires that the mattress assembly "gradually return" in its tube to an uncompressed state, and Zinus has never had any intention or desire that anyone, including Wal-Mart's end customers, carry out this "gradually return" claim step.  Zinus reasonably and subjectively believes that the mattresses in the "shipped units" do not "gradually return" as Zinus understands that term to be used in the '142 Patent[2].

Zinus brought up the issue of specific intent to show the Court how a finding that

---

[2] The '142 Patent says that "***Depending upon the type of end 24 sealing method used***, air will ***gradually*** bleed into the tube 22 allowing the compressed article to ***slowly expand*** until the inside of the tube 22 reaches ambient air pressure. . . . ***If a sealing method is used which is too air tight, then tube 22 can simply be punctured with a small hole*** . . . " ['142 Patent, 3:53-59 (emphasis added)].  Zinus does not instruct or promote any such type of gradual expansion by bleeding air into the bag slowly, but rather Zinus instructs and wants users to cut the entire edge of the mattress bag so that the mattress expands as fast as possible.

Zinus is a direct infringer under these facts would be entirely inconsistent with the result of application of the law of indirect infringement, considering that Zinus does not have the requisite specific intent for any form of indirect infringement.

In retrospect, Zinus should not have brought up the issue of "gradually returns" because Dreamwell now argues that the meaning of the term "gradually returns" must be interpreted. Zinus maintains that term "gradually returns" is so vague and indefinite that determining what the bounds of "gradually" are to any degree of certainty may be a time-consuming and ultimately unfulfilling exercise. Zinus submits, however, that what matters for purposes of specific intent is not what the Court ultimately determines the meaning of the term to be, but rather what Zinus reasonably thought[3] the meaning of the term was because it is Zinus' state of mind that is at issue in an indirect infringement situation.

Nevertheless, Zinus does not want disposition of this Motion for Summary Judgment to devolve into determining the meaning of "gradually returns". The meaning of "gradually returns" (if there is one) is not relevant to the Court's determination of no direct infringement under *BMC Resources* because Zinus does not allow the mattress of any "shipped unit" to re-expand in any fashion whatsoever. Zinus only brought up the issue of specific intent and "gradually returns" to point out how finding against Zinus on this Motion for Summary Judgment would amount to allowing an end run around the requirements for indirect infringement.

### V. There Is No "Triable Issue of Fact" Regarding Whether Zinus' Mattress-in-a-Box "Gradually" Re-Expands

Zinus does not open the boxes of any of the "shipped units" supplied to Wal-Mart

---

[3] Zinus' President, Scott Reeves, stated that "[A]lthough I do not understand what 'gradually returns to an uncompressed state' means in the context of the claims of the '142 Patent, I know that gradually does not mean allowing the mattress to expand as fast as it can. It was never my or Zinus' intent for the compressed mattress to be removed from the clear plastic wrapper in such a way that the compressed mattress gradually returns to an uncompressed state. We intended for the end customer of the Mattress-in-a-Box product to be able to sleep on the mattress as soon as possible

that are the subject of this Motion for Summary Judgment. As such, there is no way that Zinus can perform the last method step of allowing the mattress assembly to re-expand. Zinus does not perform that last method step of allowing the mattress assembly to re-expand in any fashion whatsoever (gradually, non-gradually, rapidly, non-abruptly, regularly, controlled or otherwise). It is therefore not necessary for the Court to determine the precise meaning of "gradually returns to an uncompressed state".

Zinus does, however, state just for the record that the assertions made by Dreamwell in its Opposition papers about there being "substantial and compelling evidence that the Zinus Mattress-in-a-Box re-expands in a 'gradual' manner as claimed in the '142 Patent" is mis-leading. On page 19 of its Opposition, Dreamwell states that the so-called Spanish language version of the Mattress-in-a-Box instructions acknowledges that "it may take up to 48 hours for the mattress to fully expand to its uncompressed state". [Dreamwell's Opposition, 19:5-6] However, Dreamwell leaves out important information about the instructions and creates the impression that this Spanish language instruction sheet is for the Mattress-in-a-Box product that is at issue in this Motion. Mr. Reeves explained in his second deposition in connection with this Spanish language instruction sheet (exhibit 214 to the deposition) that there are two different Zinus products under the "Slumber1" brand. One is an "inner spring" product, whereas the other is a "memory foam" product. See pages 115 and 116 of the transcript of the deposition of Scott Reeves taken on February 11, 2008. [Declaration of Darien K. Wallace in Support of Zinus' Motion for Summary Judgment ("Wallace decl."), ¶ 2, Exh. A (Reeves Depo., pages 113-116 and depo. exhibit 214)] The Spanish language instruction sheet was intended for foam, as opposed to spring, Mattress-in-a-Box products. Mattress-in-a-Box products containing foam, as opposed to spring, mattresses are not at issue in this case.[4] In addition, Scott Reeves explained in his deposition

---

after removing the compressed mattress from the shipping box." [Declaration of Scott Reeves in Support of Motion for Summary Judgment filed on January 14, 2008, ¶ 13]

[4] Zinus has not started using the Slumber1 brand with inner spring mattresses, so there is no evidence that the Spanish language instruction sheet that bears the "Slumber1" branding ever left Zinus, or was ever actually used in connection with any Mattress-in-a-Box product. Secondly, it is not even

that a memory foam mattress recovers slowly, whereas a spring mattress pops up right away. [Declaration of Kenneth B. Wilson in Opposition to Zinus' Motion for Summary Judgment, Exh. 2 (Reeves Depo., 104:14-106:3)]

## VI. No Additional Discovery Is Necessary

As set forth above, the precise meaning of "gradually returns to an uncompressed state" is not relevant to the question before the Court. How the mattresses of the "shipped units" expand is not relevant because Zinus does not open the shipping boxes and does not allow the mattress of any "shipped unit" to re-expand in any fashion whatsoever. No discovery is therefore necessary on the issue of what "gradually returns" means because the result of that discovery would be irrelevant to disposition of the Motion.

## VII. There Is No Dispute Of Material Fact

The facts that are relevant to the precise issue before the Court are not in dispute.

<u>Last Two Claim Steps</u>: There is no dispute that Zinus does not perform the last two steps of the claims of the '142 Patent. At no time has Zinus opened any of the cardboard shipping boxes of any of the "shipped units" that are at issue in the Motion of Summary Judgment. At no time has Zinus removed the mattress from even a single "shipped unit" and allowed the mattress to return to an uncompressed state.

<u>Arms-Length Sales Transaction</u>: It is undisputed that Zinus and Wal-Mart's retail customers who purchase shipped units of the Mattress-in-a-Box product from Wal-Mart do not have any contractual relationship with Zinus other than an ordinary manufacturer's

---

known whether the Spanish language instruction sheet is anything more than a beginning draft of an instruction sheet that was incorrect and that never left Zinus' factory. The Spanish language instruction sheet was produced by Zinus through the discovery process, and was not located in an actual Mattress-in-a-Box product that was actually sold. In sum, Zinus contests any statement by anyone saying that the Zinus Mattress-in-a-Box <u>innerspring</u> mattress product takes longer than about two minutes to re-expand. Notice the "From the box to a Real Mattress in 2 Minutes!" printing on the box of Exhibit F to the Reeves Declaration in Support of Zinus' Summary Judgment Motion. Zinus submits that the reference to "48 hours" in the Spanish language instructions must be referring to a memory foam product that is not at issue in this litigation.

ZINUS' REPLY TO DREAMWELL'S OPPOSI-
TION TO ZINUS' MOTION FOR SUMMARY          9
JUDGMENT OF NO DIRECT INFRINGEMENT

Case No. C07-03012 PVT

warranty.  Zinus does not control what Wal-Mart's retail customers do with their shipped units of the Mattress-in-a-Box product after they receive the product from Wal-Mart. Similarly, it is also undisputed that Zinus and Wal-Mart have never had any contract or agreement that concerns the issue of removing the mattress of any shipped unit of a Mattress-in-a-Box product from its shipping box, and returning the mattress to an uncompressed state. Zinus does not control what Wal-Mart does with any shipped units of the Mattress-in-a-Box product.

User Instructions:  It is undisputed that Zinus includes user instructions in schematic form on the outside of the shipping boxes of the "shipped units" that instruct an end user how to unpack the mattress.  Zinus also includes an instruction sheet in the shipping boxes.  The instruction sheet instructs the end user how to unpack the mattress.  The existence of these instructions, and what the instructions say, are not in dispute.  [See Reeves Decl., Exh. A-G]

**VIII.  Conclusion**

The legal question before the Court is therefore simple to state:  can mere user instructions supplied with a product to a retail customer in an ordinary arms-length retail sales transaction, without more, meet the "control or direction" requirement for direct infringement of a method claim where the supplier of the product does not perform a step of the claimed method?  There is no genuine issue of material fact relevant to this question.  If the answer to the legal question is no, then the Court can find that Zinus' supplying of the defined "shipped units" to Wal-Mart does not involve direct infringement given the undisputed facts set forth above.  In fact, the answer must be no because if it were yes, then the supplier could be turned into a direct infringer even if the supplier did not have the state of mind required for indirect infringement.  If the answer were yes, then a patentee would rarely, if ever, need to bring a claim for indirect infringement.  The Federal Circuit in *BMC* cautioned against this type of result.  The answer must, therefore, be "no".

Accordingly, Zinus' Motion for Summary Judgment of Non-Infringement Due To No Direct Infringement should be granted, and the Court should rule that Zinus' supplying and

sale of "shipped units" of the Mattress-in-a-Box product to Wal-Mart Stores, Inc. and its affiliates does not constitute infringement of any claim of U.S. Patent No. Re. 36,142.

Dated: February 19, 2008                    By: _____/s/_____

                                                Darien K. Wallace
IMPERIUM PATENT WORKS
Attorneys for Plaintiff and Counterdefendant
ZINUS, INC.